George C. Harris (SBN 111074)
gharris@nortonlaw.com
David W. Shapiro (SBN 219265)
dshapiro@nortonlaw.com
Fred Norton (SBN 224725)
fnorton@nortonlaw.com
Matthew W. Turetzky (SBN 280997)
mturetzky@nortonlaw.com
THE NORTON LAW FIRM P.C.
299 Third Street, Suite 106
Oakland, California 94607
Telephone:(510) 906-4900


Attorneys for Plaintiff
MARC COHODES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARC COHODES, an individual, | **CASE NO. 20-cv-04015-SBA** |
| *Plaintiff,* | |
| v. | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FREEDOM OF INFORMATION ACT** |
| UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, and CRIMINAL DIVISION OF THE UNITED STATES DEPARTMENT OF JUSTICE | |
| *Defendants.* | |

## SUMMARY OF THE ACTION

1.      This Freedom of Information Act (FOIA) lawsuit seeks the production of certain records in the possession of the Department of Justice (DOJ), an agency of the federal government, and its component agencies, the Federal Bureau of Investigation (FBI), the Criminal Division, and the Executive Office for United States Attorneys (EOUSA), the umbrella agency for the United States Attorney's Offices.

2.      The records at issue relate to communications among and between MiMedx Group, Inc. (MiMedx) and its officers, directors, employees, and agents, including, without limitation, its former Chief Executive Officer, Parker "Pete" Petit; retired United States Senator Johnny Isakson; and the DOJ, the FBI and United States Attorney's Offices referring or relating to Plaintiff Marc Cohodes.

3.      Before and after 2016, Parker "Pete" Petit was a major contributor to Senator Isakson.

4.      On December 1, 2017, two FBI agents appeared at the home of Marc Cohodes and demanded that Cohodes stop posting messages on Twitter about Petit and other employees of MiMedx.  They threatened Cohodes with "consequences" if he did not stop.

5.      Several years later, the FBI produced heavily redacted emails that revealed that the FBI threatened Cohodes at the behest of Senator Isakson, who was in turn acting on behalf of Petit and his colleagues.  (Senator Isakson and his staff, and others working on his behalf or speaking in his name, are referred to hereafter as "Isakson.")

6.      The FBI's conduct was part of an ongoing campaign by MiMedx and Petit to silence Cohodes's criticisms of MiMedx and Petit, punish Cohodes for criticizing MiMedx and Petit, and violate Cohodes's First Amendment rights.  It was further part of a broader scheme to silence and intimidate critics of MiMedx and Petit (other than Cohodes) who feared the same kind of heavy-handed and illegal conduct that had been directed at Cohodes.  Those campaigns to threaten, intimidate, and silence were accomplished through an improper relationship between retired Senator Johnny Isakson, Petit, and government agencies responsible for enforcing federal criminal law.

1

7.     In and after January 2020, Cohodes submitted FOIA requests seeking the communications between Isakson and any component agency of the DOJ (including, without limitation, the FBI and the United States Attorney's Office for the Southern District of New York) that relate to Cohodes.

8.     The government agencies either ignored Cohodes's requests or, in the case of the FBI, produced only a few redacted documents.  The redactions were not justified by any FOIA exemption.  Cohodes submitted timely administrative appeals, which were denied or ignored.

9.     On April 21, 2020, Cohodes resubmitted his FOIA requests to the DOJ, the FBI, and the EOUSA to clarify that he was personally seeking the records at issue.  Cohodes received no response to his April 21, 2020 requests from the FBI or the EOUSA; Cohodes received a response from the DOJ and made an administrative appeal, which was denied.

10.    At the suggestion of the DOJ, on June 9, 2020, Cohodes submitted his FOIA requests to the Criminal Division of the Department of Justice.  On July 15, 2020, the Criminal Division made two responses to the requests.  It (1) denied, without confirming or denying that such records exist, the request for communications with Senator Isakson relating to Parker Petit, and (2) stated that it was searching the sections most likely to maintain responsive records to the remaining requests and extending the time limit to respond to the requests by ten days due to "unusual circumstances."

11.    On August 13, 2020, Cohodes submitted an appeal of the partial denial by the Criminal Division.  The Criminal Division acknowledged receipt of the appeal on August 14, 2020, but has made no further response to the requests.

12.    Cohodes is filing this lawsuit to compel the government to produce documents in response to his April 21, 2020 requests that will reveal the FBI's misconduct in violating Cohodes's First Amendment rights, improper influence brought to bear by Petit and his cohorts on a United States Senator, and MiMedx's efforts to silence critics in violation of federal securities laws.

1

## THE PARTIES

2      13.      Plaintiff Marc Cohodes is an individual who resides in Sonoma County,

3  California.

4      14.      Defendant United States Department of Justice is a government agency within

5  the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, District of

6  Columbia.

7      15.      Defendant Federal Bureau of Investigation is a component of the United States

8  Department of Justice.  The Federal Bureau of Investigation is an agency within the meaning

9  of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, District of Columbia.

10      16.      Defendant Executive Office for United States Attorneys is a component of the

11  United States Department of Justice that provides executive and administrative support for

12  the 94 United States Attorneys located throughout the 50 states, the District Columbia, and

13  various United States territories.  The Executive Office for United States Attorneys is an

14  agency within the meaning of 5 U.S.C. § 552(f)(1) and has offices throughout the United

15  States.

16      17.      Defendant Criminal Division is a component of the Department of Justice.  It

17  is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has offices throughout the

18  United States.

19

## JURISDICTION AND VENUE

20      18.      This Court has subject-matter jurisdiction over this action and personal

21  jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has

22  jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

23      19.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

24  substantial part of the events giving rise to the claims occurred in this District, and pursuant

25  to 5 U.S.C. § 552(a)(4)(B) because Plaintiff Cohodes resides in this District.

26

## FACTUAL BACKGROUND

27  **A. The Government's Efforts to Silence Cohodes**

28      20.      Cohodes is a long-time stock market analyst who has provided valuable

3

information to the Securities and Exchange Commission and the Department of Justice. Cohodes's information has led to federal civil and criminal law enforcement actions against executives at companies such as Lernout & Hauspie, Media Vision Technology, NovaStar Financial, AremiSoft, California Micro Devices, Network Associates, TakeTwo Interactive, Krispy Kreme Donuts, Boston Chicken, and others.

21.     In about September 2017, Cohodes began to follow allegations about securities and FDA improprieties at MiMedx.  He became a vocal critic, posting negative information about MiMedx's publicly reported financial results and about the safety of MiMedx's products.  Cohodes wrote to the company's Board of Directors and its top management, as well as its auditors, about his concerns.  Because he made no secret about his own identity, former and current employees reached out to Cohodes with information about wrongdoing at MiMedx, including wrongdoing by its CEO Parker "Pete" Petit.

22.     Petit and MiMedx responded to Cohodes's criticisms by attacking Cohodes. They and their shills made false claims about the legality of Cohodes's short sales, sent personal attacks to Cohodes, and denied there was any validity to Cohodes's (and others') criticisms of the company's public reporting and FDA compliance.  (In the end, Cohodes was proved right over and over again:  MiMedx withdrew six years of financial statements, its stock was delisted, it terminated many of its employees, federal prosecutors in New York City indicted Petit and MiMedx's COO William Taylor for securities fraud in 2019, and on April 6, 2020 the company announced that it agreed to pay $6.5 million to resolve False Claims Act allegations that it knowingly submitted false information to the Department of Veterans Affairs.)

23.     Before law enforcement cracked down on MiMedx and its executives, however, Petit obtained the FBI's assistance in trying to silence Cohodes.  On December 1, 2017 at about 1:20 p.m., two men arrived at Cohodes's home in Sonoma County, California. They approached Cohodes's wife in the driveway.  One man, with dark hair and a beard, quickly flashed a badge and identified himself as an FBI agent.  He told Ms. Cohodes not to write down his name or take a photograph.  That man then followed Ms. Cohodes as she

4

1   walked towards her house, even after she asked him to wait in the driveway because Mr.

2   Cohodes's son is disabled and she did not want his son to become alarmed.

3       24.     Mr. Cohodes then came out of the house.  The man asked if there was

4   someplace they could speak privately.  The two men, Mr. Cohodes, and Ms. Cohodes then

5   walked into the Cohodes's home.  Mr. Cohodes asked if he needed to call his attorney, and

6   the man said "no, this is a courtesy call."

7       25.     One of the men told Cohodes that he needed to "stop sending threatening

8   tweets" about "Mr. Petit."   He read two "tweets" to Cohodes.  He repeated several times,

9   "do you understand, do you understand?"  Cohodes asked the man several times to verify

10  who they were.  One of the men pulled out a business card but refused to give it to Cohodes.

11      26.     Cohodes then called the police.

12      27.     Cohodes told the men that they should leave if they did not have a warrant.

13  One of the men told Cohodes that he would leave only when Cohodes acknowledged that the

14  tweets were threats and that he would not post other tweets in the future.  The man told

15  Cohodes that "there would be consequences" if he came back to Cohodes's home.

16      28.     During their conversation, Cohodes called his attorney, who then spoke with a

17  man who identified himself as Paul Viglienzone.  After some prodding by counsel, he

18  identified his colleague as Jeremy Heinrich.  Viglienzone advised counsel that both men

19  were FBI Special Agents.  He told counsel he was at the Cohodes residence as a "courtesy"

20  to stop Cohodes from posting "threatening" tweets or else he would come back.

21      29.     Viglienzone read the alleged threatening tweets to counsel and asked counsel

22  several times to tell Cohodes to stop posting "threatening tweets."  Counsel declined to do

23  so.  Counsel asked whether the U.S. Attorney's Office was involved in this investigation,

24  and Viglienzone declined to say.

25      30.     Counsel told Viglienzone that he had communicated what he wanted to

26  Cohodes and asked him to leave Cohodes's property.  Counsel told Viglienzone that if he

27  wished to speak to Cohodes again, then he should contact counsel – and have no further

28  direct communication concerning Cohodes's tweets with Cohodes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31.     Neither of the two FBI agents would leave a business card with Mr. and Ms. Cohodes; both showed only a portion of their credentials.  Both acted in a threatening and heavy-handed manner to the Cohodeses and to counsel.

32.     As a result of this incident, counsel contacted the FBI and then U.S. Attorney Brian Stretch to determine whether the two men were in fact FBI Special Agents.  Counsel had also sought to understand why the FBI was threatening Cohodes at his home over certain tweets that were not in fact "threatening."  Counsel also wrote to FBI Director Christopher Wray and the DOJ's Office of Inspector General documenting this incident.

33.     After two years of complaints, without a substantive response from the FBI or the DOJ, Cohodes sought information through a FOIA request.

**B. The January 15, 2020 FOIA Requests**

34.     On January 15, 2020, Cohodes, through counsel, submitted three of the requests at issue in this litigation (Requests Nos.  EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA)).  Copies of these FOIA requests are attached to this Complaint as Exhibits 1, 2, and 3.

35.     The requests sought "all correspondence and communications between Senator Jonny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes."  The requests included a signed privacy release by Cohodes on form DOJ-361 and his agreement through counsel to pay reasonable duplication fees not to exceed $1,500 per request.  The FOIA requires federal agencies to respond within 20 working days of receiving a request.  5 U.S.C. § 552(a)(6)(A)(i).  The agencies did not respond within the 20 working-day deadline.

36.     The FOIA treats such failures to respond within the statutory time limit as constructive denials.  5 U.S.C. § 552(a)(6)(C)(i).  Any person making a FOIA request is

"deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." *Id.*

**C. The February 21, 2020 FOIA Appeals**

37.     Cohodes nevertheless appealed the agencies' constructive denials of his requests on February 21, 2020 to obtain the requested documents through the agencies' internal administrative appeal process.  A copy of Cohodes's appeal is attached to this Complaint as Exhibit 4.  Cohodes submitted the same letter to appeal all three January 15, 2020 FOIA requests.

38.     The FOIA requires agencies to respond to appeals within 20 working days of receiving the appeal.  5 U.S.C. § 552(a)(6)(A)(ii).  The agencies did not respond within the 20 working-day deadline.

39.     The FOIA treats an agency's failure to timely respond to an appeal as a constructive denial for exhaustion purposes.  5 U.S.C. § 552(a)(6)(C)(i).

**D. The FBI's March 6, 2020 Response to Cohodes's January 15, 2020 FOIA Request**

40.     On March 6, 2020, the FBI purported to respond to Cohodes's January 15, 2020 FOIA request by producing "documents from previous requests regarding your subject."  The FBI's March 6, 2020 letter is attached to this Complaint as Exhibit 5.

41.     Enclosed with the FBI's March 6, 2020 letter were 12 pages of documents containing numerous redactions.  The enclosed documents are attached to this Complaint as Exhibit 6.

42.     These disclosures reveal that in October and early November 2017, there was a series of emails and calls complaining to Isakson, and Isakson made phone calls to the FBI on behalf of that complainant.  Then, in November 2017, Senator Isakson sent correspondence from a "constituent" (name redacted).  The correspondence appears to be an email relating to communications with an "Agent," about a subject that has been redacted. In January 2018, the Deputy Assistant Director of the FBI wrote to Isakson assuring him that the matter had been brought to the "attention of appropriate personnel for any action."

7

43.     Also in January 2018, according to Petit's own website, Petit, Taylor, Lexi Haden (MiMedx's General Counsel), two DOJ "agents", and a DOJ criminal investigator met in New York.  At the meeting, Petit, Taylor, and Haden were asked "to forward to the agents all fraudulent activities that Marc Cohodes was conducting against the Company."  In response to his FOIA request, the DOJ never provided Cohodes any documents reflecting Petit's January 2018 meeting with government employees.  A copy of Petit's account of this meeting is attached to this Complaint as Exhibit 7 and is available on the internet at https://www.petepetit.com/mimedx/downloads/background-of-the-investigation.pdf.

44.     Petit, Taylor, and Haden also met with DOJ officials in 2018 specifically to discuss Cohodes.  Petit claims to have provided evidence to DOJ showing that Cohodes had illegally sold MiMedx shares short.  The DOJ never provided Cohodes any documents reflecting what Petit himself claimed had happened, including notes or memoranda of this meeting.  A copy of Petit's account of this meeting is attached to this Complaint as Exhibit 8 and is available on the internet at https://www.petepetit.com/mimedx/downloads/illegal-short-selling-against-mimedx.pdf.

45.     On December 27, 2018, the *Wall Street Journal* published a story describing the FBI agents' visit to Cohodes's home and the involvement of Isakson and Petit.  The story quoted an FBI spokesperson as stating that, "In this instance the Special Agents complied with FBI policy and we consider this matter closed."  A copy of that article is attached to this Complaint as Exhibit 9 and is available on the internet at https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861.  The FBI did not provide any documents reflecting the investigation of Petit's and others' complaints, the actions taken by the FBI, the review of those actions, and the decision to close the matter.

46.     The government's disclosures are virtually all redacted, and they do not represent all of the communications sought by the FOIA requests.  For example, there are no notes of telephone conversations, no memos between the FBI and any United States Attorney's Office (which were required by the FBI's own policies before infringing on a person's First Amendment rights), no documents from any United States Attorney's

8

1  Office(s), and no FBI reports of the interview that the FBI conducted of Mr. Cohodes and his
2  wife or any other FBI reports concerning their conduct.

3       47.     It is in the public interest to know whether a Senator has been the subject of
4  improper influence, whether a Senator has violated the law or his ethical duties, and whether
5  FBI Special Agents have misused their authority to advance the personal interests of
6  someone later indicted for fraud.

7  **E. Cohodes's April 21, 2020 FOIA Requests**

8       48.     On April 21, 2020, Cohodes submitted three new FOIA requests to the FBI, the
9  EOUSA, and the DOJ.  Cohodes's April 21, 2020 FOIA requests are attached as Exhibit 10.  The
10 purpose of the requests was to clarify that Cohodes was personally making the FOIA requests, and
11 not his counsel.  Cohodes's April 21, 2020 requests were otherwise identical to his January 15, 2020
12 requests.  Neither the FBI nor the EOUSA responded to the requests within the statutory time limit.
13 The DOJ responded without identification or production of any records and denied Cohodes's
14 administrative appeal. Because the FBI and the EOUSA failed to make a determination within
15 the time period required by the statute, Cohodes filed the initial complaint in this lawsuit on
16 June 17, 2020.

17 **F. Cohodes's June 9, 2020 FOIA Requests**

18      49.     On June 9, 2020, Cohodes submitted his FOIA requests to the Criminal
19 Division of the Department of Justice.  A copy of those requests is attached as Exhibit 11.
20 They are parallel to his April 21, 2020 requests.  On July 15, 2020, the Criminal Division
21 responded with a partial denial of those requests, and Cohodes submitted an administrative
22 appeal on August 13, 2020.  The Criminal Division has made no further response to the
23 FOIA requests and has not responded to Cohodes's administrative appeal.

24

25                    **<u>FIRST CLAIM FOR RELIEF</u>**

26  **Violation of the Freedom of Information Act for Plaintiff's April 21, 2020 Request to**
27    **the Federal Bureau of Investigation, a Component of the Department of Justice**

28      50.     Plaintiff repeats and realleges paragraphs 1-49.

9

51.     Plaintiff properly requested the records described in the April 21, 2020 FOIA request to the FBI, a component of the DOJ, in compliance with the requirements of 5 U.S.C. § 552 and the applicable internal regulations, 28 C.F.R. § 16.3.

52.     The records requested by Plaintiff are under the custody and/or control of the FBI.

53.     The FBI did not respond to Plaintiff's April 21, 2020 FOIA request within the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The FBI's failure to respond amounted to a constructive denial of Plaintiff's April 21, 2020 FOIA request.  5 U.S.C. § 552(a)(6)(C)(i).

54.     When the FBI did respond to Plaintiff's earlier requests sent through counsel on March 6, 2020, it wrongfully redacted and withheld documents under FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  Those exemptions do not apply to Plaintiff's requests.

55.     The FBI has wrongfully withheld agency records requested by Plaintiff and has failed to comply with the statutory time limit for processing Plaintiff's April 21, 2020 FOIA request.

56.     The FBI's wrongful withholding of the records sought by Plaintiff's April 21, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

57.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the FBI continues to improperly withhold and/or delay the production of agency records in violation of FOIA. Plaintiff will suffer irreparable injury from and have no adequate legal remedy for the FBI's illegal withholding of government documents pertaining to the FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public company through violations of individual constitutional rights.

## SECOND CLAIM FOR RELIEF

**Violation of the Freedom of Information Act for Plaintiff's April 21, 2020 Request to the Executive Office for United States Attorneys, a Component of the Department of Justice**

10

58.     Plaintiff repeats and realleges paragraphs 1-49.

59.     Plaintiff properly requested the records described in the April 21, 2020 FOIA request to the EOUSA, a component of the DOJ, in compliance with the requirements of 5 U.S.C. § 552 and the applicable internal regulations, 28 C.F.R. § 16.3.

60.     The records requested by Plaintiff are under the custody and/or control of the EOUSA.

61.     The EOUSA did not respond to Plaintiff's April 21, 2020 FOIA request within the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The EOUSA's failure to respond amounted to a constructive denial of Plaintiff's April 21, 2020 FOIA request.  5 U.S.C. § 552(a)(6)(C)(i).

62.     The EOUSA has wrongfully withheld agency records requested by Plaintiff and has failed to comply with the statutory time limit for processing Plaintiff's April 21, 2020 FOIA request.

63.     The EOUSA's wrongful withholding of the records sought by Plaintiff's April 21, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

64.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the EOUSA continues to improperly withhold and/or delay the production of agency records in violation of FOIA.

65.     Plaintiff will suffer irreparable injury from and have no adequate legal remedy for the EOUSA's illegal withholding of government documents pertaining to the FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public company through violations of individual constitutional rights.

**THIRD CLAIM FOR RELIEF**

**Violation of the Freedom of Information Act for Plaintiff's June 9, 2020 Request to the Criminal Division, a Component of the Department of Justice**

66.     Plaintiff repeats and realleges paragraphs 1-49.

11

1    67.    Plaintiff properly requested the records described in the June 9, 2020 FOIA

2    request to the Criminal Division, a component of the DOJ, in compliance with the

3    requirements of 5 U.S.C. § 552 and the applicable internal regulations, 28 C.F.R. § 16.3.

4    68.    The records requested by Plaintiff are under the custody and/or control of the

5    Criminal Division.

6    69.    The Criminal Division did not respond to a portion of Plaintiff's June 9, 2020

7    FOIA request within the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The

8    Criminal Division's failure to respond amounted to a constructive denial of Plaintiff's April

9    21, 2020 FOIA request.  5 U.S.C. § 552(a)(6)(C)(i).

10    70.    Plaintiff timely appealed the Criminal Division's denial of the remaining

11    portion of Plaintiff's June 9, 2020 FOIA request, but the Criminal Division did not respond

12    within the time limit for processing Plaintiff's appeal.  The Criminal Division's failure to

13    timely respond to Plaintiff's appeal constitutes a constructive denial of Plaintiff's appeal.

14    71.    The Criminal Division has wrongfully withheld agency records requested by

15    Plaintiff.

16    72.    The Criminal Division's wrongful withholding of the records sought by

17    Plaintiff's June 9, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

18    73.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure

19    of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the Criminal Division

20    continues to improperly withhold and/or delay the production of agency records in violation

21    of FOIA.

22    74.    Plaintiff will suffer irreparable injury from and have no adequate legal remedy

23    for the Criminal Division's illegal withholding of government documents pertaining to the

24    FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public

25    company through violations of individual constitutional rights.

26

27

28

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff Marc Cohodes respectfully prays for relief as follows:

3      A.      Declare that the defendants' failure to disclose the records requested by the

4 plaintiff is unlawful;

5      B.      Order the defendants to immediately conduct a thorough search for the

6 requested information;

7      C.      Order the defendants to process expeditiously the requested records in their

8 entirety;

9      D.      Order the defendants, upon completion of such processing, to disclose the

10 requested records in their entirety and make them available to the plaintiff;

11      E.      Provide for expeditious proceedings in this action;

12      F.      Enter a preliminary and permanent injunction against the defendants order the

13 relief requested herein;

14      G.      Award to the plaintiffs their litigation costs and reasonable attorneys' fees

15 incurred in this action; and

16      H.      Grant such other relief as the Court may deem just and proper.

17

18 Dated:  September 29, 2020                      THE NORTON LAW FIRM P.C.

19

20                                             By:_____
                                                       George C. Harris
21

22                                                Attorneys for Plaintiff
                                                  MARC COHODES
23

24

25

26

27

28

CASE NO. 20-CV-04015-SBA

FIRST AMENDED COMPLAINT

# EXHIBIT 1



January 15, 2020

**<u>VIA E-MAIL</u>**

FOIA/PA Mail Referral Unit
United States Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Phone: (202) 616-3837
E-mail: MRUFOIA.Requests@usdoj.gov

Re:   <u>Freedom of Information Act Request to the Department of Justice</u>

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the United States Department of Justice referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2.  All documents and communications in the possession, custody, or control of the United States Department of Justice referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him. Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

U.S Department of Justice

**Certification of Identity**



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3]

Current Address

Date of Birth          Place of Birth

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4]          **Date**   1/13/2020

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361

# EXHIBIT 2



January 15, 2020

**<u>VIA ONLINE SUBMISSION</u>**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

Re: <u>Freedom of Information Act Request to the Federal Bureau of Investigation</u>

Dear Mr. Hardy:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the Federal Bureau of Investigation referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2. All documents and communications in the possession, custody, or control of the Federal Bureau of Investigation referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him. Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Federal Bureau of Investigation
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky

THE NORTON LAW FIRM PC

299 Third Street, Suite 106

Oakland, California 94607

mturetzky@nortonlaw.com

Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3] █████████

Current Address █████████████████████████████████████████

Date of Birth ██████████   Place of Birth ████████████████████

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] _____   **Date** 1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

# EXHIBIT 3



January 15, 2020

**<u>VIA ONLINE SUBMISSION</u>**

Kevin Krebs
Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
175 N Street, N.E.
Suite 5.400
Washington, DC 20530-0001

Re:     <u>Freedom of Information Act Request to the Executive Office for United States Attorneys</u>

Dear Mr. Krebs:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide
me with copies of:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his
    employees, or any person acting on his behalf and the United States Attorney's Office for
    the Southern District of New York referring or relating to MiMedx, Parker Petit, or Marc
    Cohodes.
2.  All documents and communications in the possession, custody, or control of the United
    States Attorney's Office for the Southern District of New York referring or relating to
    Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable
duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please
contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific
exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt
material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him.
Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the
disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3] ▮▮▮▮▮

Current Address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Date of Birth ▮▮▮▮▮▮▮▮▮▮          Place of Birth ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** _____          **Date** 1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

# EXHIBIT 4



February 21, 2020

**BY ONLINE SUBMISSION (FOIA STAR)**

U.S. Department of Justice
Office of Information Policy (OIP)
441 G Street NW, Sixth Floor
Washington, D.C. 20001
DOJ.OIP.FOIA@usdoj.gov

> Re:  *Freedom of Information Act Appeal of the DOJ, FBI, and EOUSA's*
> *Constructive Denial of Freedom of Information Act Request Nos.*
> *EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-*
> *001161 (EOUSA) submitted by Matthew Turetzky on January 15, 2020*

To Whom It May Concern,

I hereby appeal the constructive denials by the Department of Justice, the Federal Bureau of Investigation, and the Executive Office of United States Attorneys of the Freedom of Information Act (FOIA) Requests Nos.  EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA).

I submitted these FOIA requests on January 15, 2020.  The requests sought "all correspondence and communications between Senator Jonny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes."  The requests included a signed privacy release by Mr. Cohodes on form DOJ-361 and my agreement to pay reasonable duplication fees not to exceed $1,500 per request.

The FOIA requires agencies, such as the DOJ, FBI, and the EOUSA to respond within 20 working days of receiving a request.  5 U.S.C. § 552(a)(6)(A)(i).  Here, the agencies have not responded within the 20 working-day deadline.  The FOIA treats such failures to respond as constructive denials.  5 U.S.C. § 552(a)(6)(C)(i).

February 21, 2020
Office of Information Policy
Page 2

      I therefore appeal your denials of my FOIA requests and further request that you respond to this appeal within 20 working-days as required by statute.  5 U.S.C 552(a)(6)(A)(ii).

      If you have any questions about this administrative appeal, please contact me by email at mturetzky@nortonlaw.com or telephone at 510-906-4905.

                  Sincerely,

                  Matthew W. Turetzky

Enclosures (FOIA Request and Mr. Cohodes Signed Form DOJ 361 (Privacy Release))

# EXHIBIT 5



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 28, 2020

MR. MATTHEW W TURETZKY
THE NORTON LAW FIRM PC
SUITE 106
299 THIRD STREET
OAKLAND, CA 94607

FOIPA Request No.: 1457448-000
Subject: MiMedx (Correspondence between
FBI and Senator Johnny Isakson)

Dear Mr. Turetzky:

The enclosed 10 pages of records were determined to be responsive to your subject and were previously processed and released pursuant to the Freedom of Information Act (FOIA).   Please see the selected paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☑     In an effort to provide you with responsive records as expeditiously as possible, we are releasing documents from previous requests regarding your subject. We consider your request fulfilled.  Since we relied on previous results, additional records potentially responsive to your subject may exist. If this release of previously processed material does not satisfy your request, you may request an additional search for records.  Submit your request by mail or fax to – Work Process Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997. Please cite the FOIPA Request Number in your correspondence.

☐     Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want the additional records processed.  Please submit your response within thirty (30) days by mail or fax to—Work Processing Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997.  Please cite the FOIPA Request Number in your correspondence. **If we do not receive your decision within thirty (30) days of the date of this notification, your request will be closed.**

☐     One or more of the enclosed records were transferred to the National Archives and Records Administration (NARA).  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.

If this release of the previously processed material does not satisfy your request, you may file a FOIPA request with NARA at the following address:

　　　　　National Archives and Records Administration
　　　　　Special Access and FOIA
　　　　　8601 Adelphi Road, Room 5500
　　　　　College Park, MD 20740-6001

☐     Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA), and they were not previously processed pursuant to the FOIA.  You may file a request with NARA using the address above.

☐     One or more of the enclosed records were destroyed.  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) , Title 44, United States Code, Section 3301 as implemented by Title 36, Code of Federal Regulations, Part 1228; Title 44, United States Code, Section 3310 as implemented by Title 36, Code of Federal Regulations, Part 1229.10.

☐     Records potentially responsive to your request were destroyed.  Since this material could not be reviewed, it is not known if it was responsive to your request.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA)  according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.

☐     Documents or information referred to other Government agencies were not included in this release.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.  **"Part 3"** includes general information about FBI records that you may find useful.  Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Information Management Division

Enclosure(s)

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. **Part 1** of the Addendum includes standard responses that apply to all requests. **Part 2** includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. **Part 3** includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)    **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)    **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)   **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)    **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

# EXHIBIT 6

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1457448-0

Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1405921-0

Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```



# JOHNNY ISAKSON
## UNITED STATES SENATOR · GEORGIA

# Fax Cover Sheet

One Overton Park
3625 Cumberland Boulevard
Suite 970
Atlanta, Georgia 30339
770-661-0999
770-661-0768 (Fax)

**To:** Congressional        **From:** _____        b6
                                                                b7C
**Fax:** 202-324-6490        **Pages:** [ ] including cover      b7E

**Date:** 11/20/17

**Subject:** _____                   b6
                                                                b7C

## Comments:

_____ in touch with our office regarding assistance in reaching

out to the FBI _____        b7E

_____ We

appreciate all appropriate action in accordance with established policies and procedures.

I can be reached at _____ with any questions.                b6
                                                                b7C

_____

JOHNNY ISAKSON
GEORGIA

http://isakson.senate.gov

131 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-3643

ONE OVERTON PARK
3625 CUMBERLAND BOULEVARD, SUITE 970
ATLANTA, GA 30339
(770) 661-0999

**United States Senate**

WASHINGTON, DC 20510

November 20, 2017

VETERANS' AFFAIRS
CHAIRMAN

SELECT COMMITTEE ON ETHICS
CHAIRMAN

FINANCE

HEALTH, EDUCATION,
LABOR, AND PENSIONS
SUBCOMMITTEE ON
EMPLOYMENT AND WORKPLACE
SAFETY, CHAIRMAN

FOREIGN RELATIONS
SUBCOMMITTEE ON
STATE DEPARTMENT AND USAID
MANAGEMENT, INTERNATIONAL OPERATIONS,
AND BILATERAL INTERNATIONAL
DEVELOPMENT, CHAIRMAN

Mr. Gregory Brower
Assistant Director of Congressional Affairs
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, Nw, Room 7240
Washington, D.C. 20535

RE| |

b6
b7C

Dear Mr. Brower:

Please find enclosed correspondence I received from the above-referenced constituent. I would appreciate
your review of this information in accordance with established policies and procedures. Upon completion
of your review, please forward clarification of your findings to the address below.

In the event my office may be of further assistance, please do not hesitate to contact| |at| |
| |Thank you for your efforts in this matter, and I look forward to hearing from you soon.

b6
b7C

Sincerely,

Johnny Isakson
United States Senate

Enclosure (s)
One Overton Park, Suite 970
3625 Cumberland Blvd
Atlanta, GA 30339
ATTN:| |

b6
b7C

_____ (Isakson) _____                                b6
                                                               b7C

**Subject:**              FW: FBI

**From:** _____ [mailto _____
**Sent:** Friday, November 17, 2017 3:52 PM                    b6
**To:** _____ (Isakson) _____                 b7C
**Subject:** RE: FBI

                                                               b6
                                                               b7C
                                                               b7E

As a result, we made contact with _____ who put us in touch with Agent _____ We spoke to Agent ____ over
the phone _____ The next day, we provided Agent ____
information, including ____                                    b6
_____ We will be happy to _____ provide it to you.  Although Agent ____  b7C
                                                               b7E

We spoke again with Agent _____ but have not heard from him since this last contact.

                                                               b6
                                                               b7C
                                                               b7E

Thanks,
_____                                                   b6
                                                               b7C

1



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

The Honorable Johnny Isakson
United States Senator
Suite 970
One Overton Park
3625 Cumberland Boulevard
Atlanta, GA 30339

JAN 2 5 2018

Dear Senator Isakson:

    I am writing in response to your November 20, 2017 letter to the FBI on behalf of your constituent [                    ]

    In order to protect the integrity of all investigations, the FBI does not generally comment on the status or existence of any potential investigative matter. Please be assured this matter has been brought to the attention of the appropriate personnel for any action deemed necessary.

    I appreciate your bringing this matter to our attention, and I hope this information will be helpful to you in responding to [                    ]

Sincerely,

J.C. Hacker
Deputy Assistant Director
Criminal Investigative Division

b6
b7C

b6
b7C

▓▓▓▓▓▓▓▓▓ **(DO) (FBI)**

b6
b7C

From:              ▓▓▓▓▓▓▓ (DO) (FBI)
Sent:              Monday, October 16, 2017 8:58 AM
To:                 ▓▓▓▓ (AT) (FBI)
Subject:         RE: Victim Referral

b6
b7C

▓▓▓▓▓▓▓▓

b6
b7C
b7E

I got a message Sunday evening from an attorney representing ▓▓▓▓▓▓▓▓▓▓▓ In the voicemail the attorney said▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I haven't called him back yet, but I apologize for sending this your way ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ The Senator gave me the understanding ▓▓▓▓▓▓▓▓▓▓▓▓▓ When you have a chance could you give me a quick call. Thanks▓▓▓▓▓▓

SSA ▓▓▓▓▓▓▓▓
Office of Congressional Affairs, FBI
Desk:▓▓▓▓▓▓
Cell:▓▓▓▓▓▓▓

b6
b7C

-----Original Message-----
From▓▓▓▓▓▓▓ (DO) (FBI)
Sent: Friday, October 13, 2017 4:35 PM
To▓▓▓▓▓▓ (AT) (FBI)▓▓▓▓▓▓▓▓
Cc:▓▓▓▓▓▓▓ (DO) (FBI)
Subject: RE: Victim Referral

b6
b7C

▓▓▓▓▓▓▓

b6
b7C

I spoke with▓▓▓▓▓ and gave▓▓▓ your number.▓▓▓▓▓

-----Original Message-----
From▓▓▓▓▓▓ (DO) (FBI)
Sent: Friday, October 13, 2017 4:12 PM
To▓▓▓▓▓ (AT) (FBI)▓▓▓▓▓▓▓▓
Cc:▓▓▓▓▓▓ (DO) (FBI)
Subject: Victim Referral

b6
b7C

▓▓▓▓▓▓▓

As we discussed over the phone, I recently received a call from Senator Johnny Isakson, who informed me that a

b6
b7C
b7E

Although I ordinarily offer the complaint hotline number to constituents seeking to file a complaint.▓▓▓▓▓▓

b6
b7C
b7E

1

b6
b7C
b7E

Let me know which makes more sense.  If you have any questions or issues please let me know.

SSA
Office of Congressional Affairs, FBI
Desk
Cell:

b6
b7C

███████████ (DO) (FBI)                                                                    b6
                                                                                          b7C

**From:**        ████████████ (Isakson) ████████████████████                             b6
**Sent:**        Monday, October 16, 2017 11:49 AM
**To:**          ████████████ (DO) (FBI)                                                 b6
**Subject:**     RE: Senator Isakson of Georgia                                           b7C

Thank you so much ███████████
Really appreciate your fast help on a Friday.
Call on us if we can ever help you.
Best                                                                                      b6
████████████                                                                             b7C

████████████████

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
*email:* ███████████████████████

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

**From:** ████████████ (DO) (FBI) [mailto:████████████]                                   b6
**Sent:** Monday, October 16, 2017 9:13 AM                                                b7C
**To:** ████████████ (Isakson) ████████████████████
**Subject:** RE: Senator Isakson of Georgia

████████████████                                                                          b6
                                                                                          b7C
Thank you for setting this call up.  I was able to speak with the Senator Friday afternoon ████████        b7E
████████████████████████████████████████████████████████
████████████████████████ Please thank the Senator for taking the time to call and refer this matter to
us and please don't hesitate to reach out if there is anything else I can assist you with from a Congressional Affairs
standpoint.  And have a great week! ████████████

SSA ████████████                                                                          b6
Office of Congressional Affairs, FBI                                                      b7C
Desk: ████████████
Cell: ████████████

**From:** ████████████ (Isakson) [mailto:████████████████████                             b6
**Sent:** Friday, October 13, 2017 2:31 PM                                                b7C

1

**To:** [          ] (DO) (FBI) [          ]

**Subject:** Senator Isakson of Georgia

b6
b7C
b7E

Hey [      ] - just left you a voice mail on your [          ] line, but I wanted to also send you a note.
[                ] Senator Isakson, likely will be calling you between 3:30pm and 4pm today to pass along some information from
[                                                                    ]

If you need to reach me, my cell is [              ]
Thank you
[              ]

[                      ]

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
email: [                    ]

b6
b7C

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

```
                    (DO) (FBI)                                              b6
                                                                            b7C
```

| | |
|---|---|
| **From:** | (DO) (FBI) |
| **Sent:** | Thursday, November 02, 2017 10:20 AM |
| **To:** | (AT) (FBI) |
| **Cc:** | (DO) (FBI) |
| **Subject:** | FW: |
| **Attachments:** | |

b6
b7C
b7E

I just spoke with [        ] and basically informed him that it was no longer necessary to involve me in his communications with you and your office.  Please call me if youd like to discuss this matter further, or if there is anything i can do to help you from a Congressional Affairs standpoint.

b6
b7C

SSA
FBI Congressional Affairs
Desk:
Cell

b6
b7C

| | |
|---|---|
| **From:** | [mailto |
| **Sent:** | Wednesday, November 01, 2017 7:47 PM |
| **To:** | (AT) (FBI)            (DO) (FBI |
| **Cc:** | |
| **Subject:** | FW: |

b6
b7C
b7E

Agents

We left messages with both of you today regarding have not heard from you.

b6
b7C
b7E

Please contact me as soon as possible to let us know the status of this matter.  My cell is [        ] and my work number is

b6
b7C

| | |
|---|---|
| **From:** | |
| **Sent:** | Wednesday, November 01, 2017 12:11 PM |
| **To** | |
| **Cc** | |
| **Subject:** | |

b6
b7C
b7E

Agent

b6
b7C
b7E

b6
b7C

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please immediately stop reading this message, delete it from your system and notify the sender at [                    ] that it has been deleted.  Any unauthorized reading, distribution, dissemination, copying, or other use of the information in this message is strictly prohibited.

b6
b7C

# EXHIBIT 7

## BACKGROUND OF THE INVESTIGATION
### November 15, 2019

In 2017, MiMedx Group was highlighted as the fifth fastest growing public company in America by Fortune magazine.  This growth had taken place over the previous eight years as the Company grew from near bankruptcy to approximately 1,000 employees under the leadership of a very experienced serial healthcare entrepreneur, Parker H. "Pete" Petit and a group of executives that had worked with "Pete" at his previously successful companies.  The business and philanthropic history of Mr. Petit is available at www.petepetit.com.

MiMedx developed a very clinically effective and cost-effective product line for the healing of wounds, such as diabetic foot ulcers and venous leg ulcers, and for use with certain surgical procedures.  The Company's product lines were protected by over 106 issued patents and 120 pending patents.  The Company was conducting approximately 30 different clinical studies at notable research facilities across the country and in certain foreign countries.

The Company's financial performance had been stellar, as it had managed to meet or exceed all of its quarterly revenue estimates that had been provided to shareholders for 29 out of 30 quarters.  In addition, its cash flows had been very strong because it was able to repurchase over $130 million of its common stock.  MiMedx provided shareholders revenue guidance of $325 million for calendar year 2017 and over $400 million for calendar year 2018.  By August of 2017, the Company's market capitalization had climbed to approximately $2 billion, which was certainly reasonable considering the MiMedx revenues, their profitability and their growth rates.

In the fall of 2017, MiMedx was about to experience numerous events, most of which were beyond their control, that would cause significant problems, including reducing the market capitalization from approximately $2 billion to around $100 million.  Briefly, these events began during 2016 with a few of their over 400 sales personnel selling competitive products "on the side" while they were full-time MiMedx employees.  A few of those individuals were terminated for cause and lawsuits were filed against them.  They responded by countersuing with charges that channel stuffing and other financial irregularities were occurring at the Company.  Their attorney demanded a $14 million extortion payment from the Company, which was denied.  Unfortunately, illegal short sellers connected with these terminated individuals in the ensuing months, and a bizarre and destructive series of events followed.

In September of 2017, Marc Cohodes, a notorious short seller, began a concerted and focused attack on MiMedx.  He began his attack verbally at a meeting, and then continued with the publication of fraudulent documents, lies and innuendo, most of which followed the allegations of the terminated sales employees.  The Company

easily refuted the Cohodes' allegations with facts that were placed on their website. Cohodes' initial attacks pushed the Company's stock from approximately $18 a share down to $12 during the fall of 2017.  The Company's stock moved back to $18 in late January 2018, as the Company's documents that refuted the Cohodes allegations were published on their website.

MiMedx had utilized Cherry Bekaert, a well-respected large regional accounting firm, as their auditors since 2010.  In the spring of 2017, the Audit Committee decided that the Company should retain one of the big four auditors.  The Audit Committee Chairman, Terry Dewberry, instructed Pete Petit to interview the big four auditors and come back with a recommendation to the Audit Committee.  Mr. Petit came back with a recommendation to utilize Ernst & Young (E&Y) for numerous reasons.  However, he recommended not starting E&Y until after the close out of the 2017 fiscal year.  The Audit Committee disagreed, and they wanted the new auditors to begin with a review of the third quarter of 2017.  Thus, E&Y began their due diligence during the spring of 2017, and they subsequently told the Board they were excited about becoming MiMedx auditors.  E&Y completed the third quarter review of 2017 with accolades to the Board of Directors about the Company's performance and records.

During the fall of 2017, Marc Cohodes continued to publish allegations and lies about the Company in social media and through some of his paid journalistic shills. His group also started writing letters to senators and congressmen making allegations.  He published a <u>fraudulent</u> email from a so-called "MiMedx employee" and sent it to numerous law firms, news outlets and competitors.  This group created a false email address for Petit and sent messages to a very respected Wall Street analyst who was covering the Company.

After witnessing this bizarre behavior, in November Mr. Petit told Andy Brock, the Ernst & Young managing partner, that Marc Cohodes was like no other short seller that he had ever encountered.  Petit stated that he expected Cohodes to write E&Y a threatening letter in the near future.  Mr. Brock retorted, "Ernst & Young is used to this kind of stuff."  Petit emphasized again that he thought Brock should work with the Company's Audit Committee Chairman, Terry Dewberry, and confer with his New York partners to decide what would happen if Cohodes wrote such a letter. Apparently, that conference never took place.

Cohodes is an individual who his friends say is mentally ill.  He threatened Mr. Petit's life on his Twitter account.  That resulted in the FBI visiting his house.  He has been recently charged with assault and battery in a restaurant in San Francisco. Cohodes has even filed an action against Senator Johnny Isaakson, who is Chairman of the Senate's Ethics Committee, for violations relative to MiMedx because he assisted the Company with resolving a matter with the Veteran's Administration. The result was that the VA sent the Company an apology letter.  Senator Isaakson's honesty and integrity are impeccable, but that did not keep Cohodes from making ridiculous accusations.

In February 2018, just weeks before the 2017 audit was to be completed, Marc Cohodes did write a very long letter threatening Ernst & Young. E&Y advised the MiMedx Board that they would <u>not</u> complete the 2017 audit that was due at the end of February until the Company thoroughly investigated all the Cohodes allegations. From that point forward, MiMedx's future was negatively altered <u>very</u> <u>significantly</u>.

At that February meeting, Andy Brock also told the Board that he did not believe the Audit Committee did a satisfactory investigation of the allegations in early 2017 because there was not an expensive forensic audit. However, he and other Ernst & Young staff reviewed that investigation report written by the Troutman Sanders law firm during their due diligence of the Company in the summer of 2017, and they had no concerns until they were threatened by Marc Cohodes. That E&Y comment put the Audit Committee Chairman in a <u>state</u> <u>of</u> <u>paranoia</u>. Instead of simply disagreeing with Andy Brock, the Audit Committee Chair, Terry Dewberry, started down a path of protecting himself and doing Brock's bidding. He finally convinced the majority of the Board to stay with E&Y and do the investigation requested by E&Y.

Mr. Petit advised the Board that he was very frustrated by the Ernst & Young refusal to complete the 2017 audit due to the Cohodes' allegations because he had warned Andy Brock in November that Cohodes would write E&Y a letter of that nature. Nothing was done to prepare for the eventuality. Petit also told the Board that he firmly believed that E&Y would <u>never</u> <u>finish</u> <u>the</u> <u>audit</u> because, once the current allegations were investigated, Cohodes would have even more allegations that E&Y would want to investigate. As Petit predicted, E&Y stayed involved only until November 7, 2018, and then resigned. At that point, they had probably billed the Company five times the original estimate for the audit without completing it.

As the allegations from Marc Cohodes increased during the fall of 2017, Mr. Petit received phone calls from some other public company executives and others who had experienced Cohodes' attacks in the past. One of these individual orchestrated a meeting at the DOJ offices in New York City with Petit, Bill Taylor, the Company's Chief Operating Officer, and Lexi Haden, the Company's General Counsel, with two agents, and a DOJ criminal investigator. This meeting took place in January 2018.

The DOJ staff disclosed that they knew a great deal about Marc Cohodes. They indicated they were collaborating with Canadian and European authorities, and they were pursuing a number of his illegal and fraudulent activities. MiMedx was asked to forward to the agents all fraudulent activities that Marc Cohodes was conducting against the Company. The staff stated that they did <u>not</u> know when the Cohodes investigation would be completed and action taken.

Mr. Petit retained Washington counsel to assist the Company with other contacts with federal agencies relative to these illegal short selling activities. Mr. Petit had this counsel draft a very lengthy letter with supporting documents to Mr. Jay Clayton, the SEC Commissioner, on January 3, 2018, which clearly described Mr.

Cohodes' "short and distort" campaign and his related illegal short selling that was occurring against MiMedx. These documents clearly showed the standard pattern of creating false allegations in some media format and front running the publication date by hedge funds and involved individuals setting up their trades. On the publication date, these funds all participate in trading with market manipulation, such as "spoofing" and "layering." This is a standard process for illegal short selling. In addition, many of these traders create "naked" or "counterfeit" shares by taking extended periods of time to close out their short contract or position. Those contract/positions are supposed to be closed within three days; however, MiMedx had averaged short contracts on their shares out as far as 40 days without closure.

The Company notified FINRA with supporting documents of these and other trading abnormalities, such as "naked" or "counterfeit" shorting. The Company never received responses from either the SEC or FINRA relative to their letters and inquiries prior to Mr. Petit's departure. In addition, numerous MiMedx shareholders formally contacted the SEC and disclosed these illegal short selling activities with no responses as far as Petit knows.

At the February meeting, Mr. Petit's recommendation to the Board was to terminate Ernst & Young and bring Cherry Bekaert back to complete the 2017 audit, since they had already reviewed the first two of those quarters. The Company could then retain another big four auditor for 2018. Any additional investigations that the Board felt required to accomplish could be completed during 2018. Mr. Dewberry disagreed because he claimed this approach would "look bad." Mr. Petit replied that his approach would look bad for 60 days while the audit was completed, but then it would be over. He stated that Mr. Dewberry's solution with E&Y had no closure date because Cohodes would continue to make allegations.

As things progressed, Mr. Petit was absolutely correct. As of today, the Company has stated that they should have audited financial statements in December, which is almost two years from the original due date for the 2017 audit.

With the continuing DOJ investigation, Petit, Taylor and Senken now face the fact that the Audit Committee paid King & Spalding, a large national law firm, $40 million to conduct the investigation. The investigation lasted 15 months. In addition, the Company probably spent another $30 million on Sidley Austin and other attorneys and auditors.

Those expenditures were absolutely ridiculous for a company of the size of MiMedx, but were allowed in order to exploit the Audit Committee's CYA syndrome and the "takeover" of MiMedx by the inexperienced Board. Of course, this approach followed the Sally Yates Doctrine, which was published by DOJ in 2015. Yates was fired by President Trump in 2017, and she returned to King & Spalding, her previous law firm.

In addition to the KPMG opinion on the AvKare contract and the proposed revenue restatement to a cash versus accrual basis, the investigation turned up several distributor transactions in 2015 that King & Spalding has brought into question. The King & Spalding investigation was headed by a career prosecutor, who had no practical business experience.  These transactions that have been highlighted as problematic were nothing more than normal distributor negotiations.  There was one situation, with a distributor by the name of CPM in Dallas, Texas, where the Company had actually fired the distributor once, and the distributor asked to be reinstated.  In those negotiations, the Company reinstituted a consulting contract that had been lost when the distributor was fired.  As it turned out, Petit had some concerns about the business practices of this distributor, and he ended up firing him for the second time within about three months.  All of these issues should not have affected the Company's accounting treatment of these accounts in 2015.

Over the Petit/Taylor years, the Company basically collected in cash all of their approximately $1 billion in reported revenue.  The Company's accounts receivables never got out of a reasonable range without executives taking action to bring it quickly back into range.  When Petit and Taylor left the Company on June 30, 2018, the accounts receivable were in the 65 day range, which is excellent for most healthcare organizations.

The Audit Committee consisting of Dewberry, Evans and Bleser, actually orchestrated a takeover of the Company by using the chaos created by the illegal short selling activities.  There were two motivations for this takeover action.  First, Mr. Dewberry was attempting to find a way to cover the Audit Committee for the "opinion" of Ernst & Young that they had not conducted a sufficient investigation of the terminated sales employees' accusations in early 2017.  Dewberry was paranoid on this issue.  Subsequently, Mr. Evans, who was unemployed at the time, saw an opportunity to become the Chairman of the Board of this Company, which was going to be a very prestigious position for him.  Mr. Evans had never served on a public board until one of the large MiMedx shareholders asked Mr. Petit to consider placing Evans on the Board.  Thus, this takeover process started with the goal of finding ways to have the top executives forced out of the Company.

Very simply, this relatively inexperienced Board took control of the Company and terminated the CFO and Controller because the majority of the Board had decided to restate five years of revenues, and three weeks later asked the CEO and COO to step down because they wanted "to take the Company in a different direction."  From that point forward, a series of very destructive and irrational business decisions were made that were extremely destructive to the Company and extremely disturbing to the shareholders.

The Board first hired a temporary CEO who had no healthcare experience!  They expected him to run a very complicated and sophisticated biotechnology company, which he was incapable of doing.  They did not allow any transition communications with Petit and Taylor.  They promoted a short-term employee into the temporary

CFO role, and he became <u>solely</u> <u>focused</u> on attempting to have the Board elect him as the new CEO.  They also promoted someone who had been a <u>staff</u> <u>person</u> to Mr. Petit, the CEO, into a <u>line</u> <u>role</u> with significant responsibilities for over 80 employees.  That promotion began to cause significant problems.  He was later terminated!

With those decisions, the Company's new revenue growth dropped from 30% annual rates to actually little to <u>no</u> <u>growth</u>.  With the unmanaged legal and accounting expenses, the Board thought they had to terminate 24% of the workforce, which took place on December 5th in spite of Mr. Petit's communications asking them to examine the facts much more carefully.  Those layoffs devastated employee morale.  Sales plunged even further because they terminated 24% of the 400+ sales force.

Also, the temporary CFO went to NASDAQ in mid-September to convince them they would have the 2017 audit finished by the end of February of 2019.  The temporary CFO and several lawyers from Sidley Austin were allowed to do that presentation without any Board oversight, even though Charlie Evans, Chairman of the Board, was given specific advice from Petit, while he was on the Board, not to do so.  Evans claimed it was a "management prerogative," and Petit explained that, if this was not managed with Board oversight, it could result in the Company's stock being delisted. Well, that is <u>exactly</u> <u>what</u> <u>happened</u> on November 7th when the Company had to go back and tell NASDAQ that the information the temporary CFO provided on September 13th was incorrect when he made the presentation.

At that point, the Company's stock had been driven down to below $1 per share with a $100 million market cap.  That price decline represented a 95% drop in the stock price.  Shareholders were irate because there were absolutely <u>no</u> <u>communications</u> from the Company due to the Sidley communications lockdown memo.

In order to justify the out of control spending associated with the investigation and audits, the Board decided that they needed to create the impression of a massive fraudulent operation at MiMedx.  Therefore, they eventually terminated 14 of the top 16 people that built the Company over the eight-year period into the fifth fastest growing public company in America.  These were all extremely competent individuals, some of who had served with Petit and Taylor in their former organizations for many years.  That decision further crippled the Company because, while subordinates were promoted, they did not have the experience, capabilities or business relationships of the former management team.

The previous MiMedx Board of Directors spent numerous hours and legal funds fighting the shareholders' request for a 2018 annual shareholders meeting. Litigation was filed in the state of Florida by Hialeah Municipal Fund and was supported by Petit and the largest shareholders of MiMedx Group.  The Company fought having the 2018 meeting in every way possible, but it finally took place on June 17th as the result of a court order.  This resulted in three unassociated Board

members being elected and appointed to the Board.  In order to preclude Mr. Petit's slate of directors from being elected, the Company signed an agreement with an alternate slate of Board members.  Petit's main goal was to get changes made to the Board to offset their lack of experience, incompetence and their "takeover" objective.  At this point, only four of the original eight outside Board members remain.

Petit and Hialeah continue to campaign for the 2019 shareholders meeting to be held.  However, the Board had always been "entrenched," and they fought continually in the Florida court to not hold the shareholders meetings and change Board members.  The date for the 2019 meeting has still not been decided.

The Atlanta SEC case of insider trading against Mr. Petit that started in 2010 is a good example of the Commission filing charges against a successful business executive with no real evidence.  They accused Mr. Petit of passing inside information to a friend, Earl Arrowood, who was a former Delta Airlines pilot and Vietnam fighter pilot.  Petit and Arrowood flew together from time to time over the years.  Mr. Petit was accused of passing inside information prior to the sale of Matria Healthcare because Mr. Arrowood purchased shares in Matria Healthcare on a day that Mr. Petit had two telephone conversations with him.  However, Mr. Petit had one or two conversations a day with Mr. Arrowood for a week prior to that day, and he had the same conversation pattern with him for a week after that.  This was because Mr. Arrowood was helping Mr. Petit purchase an airplane.  Each one of them would talk to the seller, the lawyers, Cessna aircraft, etc. after each of those calls.  After the purchase, the calls dropped to about one per month again.

Mr. Petit took a lie detector test to prove his innocence, and he passed it with "flying colors."  However, that did not slow down the SEC investigation, and the SEC filed a lawsuit against Mr. Petit.  The Commission carried this investigation and lawsuit on for a total of four and a half years.

One interesting aspect is that Mr. Arrowood purchased two trauches of stock, one four months before the acquisition of Matria Healthcare was announced which he told Mr. Petit about after he made the purchase, and the second one which occurred approximately a month before the acquisition was announced, which he did not tell Mr. Petit about.  Mr. Arrowood held those shares for nine months and six months respectively.  When he sold them, he made a profit of $9,990.  It is certainly acknowledged that, had Mr. Petit passed on inside information, it would not have mattered what the profit on the sale was.  However, this a stark reminder of the SEC's motivation was more to denigrate and convict a successful Atlanta business person who had strong ties to Republican politicians than recovering fraudulent profits for the federal government.  The SEC dropped the case two weeks before the trial.

Petit inherited members of the MiMedx Board when he stepped in to run the Company as CEO and Chairman in 2009.  He left a few members in place because of

their shareholdings.  He added some people that he had some previous experience with, such as Terry Dewberry and Joe Bleser, who were on the Audit Committee.  He added two individuals at the request of two large shareholders.  These were Charlie Evans and Dr. Neil Yeston.  However, Mr. Petit never had the time to build the strength in this Board that he had in his previous Boards at Matria Healthcare and Healthdyne.  In those cases, he had CEOs and entrepreneurial CEOs who would have understood what was happening with this Company and had the courage to do the right things for the Company and its shareholders rather than worrying about CYA issues.

Regardless of the ineptitude of this Board and their corporate takeover, the Company would not have been forced to go through these unnecessary trials and tribulations had it not been for the illegal short selling orchestrated by Marc Cohodes.

# EXHIBIT 8

**ILLEGAL SHORT SELLING AGAINST MIMEDX**
**October 22, 2019**

From about 2013 into 2017, a hedge fund by the name of Deerfield Management had been continually selling MiMedx stock <u>short</u> assuming the Company would be a "flash in the pan," and their revenue growth would drop significantly.  When that did not take place, it is estimated that Deerfield lost a very substantial amount of money (over $50 million) with their short positions.  Consequently, in the summer of 2017, some reliable sources indicated that Deerfield was going around the country encouraging other hedge funds to join them in a concerted short sell attack against MiMedx.  They managed to assemble such a group, and it is believed they aligned with Marc Cohodes in mid-2017 to orchestrate the attacks.

Also in 2017, the SEC fined Deerfied $4.5 million for not supervising two of their healthcare analysts who had bribed a CMS official in mid 2013 into giving them confidential information on forthcoming pricing/reimbursement changes for some dialysis companies.  These two analysts were the same individuals who covered MiMedx for Deerfield.  Theses two individuals were subsequently indicted for this bribery activity.  They could have conducted the same malfeasance against MiMedx because there were CMS pricing changes for MiMedx products being considered in the summer of 2013.  MiMedx shares that were sold short escalated from approximately two million to over 20 million during the summer of 2013.

The major <u>illegal</u> short selling began in the fall of 2017 with coordinated trading attacks on the Company that matched up with social media and journalistic articles being published.  These groups engaged in "front running" or positioning themselves prior to the information releases coming public, which they actually developed, which is illegal.  On the day of the attack, they would engage in "layering" and "spoofing" to push the share price down, which is illegal.  In addition, they would extol the virtues of the accuracy of their fraudulent publications by pointing to the fact that the share price declined substantially!  Also, often they participated in naked short selling of their contracts, which is illegal.

The SEC calls this type of action out in a Bulletin entitled "Social Media and Investing – Stock Rumors," which was modified on February 6th, 2017.  There are a number of illegal issues about this type of activity.  These illegal short sellers were very adept at taking sales personnel who MiMedx fired for cause (selling competitive products on the side) and turning them into whistle blowers and individuals who would create and make up allegations for them.  The propensity for lying by these sales personnel was very evident in their depositions taken for the civil lawsuits the Company filed.

Two of the terminated group of sales employees made allegations in late 2016 of channel stuffing and other accounting irregularities through their Minneapolis attorney, Clayton Halunen.   They were trying to break their non-compete contracts

with the Company.  Halunen went public with that information when MiMedx would not agree to his extortion request for his clients.

This group and other sales persons who became involved with accusations did not understand the Company's accounting processes and procedures relative to the AvKare federal contract.  Actually, neither did their attorney!  Their attorney did no due diligence on his clients' allegations before he went public with them.  Incidentally, only in the U.S. judicial system is this type of disclosure by an attorney allowed without proper due diligence and proof.  In the other judicial systems of developed countries, this type of unverified disclosure is unlawful!  Also, executives were told that Mr. Halunen called Mr. Ty Cotrell of the Denver SEC office to make his client's allegations as had Marc Cohodes done with the other terminated employees.

This was a very aggressive short selling campaign because Cohodes sent accusatory letters to senators, congressmen, the new auditors, Ernst & Young (E&Y), and hospitals where MiMedx was doing their research programs.  Cohodes has made false allegation after false allegation in trying to disrupt MiMedx business in every way possible.

In early 2018, Petit along with Bill Taylor, President, and Lexi Haden, General Counsel, were called to the DOJ offices in New York to meet with investigators.  At that meeting, they were told that the DOJ knew more about Marc Cohodes than they were being given credit for knowing.  They said that they were investigating him for international money laundering and other fraudulent activities, and they had been in contact with Canadian and European authorities.  Petit, Taylor and Haden told the agents about Cohodes' short-and-distort campaign against MiMedx, and the agents asked to be provided with the evidence that Cohodes was engaged in fraud-based illegal activity relative to MiMedx.  The evidence was collected and reviewed by the Sidley Austin law firm.  However, it was never sent because David Rody, a Sidley attorney, told the Board that AUSA Quigley at the DOJ, who he had previously known, did not want the fraudulent information sent.  That was a lie told by Rody, which was later verified by Quigley in writing.  The reason that Rody did this probably relates to the Company being advised to not discuss illegal short sellers by the regulators.

After the first two terminated employees made allegations of channel stuffing at VA hospitals and other accounting irregularities in late 2016, the Audit Committee of the MiMedx Board of Directors engaged their outside counsel, Troutman Sanders, to investigate.  The Investigation included extensive document review and witness interviews.  Both Troutman Sanders and the Audit Committee concluded that there had been no channel stuffing or other accounting irregularities.  The Company published a press release announcing the Audit Committee's findings and conclusions in early March 2017.

Those conclusions did not serve the purposes of Cohodes and his fellow short sellers, who needed someone to make findings of misconduct at MiMedx in order to

continue to drive the stock price down.  So, in February 2018, Cohodes sent a letter to the Company's new big four auditor, Ernst &Young, threatening that if E&Y did not conclude that there had been channel stuffing and accounting fraud at MiMedx, E&Y itself could be sanctioned or held liable.

Months earlier, in November 2017, Petit had warned the E&Y engagement partner, Andy Brock, that such a corrupt letter could be coming, and urged him to notify his partners in New York.  Brock brushed off the warning, saying E&Y was used to such "stuff."  However, when the letter arrived, E&Y could not manage the threats because it feared blowback from its own oversight organizations, the SEC and the PCAOB.  So it told the Company in February of 2018 that it would not finish the 2017 audit until the Company thoroughly investigated all of the Cohodes allegations, including the ones that the Audit Committee and Troutman Sanders had already investigated.

After E&Y delivered this ultimatum to the Board, Petit told the Board that he did not expect E&Y to ever finish the audit.  Petit stated that as soon as they had investigated one set of Cohodes' allegations, Cohodes would make more, and that E&Y was so fearful of SEC and PCAOB oversight that it would insist that each new allegation be investigated before it could complete the audit.  Petit predicted that E&Y would resign from the account rather than finish the audit under these circumstances (which is exactly what happened on November 7, 2018, and many millions of dollars in E&Y costs later).   Petit suggested that the Company bring back Cherry Bekaert to complete the 2017 audit, which Petit felt could take place within 60 to 90 days, and then consider switching to a new big four auditing firm.   But, the majority of the Board decided to stick with E&Y and meet all of their demands -- and the lengthy, costly and destructive saga that has been MiMedx's recent history began.

This "opinion" by certain members of the Ernst &Young staff resulted in the Company basically terminating their 24-year relationship with the Troutman Sanders law firm in Atlanta.  When making those particular allegations, E&Y faulted the Chairman of the Audit Committee, Terry Dewberry, and the Audit Committee itself with conducting an inadequate investigation of these charges made by the two individuals who were first caught selling competitive products on the side while being full-time MiMedx employees.  They insinuated that the investigation should have included a very expensive "forensic audit."  Petit advised that the Board should push back on these E&Y "opinions!"

From that point forward, the Audit Committee was in total charge and had full responsibility for the investigation and ensuing audits.  However, they never prepared a schedule, a budget or scope for this expensive project.  The Audit Committee selected King and Spalding (the Sally Yates law firm; see information on the Sally Yates Doctrine) to conduct the investigation and KPMG to conduct a forensic audit.  The Audit Committee and Board then effectively turned over most of the Company's key audit decisions and many of its business decisions to E&Y, King

3

and Spalding, and KPMG.  In addition, the Company was being "encouraged" to select a new law firm by E&Y.

King and Spalding and KPMG began their investigation in March of 2018, and in less than three months they formed an opinion that the Company had improperly accounted for revenue from their federal distributor, AvKare, for the preceding five years, necessitating a five-year restatement of the company's financials.  They formed this opinion even though it was the exact opposite of what Troutman Sanders and Cherry Bekaert had concluded just a year earlier.  They also formed it without giving executive management a meaningful opportunity to provide input about the non-accounting data they used to make this GAAP related decision.  As a result, they got it wrong.

So why did the Audit Committee recommend to MiMedx's Board that it adopt this new opinion of how revenues with its federal distributor should have been accounted for?  Because it matched the Audit Committee's CYA goals and finding <u>fault</u> with management that would result in <u>dismissals</u>.  Like E&Y, the Audit Committee and Board were intimated by all of the short seller allegations and decided that it was safer for them to "scapegoat" top management for those imaginary wrongdoings than defend against them.  Also, King & Spalding was pushing the Sally Yates Doctrine since she just returned from the DOJ in DC after the President had fired her.

MiMedx executive management used a very sophisticated, orderly, bottom-up method of predicting quarterly demand for its products that yielded extremely accurate sales forecasts so the quarterly revenue forecasts were <u>from</u> <u>sales</u> <u>management</u> and not numbers desired by Petit or Taylor.  That did not mean, of course, that there was no need to incentivize sales people or inquire about the reasons particular sales people or regions were falling short of their own sales predictions.  However, top management never encouraged sales people to do anything unethical, let alone illegal.

The termination of Petit and other top executives at MiMedx is an indirect result of <u>illegal</u> <u>short</u> <u>selling</u> that went unchecked by U.S. regulatory agencies such as the SEC and the Department of Justice.  MiMedx provided information and evidence about the illegal short selling to those agencies, but to Petit's knowledge, they did nothing about it.  That made it possible for Marc Cohodes to intimidate Ernst & Young, the MiMedx Board of Directors, and the MiMedx Audit Committee, with disastrous results for the Company, its shareholders, its employees and its executives.

# EXHIBIT 9

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861

U.S.

# Sen. Johnny Isakson Called FBI on Behalf of MiMedx Group

Republican lawmaker followed up on complaint about investor critical of beleaguered biomedical firm



MiMedx founder Parker 'Pete' Petit has been a political supporter of Sen. Johnny Isakson (R., Ga.), above.

PHOTO: ALEX BRANDON/ASSOCIATED PRESS

*By Gretchen Morgenson and Charley Grant*

Dec. 27, 2018 1:21 pm ET

Sen. Johnny Isakson, a Georgia Republican, called the Federal Bureau of Investigation in October 2017 to follow up on a complaint lodged by Parker "Pete" Petit, the founder of biomedical company MiMedx Group against an investor who criticized the company and Mr. Petit.

Mr. Petit had complained to the FBI and Mr. Isakson called the FBI to ask that they respond to the complaint, his spokeswoman confirmed, adding that Mr. Isakson didn't request a specific outcome.

Seven weeks later, the investor, Marc Cohodes, received a visit from two FBI agents who told him that if he didn't stop posting negative tweets about Mr. Petit and MiMedx, "there would be consequences," he told The Wall Street Journal. The FBI, in response to a question from the

Journal, said Mr. Cohodes had been threatening Mr. Petit on Twitter, which Mr. Cohodes disputes.

A year ago, MiMedx, a maker of amniotic-tissue grafts based in Georgia, was a highflying health-care company. Now, it faces multiple federal investigations over its accounting and sales practices and Mr. Petit has been fired for conduct the company called "detrimental" to its business or reputation. The stock, which peaked at around $18 last January, is now $1.40. At the time, lawyers for Mr. Petit called the action "deeply disappointing."

Mr. Petit has been a political supporter of Mr. Isakson, contribution records show, and Mr. Isakson has called Mr. Petit a longtime friend.

Documents produced under the Freedom of Information Act show correspondence between Mr. Isakson and the FBI's congressional affairs office regarding MiMedx, Mr. Petit and Mr. Cohodes from Oct. 13, 2017, through Jan. 25, 2018.

Although heavily redacted, the emails document a phone call Mr. Isakson, who is the chairman of the Senate Select Committee on Ethics, had with the FBI as a "victim referral." They show Mr. Isakson following up with the FBI several weeks later, requesting the agency's findings. "Please be assured this matter has been brought to the attention of the appropriate personnel for any action deemed necessary," an official in the FBI Criminal Investigation Division responded, according to the documents.

Amanda Maddox, the spokeswoman for Mr. Isakson, said: "Constituents contact us when they are seeking help from a federal agency and, in many cases such as this one, when they want to make sure the agency is aware of their concerns about an issue." She didn't provide an answer as to how many times in a year Mr. Isakson typically calls the FBI on behalf of those constituents.

Mr. Petit didn't respond to emails seeking comment.

The San Francisco FBI, which dispatched the agents to Mr.Cohodes's nearby home, provided a statement from Brenda Atkinson, chief division counsel: "All FBI investigative activity is premised upon the fundamental duty of government to protect the public, and is performed with care to protect individual rights and to ensure that investigations are confined to matters of legitimate government interest."

David Shapiro, a former U.S. Attorney for San Francisco who is Mr. Cohodes's lawyer, said: "What has been disclosed looks like the misuse of power and influence by Isakson and Petit and violations of the FBI's own policies regarding free speech." He said comments made by Mr. Cohodes were neither intended nor likely "to incite imminent lawless action," two tests for action against the exercise of free speech in the FBI Domestic Investigations and Operations Guide. Mr. Shapiro, in a letter dated Dec. 10, has asked the FBI to investigate its actions.

The FBI disputed Mr. Shapiro's view. "In this instance, the Special Agents complied with FBI policy and we consider this matter closed," it said.

On Oct. 10, 2017, Mr. Cohodes, a well-known short seller, including of MiMedx stock, had made a presentation criticizing MiMedx at an investor conference in New York. Mr. Cohodes cited complaints by former employees who said they were fired after telling Mr. Petit about extensive wrongdoing at the company. After the presentation, Mr. Cohodes began posting critical tweets about MiMedx and Mr. Petit.

Three days later, on Friday, Oct. 13, 2017, Mr. Isakson called the FBI, which in turn moved quickly on the senator's request, the documents show. The following Monday, an official in Mr. Isakson's office wrote to the FBI, "Really appreciate your fast help on a Friday."

On Dec. 1, 2017, Mr. Cohodes was at home when two FBI agents arrived and started asking him about two of his tweets, he said. One, dated Oct. 14, 2017, referred to Mr. Petit in which Mr. Cohodes said he'd "bury the little fella in a shoe box." Mr. Cohodes said he mentioned a shoebox because former MiMedx sales representatives had told him employees stored tissue products they claimed to have sold to doctors or hospitals in shoeboxes in their cars.

One of the agents told Mr. Cohodes to stop sending "threatening tweets" about Mr. Petit, he recalled. Mr. Cohodes asked the agents to leave, but they refused, he said. He called the county sheriff and after he arrived, the agents left, he said.

Mr. Isakson's call to the FBI isn't the only intervention he has made on behalf of MiMedx. The Journal has reported that he also contacted the Department of Veterans Affairs for the company in 2016 when the department decided to change its policy on accepting consignment merchandise from vendors.

Supplying VA hospitals was a big part of MiMedx's business and the department's policy change threatened the company's ability to stock the VA with goods on consignment and book them as sales, former employees said. In May 2016, after having received a letter from the company complaining about the VA's acquisition process, Sen. Isakson asked the Senate VA committee staff to follow up.

Ms. Maddox said the senator "does his very best to make the VA aware and learn about proposed solutions" to problems identified by constituents.

**Write to** Gretchen Morgenson at gretchen.morgenson@wsj.com and Charley Grant at charles.grant@wsj.com

*Appeared in the December 28, 2018, print edition as 'MiMedx Investor Faced Query by FBI.'*

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

# EXHIBIT 10

**From:** efoia@subscriptions.fbi.gov <efoia@subscriptions.fbi.gov>
**Sent:** Tuesday, April 21, 2020 5:46 PM
**To:** Matt Turetzky <MTuretzky@nortonlaw.com>
**Subject:** eFOIA Request Received

# Individual Information

**Prefix** Mr. **First Name** Matthew **Middle Name** [          ] **Last Name** Turetzky **Suffix** [          ] **Email** mturetzky@nortonlaw.com **Phone** 5109064905 **Location** United States

# Domestic Address

**Address Line 1** 299 Third Street **Address Line 2** Suite 106 **City** Oakland **State** California **Postal** 94607

# Agreement to Pay

**How you will pay**

I am willing to pay additional fees and will enter the maximum amount I am willing to pay in the box below.

**Allow up to $** 1,500

# Non-Individual FOIA Request

**Request Information**

See attached letter.

**

1

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI???s electronic FOIA Library (The Vault) on the FBI???s public website, http://vault.fbi.gov by clicking on the ???Check Status of Your FOI/PA Request tool??? link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.



April 21, 2020

<u>**VIA ONLINE SUBMISSION**</u>

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

Re:     <u>Freedom of Information Act Request to the Federal Bureau of Investigation</u>

Dear Mr. Hardy:

We represent Marc Cohodes.  On Mr. Cohodes's behalf, we request that you provide Mr.
Cohodes with copies of all of the following pursuant to the Freedom of Information Act, 5
U.S.C. § 552:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his
   employees, or any person acting on his behalf and the Federal Bureau of Investigation
   referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2. All documents and communications in the possession, custody, or control of the Federal
   Bureau of Investigation referring or relating to Marc Cohodes.

Your response to Mr. Cohodes should be sent to me at the address below.

This request is identical to a Freedom of Information Act request we made on January 15, 2020
(1457448-000) and appealed on February 21, 2020 and supplemented on March 11, 2020 (A-
2020-00209, A-2020-00378).  Given the identity of the requests, we ask that you respond to us
immediately rather than wait for the 20 working-day FOIA response period to run.  In any event,
your response is due, at the latest, by May 19, 2020.

Please provide the information in an electronic format, if possible.  Mr. Cohodes agrees to pay
reasonable duplication fees from the processing of this request.  Should such fees exceed
$1,500.00, please contact me to confirm that Mr. Cohodes will pay fees in excess of that amount.

Mr. Cohodes has authorized the release to our law firm of all information that relates or refers to
him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing
the disclosure of information about him to our firm.

Federal Bureau of Investigation
April 21, 2020
Page 2


My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.


Very truly yours,


Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]  Marc Cohodes

Citizenship Status [2]  U.S. Citizen          Social Security Number [3]  ███████████

Current Address  ████████████████████████████████████

Date of Birth  ████████████  Place of Birth  ████████████████

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] _____  **Date** 1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

**From:** admin@foiaonline.gov <admin@foiaonline.gov>
**Sent:** Tuesday, April 21, 2020 5:43 PM
**To:** Matt Turetzky <MTuretzky@nortonlaw.com>
**Subject:** FOIA Request EOUSA-2020-002490 Submitted


This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: EOUSA-2020-002490
- Requester Name: Mr. Matthew Turetzky
- Date Submitted: 04/21/2020
- Request Status: Submitted
- Description: See attached letter.



April 21, 2020

**<u>VIA ONLINE SUBMISSION</u>**

Kevin Krebs
Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
175 N Street, N.E.
Suite 5.400
Washington, DC 20530-0001

Re:    <u>Freedom of Information Act Request to the Executive Office for United States Attorneys</u>

Dear Mr. Krebs:

We represent Marc Cohodes.  On Mr. Cohodes's behalf, we request that you provide Mr. Cohodes with copies of all of the following pursuant to the Freedom of Information Act, 5 U.S.C. § 552:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the United States Attorney's Office for the Southern District of New York referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2.  All documents and communications in the possession, custody, or control of the United States Attorney's Office for the Southern District of New York referring or relating to Marc Cohodes.

Your response to Mr. Cohodes should be sent to me at the address below.

This request is identical to a Freedom of Information Act request we made on January 15, 2020 (EOUSA-2020-001161) and appealed on February 21, 2020 (A-2020-00210).  Given the identity of the requests, we ask that you respond to us immediately rather than wait for the 20 working-day FOIA response period to run.  In any event, your response is due, at the latest, by May 19, 2020.

Please provide the information in an electronic format, if possible.  Mr. Cohodes agrees to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that Mr. Cohodes will pay fees in excess of that amount.

Executive Office for United States Attorneys
April 21, 2020
Page 2


Mr. Cohodes has authorized the release to our law firm of all information that relates or refers to him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to our firm.

My contact information is as follows:

Matthew W. Turetzky

THE NORTON LAW FIRM PC

299 Third Street, Suite 106

Oakland, California 94607

mturetzky@nortonlaw.com

Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

### Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]  Marc Cohodes

Citizenship Status [2]  U.S. Citizen     Social Security Number [3]

Current Address

Date of Birth     Place of Birth

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]**                     **Date**   1/13/2020

[1] Name of individual who is the subject of the record(s) sought.
[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[4] Signature of individual who is the subject of the record sought.

**From:**             Matt Turetzky
**Sent:**             Tuesday, April 21, 2020 5:40 PM
**To:**             MRUFOIA Requests
**Cc:**             David W. Shapiro; Fred Norton; Simone LeVant
**Subject:**             FOIA Request from Marc Cohodes
**Attachments:**             2020-04-21 - LTR to DOJ FOIA.pdf


To Whom It May Concern:

Please see the attached FOIA request to the Department of Justice on behalf of my client, Marc Cohodes.  Please let me know if you have any questions.

Very truly yours,
Matt Turetzky

Matt Turetzky
The Norton Law Firm PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
510-906-4905



This email contains confidential information intended only for the use of the named recipient(s) and may also be protected by the attorney-client privilege or the attorney work product doctrine  or may be exempt from disclosure under applicable law. If you are not a named recipient of this email  or the employee or agent responsible to deliver it to a named recipient  please take note that any dissemination  distribution  copying or other use of this communication by you is strictly prohibited and no privilege is waived. If you have received this communication in error  please immediately reply to the sender of this email and then delete this email from your computer.



April 21, 2020

**VIA E-MAIL**

FOIA/PA Mail Referral Unit
United States Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Phone: (202) 616-3837
E-mail: MRUFOIA.Requests@usdoj.gov

Re:    Freedom of Information Act Request to the Department of Justice

Dear Sir or Madam:

We represent Marc Cohodes.  On Mr. Cohodes's behalf, we request that you provide Mr.
Cohodes with copies of all of the following pursuant to the Freedom of Information Act, 5
U.S.C. § 552:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his
   employees, or any person acting on his behalf and the United States Department of
   Justice referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2. All documents and communications in the possession, custody, or control of the United
   States Department of Justice referring or relating to Marc Cohodes.

Your response to Mr. Cohodes should be sent to me at the address below.

This request is identical to a Freedom of Information Act request we made on January 15, 2020
(EMRUFOIA011520-3) and appealed on February 21, 2020 (A-2020-00211).  Given the identity
of the requests, we ask that you respond to us immediately rather than wait for the 20 working-
day FOIA response period to run.  In any event, your response is due, at the latest, by May 19,
2020.

Please provide the information in an electronic format, if possible.  Mr. Cohodes agrees to pay
reasonable duplication fees from the processing of this request.  Should such fees exceed
$1,500.00, please contact me to confirm that Mr. Cohodes will pay fees in excess of that amount.

Mr. Cohodes has authorized the release to our law firm of all information that relates or refers to
him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing
the disclosure of information about him to our firm.

**299 Third Street, Suite 106, Oakland, California 94607**

Department of Justice
April 21, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

## Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3]

Current Address

Date of Birth                               Place of Birth

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]**                               **Date**   1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361

# EXHIBIT 11

**Matt Turetzky**

---

**From:**         Matt Turetzky
**Sent:**          Tuesday, June 9, 2020 8:48 PM
**To:**            crm.foia@usdoj.gov
**Cc:**            David W. Shapiro; Fred Norton
**Subject:**       FOIA Request from Marc Cohodes
**Attachments:**   2020-06-09 - MT Ltr to Criminal Division FOIA.pdf


Dear Ms. Marchand Jones,

Attached please find a FOIA request that we are submitting on behalf of our client, Marc Cohodes, to the DOJ's criminal division.  All responses to Mr. Cohodes should be directed to me and my colleagues David Shapiro and Fred Norton.

Please let us know if you have any questions.

Respectfully yours,
Matt Turetzky

Matt Turetzky
The Norton Law Firm PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
510-906-4905



This email contains confidential information intended only for the use of the named recipient(s) and may also be protected by the attorney-client privilege or the attorney work product doctrine, or may be exempt from disclosure under applicable law. If you are not a named recipient of this email, or the employee or agent responsible to deliver it to a named recipient, please take note that any dissemination, distribution, copying or other use of this communication by you is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately reply to the sender of this email and then delete this email from your computer.



June 9, 2020

**<u>VIA EMAIL</u>**

Amanda Marchand Jones, Chief
FOIA/PA Unit
Criminal Division
United States Department of Justice
Suite 1127
1301 New York Ave, NW
Washington, DC 20530-0001
Email: crm.foia@usdoj.gov

Re:     <u>Freedom of Information Act Request to the Criminal Division of the United States
        Department of Justice</u>

Dear Ms. Marchand Jones:

We represent Marc Cohodes.  On Mr. Cohodes's behalf, we request that you provide Mr.
Cohodes with copies of all of the following pursuant to the Freedom of Information Act, 5
U.S.C. § 552:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his
   employees, or any person acting on his behalf and the Criminal Division of the United
   States Department of Justice referring or relating to MiMedx, Parker Petit, or Marc
   Cohodes.
2. All documents and communications in the possession, custody, or control of the Criminal
   Division of the United States Department of Justice referring or relating to Marc
   Cohodes.

Your response to Mr. Cohodes should be sent to me at the address below.

Please provide the information in an electronic format, if possible.  Mr. Cohodes agrees to pay
reasonable duplication fees from the processing of this request.  Should such fees exceed
$1,500.00, please contact me to confirm that Mr. Cohodes will pay fees in excess of that amount.

Mr. Cohodes has authorized the release to our law firm of all information that relates or refers to
him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing
the disclosure of information about him to our firm.

**299 Third Street, Suite 106, Oakland, California 94607**

Amanda Marchand Jones
June 9, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky

THE NORTON LAW FIRM PC

299 Third Street, Suite 106

Oakland, California 94607

mturetzky@nortonlaw.com

Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

**U.S Department of Justice**                    **Certification of Identity**



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] _Marc Cohodes_

Citizenship Status [2] _U.S. Citizen_   Social Security Number [3] _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_

Current Address _P.o Box 578 Penngrove, Ca. 94951 / 1050 E. Railroad Ave. Cotati, Ca. 94931_

Date of Birth _6-18-1960_   Place of Birth _Chicago, Illinois_

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4] _____   Date _1/13/2020_

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361