UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARC COHODES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-04015-LB<br><br>**ORDER** |

## INTRODUCTION

The plaintiff asks the government to produce versions of the four redacted documents (submitted in camera for the court's review) that disclose the following: (1) the name of the "MDXG Friend" who sent the anonymous email (FBI 20-cv-0415-280); (2) the name and email address of the individual who forwarded the anonymous email to the FBI (FBI 20-cv-0415-768); (3) the names of the three witnesses interviewed by the government in January 2018 (Treasury Memo 1); (4) the names of the two witnesses interviewed by the government in February 2018 (Treasury Memo 2); and (5) the email address of the person who offered information about Mr. Cohodes in exchange for BitCoin (Treasury Memo 2). The government asserts FOIA Exemptions 6 and 7(C) as grounds for withholding the information. The court orders the production of the documents with the unredacted information.

**ANALYSIS**

Exemptions 6 and 7(C) both protect privacy interests. "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *DOJ v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) (setting forth five guiding principles for determinations under Exemptions 6 and 7(C)).

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy" 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . . *Id.* § 552(b)(7) & (b)(7)(C). Exemption 7(C)'s privacy language is broader than Exemption 6's language in two ways: (1) Exemption 6 requires the invasion of privacy to be "clearly unwarranted;" Exemption 7 eliminates "clearly;" and (2) Exemption 6 protects disclosures that "would constitute" an invasion of privacy; Exemption 7(C) protects disclosures that "could reasonably be expected to constitute" an invasion of privacy. *Reporters Comm.*, 489 U.S. at 756.

The government does not explain how the two emails are "similar files" to "personnel files and medical files" such that they warrant exemption under Exemption 6. Email one is a private email sent under a pseudonym to an attorney, who then forwarded it (email two) to the FBI. To support the contention that they are "similar files," the government cites (without discussing) *Prudential Locations LLC v. U.S. HUD*. But there, the court expressed skepticism that a letter and an email sent to the agency were sufficiently similar and then "assume[d] without deciding" that they were "similar files" within the meaning of Exemption 6. 739 F.3d 424, 430 (9th Cir. 2013), *abrogated on other grounds*, *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). And the initial email here was sent to MiMedx, making it even less similar. That said, the government hasn't established that disclosure would be a clearly unwarranted invasion of privacy (or, under Exemption 7(C), that it could reasonably be expected to be an unwarranted invasion of personal privacy). How can a pseudonym be private if it doesn't lead to the ability to identify the

person? (The government provides no evidence that it could.) And as to the forwarding of the email, as the plaintiff argues, disclosure of lawyers' names in their representational capacities does not result in an unwarranted invasion of privacy.[1] *King & Spaulding LLC v. U.S. Dep't of Health & Hum. Servs.*, 395 F. Supp. 3d 112, 116 (D.D.C. 2019) (Exemption 7(C) case). There is no cognizable privacy interest under Exemptions 6 and 7(C).

As to the application of Exemption 7(C) to the law-enforcement records, there is only a limited privacy interest in matters already in the public domain.[2] An agency can withhold "the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [unless disclosure] is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Generally, if information in 7(C) investigatory files would reveal the identity of subjects, witnesses, or informants in law-enforcement investigations, those portions are categorically exempt from disclosure under *SafeCard*. *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995). But the rule exists to protect the privacy of the persons mentioned in the investigative file. For example, when someone makes public statements offering to help law enforcement, redacting the person's name would not serve any useful purpose in protecting his privacy. *Id.* (Presidential candidate Ross "Perot's decision to bring information connecting himself with such efforts into the public domain differentiates his privacy interest from the interest of unnamed *SafeCard* witnesses who did not voluntarily divulge their identities; these public disclosures effectively waive Perot's right to redaction of his name from documents on events that he has publicly discussed.").

Similarly, public availability of documents is one factor that lessens a privacy interest. In addition, a "person's privacy interest is lessened, if not entirely eliminated, when the person . . . has commented publicly about such information." *Iowa Citizens for Cmty. Improvement v. U.S. Dep't of Agric.*, 256 F. Supp. 2d 946, 955 (S.D. Iowa 2002) (addressing FOIA request to the

---

[1] Pl.'s Resp. – ECF No. 87 at 14 (making this point). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 13 (collecting cases).

1  USDA for an audiotape where a Presidential nominee to an agency position admitted, or at least
2  alluded to, his improper receipt of federal farm subsidies; the court held that because the nominee
3  discussed the contents of the tape during public hearings about his confirmation, "his expectation
4  of privacy with regard to the audiotape has been substantially diminished, if not eliminated
5  entirely, by his own prior public disclosure.")

6  MiMedx's executives discussed Mr. Cohodes publicly. On October 13, 2017, MiMedx's CEO
7  Parker Petit posted on MiMedx's website that the plaintiff was the "ringmaster" of the short-seller
8  "attacks."[3] In October 2019, Mr. Petit said in another blog post that in early 2018 that he, MiMedx
9  president Bill Taylor, and MiMedx general counsel Lexi Haden "were called to the DOJ offices in
10 New York to meet with investigators."[4] Based on the case law, one cannot conclude that the
11 information in the two Treasury Memos — one from January 17, 2018, and a second from
12 February 20, 2018 — is exempt under Exemption 7(C).

13 Even if there were a privacy interest, the public interest in disclosure here — on this record —
14 outweighs any individual privacy interests.

15 "[O]nce a court finds anything greater than a de minimis privacy interest, it must then address
16 whether the public interest in disclosure outweighs the individual privacy concerns." *Prudential*
17 *Locations*, 739 F.3d at 430. "Under Exemption 7(C), we must consider the privacy interests at stake
18 in light of the consequences that would follow from disclosure." *Tuffly v. U.S. Dep't of Homeland*
19 *Sec.*, 870 F.3d 1086, 1093 (9th Cir. 2017) (cleaned up).

20 The case reads like a novel. There is MiMedx's apparent campaign against the plaintiff in
21 2017 and 2018 (recounted in detail in the plaintiff's response), including a lawsuit challenging the
22 short sellers, and resulting in a DOJ investigation of the plaintiff for insider trading.[5] (There is no
23 counternarrative in the record.) In December 2017, the FBI visited the plaintiff at his home,
24 basically (from the plaintiff's unchallenged account) telling him to back off his allegations about

---

26 [3] 10/13/2017 Blog Post, Ex. A to Judge Decl. – ECF No. 87-3.
27 [4] 10/22/2019 Blog Post, Ex. 8 to Compl. – ECF No. 1-1 at 45.
28 [5] Pls. Resp. – ECF No. 87 at 5–9 (citing and attaching evidence); FBI Opening EC, Ex. H to Judge Decl. – ECF No. 87-10.

MiMedx and Mr. Petit.[6] (The court understands the FBI's threat-assessment role: there may be a different government explanation for the visit, but there is no evidence in the record about a different context. And it's not clear that these were actual FBI agents: they seem to be but it's nebulous.) MiMedx's principals (Messieurs Petit and Taylor) were convicted of securities fraud in 2020,[7] which presumably affected the decision not to prosecute the plaintiff for insider trading. Also in 2020, MiMedx paid $6.5 million to resolve a False Claims Act suit involving false commercial pricing disclosures.[8]

Even assuming a cognizable privacy interest (and again, there is none that the court can discern under the relevant case law), "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 974 (9th Cir. 2009) (quoting *Bibles v. Or. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (per curiam)). "Where there are relevant privacy interests at stake, a requestor must demonstrate that the interest served by the disclosure is a significant one, an interest more specific than having the information for its own sake, and that disclosure is likely to advance that interest." *Id.* (cleaned up) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Again, the asserted privacy interest is weak. Moreover, in addition to the facts recounted above that support disclosure, there is an allegation about a report from a sitting senator.[9] At minimum, disclosure casts light on what happened. *Prudential*, 739 F.3d at 433 (discovery of PII furthers the public interest if it "casts light on the conduct of the government"). The court orders the disclosures.

The last issue is the anonymous email address from a person who sent — via the email service protonmail.com — an email to one of the witnesses in the Treasury memos offering to provide

---

[6] Cohodes Decl. – ECF No. 87-1 at 2–3 (¶¶ 4–10).

[7] Pl.'s Resp. – ECF No. 87 at 8 (citing press release); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 2604774, at *3 n.1 (N.D. Cal. June 10, 2014) (judicially noticing FDA letters and press releases).

[8] Pls. Resp. – ECF No. 87 (citing a DOJ press release).

[9] Email, Ex. G to Judge Decl. – ECF No. 87-9.

information about the plaintiff. There is no discernable privacy interest in this anonymous email between private parties that was disclosed to the government.

## CONCLUSION

In sum, the government must produce the following information that it redacted: (1) the name of the "MDXG Friend" who sent the anonymous email (FBI 20-cv-0415-280); (2) the name and email address of the individual who forwarded the anonymous email to the FBI (FBI 20-cv-0415-768); (3) the names of the three witnesses interviewed by the government in January 2018 (Treasury Memo 1); (4) the names of the two witnesses interviewed by the government in February 2018 (Treasury Memo 2); and (5) the email address of the person who offered information about Mr. Cohodes in exchange for BitCoin (Treasury Memo 2).

**IT IS SO ORDERED.**

Dated: May 23, 2024

_____
LAUREL BEELER
United States Magistrate Judge