George C. Harris (CA SBN 111074)
gharris@nortonlaw.com
Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Leah Judge (CA SBN 302406)
ljudge@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Plaintiff
MARC COHODES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC COHODES, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>        Defendants. | Case No. 20-cv-04015-LB<br><br>**PLAINTIFF MARC COHODES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  October 17, 2024<br>Time: 9:30 a.m.<br>Place: Courtroom B, 15th Floor<br>Judge: Hon. Laurel Beeler |

**NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, October 17, 2024, at 9:30 a.m., in Courtroom B, 15th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable Laurel Beeler, Plaintiff Marc Cohodes ("Plaintiff" or "Cohodes") will and hereby does move for an Order awarding attorney's fees and costs in the above-entitled action.

This Motion is made on the grounds that Plaintiff is eligible for and entitled to attorney's fees under 5 U.S.C. section 552(a)(4)(E) of the Freedom of Information Act ("FOIA"), and the amount requested is reasonable given the results obtained by Plaintiff and the fact that Plaintiff shed light on matters of great public interest, including how MiMedx, a public company, and its former executives exercised political influence to enlist the machinery of federal law enforcement to silence Cohodes, a vocal critic of MiMedx's corrupt—and later proven illegal—accounting and business practices.

This Motion is based on this Notice of Motion; the supporting Memorandum of Points and Authorities; the supporting declarations of George Harris, Leah Judge, David Shapiro, and Marc Cohodes; the anticipated Reply brief; the Court's records and files in this action; and any other evidence or argument the Court may receive before or at the hearing on this Motion.

Dated: August 19, 2024

Respectfully submitted,

THE NORTON LAW FIRM PC

By:  */s/ Leah Judge*

Leah Judge
Attorneys for Plaintiff
MARC COHODES

1

PLAINTIFF MARC COHODES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 20-CV-04015-LB

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................1

II.   STATEMENT OF FACTS ........................................................................................2

    A.   Events Giving Rise to Cohodes' FOIA Requests ..................................... 2

    B.   Cohodes' FOIA Requests and Initial Responses Received ...................... 4

    C.   The FOIA Litigation .................................................................................. 5

        1.   FBI Disclosures............................................................................. 5

        2.   EOUSA Disclosures....................................................................... 8

        3.   The Court's De-Redaction Order ................................................... 9

III.  ARGUMENT ...........................................................................................................10

    A.   Cohodes Is Eligible for an Award of Attorney's Fees. ........................... 10

    B.   Cohodes Is Entitled to an Award of Attorney's Fees. ............................ 12

        1.   There Is a Strong Public Interest in the Disclosure of the Requested Records........ 12

        2.   The Nature of Plaintiff's Interest Favors an Award of Fees. ................... 14

        3.   The Government Cannot Establish a Reasonable Basis for Withholding. .............. 15

    C.   The Fees Sought Are Reasonable. ........................................................... 17

        1.   Counsel's Hourly Rates Are Reasonable.................................................. 18

        2.   The Hours Expended Are Reasonable. ..................................................... 19

        3.   Cohodes Is Entitled to "Fees on Fees"..................................................... 22

IV.   CONCLUSION.........................................................................................................22

i

PLAINTIFF MARC COHODES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 20-CV-04015-LB

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC,*
  2022 WL 1814439 (N.D. Cal. Apr. 28, 2022) ..................................................................... 19

*Am. Small Bus. League, v. Small Bus. Admin.,*
  2024 WL 3678001 (N.D. Cal. Aug. 6, 2024) ...................................................................... 10

*Brown v. Sullivan,*
  916 F.2d 492 (9th Cir. 1990) ............................................................................................. 22

*Carson v. Billings Police Dep't,*
  470 F.3d 889 (9th Cir. 2006) ............................................................................................. 19

*Church of Scientology of California v. Harris,*
  653 F.2d 584 (D.C. Cir. 1981) ........................................................................................... 11

*Church of Scientology v. U.S. Postal Service,*
  700 F.2d 486 (9th Cir. 1983),  ............................................................................... 13, 14, 15

*Davy v. C.I.A.,*
  550 F.3d 1155 (D.C. Cir. 2008) ......................................................................................... 15

*Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency,*
  365 F. Supp. 3d 993 (N.D. Cal. 2018) .............................................................................. 16

*Hum. Rts. Def. Ctr. v. Cnty. of Napa,*
  2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ................................................................... 17

*Lissner v. U.S. Customs Serv.,*
  241 F.3d 1220 (9th Cir. 2001) ........................................................................................... 12

*Long v. U.S. I.R.S.,*
  932 F.2d 1309 (9th Cir. 1991) ..................................................................................... 12, 17

*Mogan v. Sacks, Ricketts & Case LLP,*
  2022 WL 1458518 (N.D. Cal. May 9, 2022) ...................................................................... 19

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ..................................................................................... 17, 19

*Myers v. Aetna Life Ins. Co.,*
  2021 WL 5532699 (C.D. Cal. Mar. 31, 2021) ................................................................... 19

*Oregon Nat. Desert Ass'n v. Locke,*
  572 F.3d 610 (9th Cir. 2009) ............................................................................................. 10

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
  478 U.S. 546 (1986) ........................................................................................................... 20

*Piper v. U.S. Dep't of Just.,*
  339 F. Supp. 2d 13 (D.D.C. 2004) ............................................................................... 12, 14

*Playboy Enters., Inc. v. U.S. Customs Serv.,*
  959 F. Supp. 11 (D.D.C.1997) ........................................................................................... 14

ii

*Poulsen v. Dep't. of,*
  *Def.*, 994 F.3d 1046 (9th Cir. 2021)............................................................. 10, 11, 12

*Pritchett v. Slauson Gas Station, LLC,*
  2022 WL 319989 (C.D. Cal. Jan. 10., 2022) ................................................................ 19

*Public.Resource.org v. U.S. I.R.S.,*
  2015 WL 9987018 (N.D. Cal. Nov. 20, 2015) ................................................. 14, 15, 20, 21

*Rosenfeld v. U.S. Dep't of Just.,*
  904 F. Supp. 2d 988 (N.D. Cal. 2012) ................................................................. 11, 19, 22

*Rosenfeld v. U.S. Dept. of Justice,*
  903 F. Supp. 2d 859 ................................................................................................ *passim*

*The Sierra Club v. United States Env't Prot. Agency,*
  75 F. Supp. 3d 1125 (N.D. Cal. 2014) ...................................................................... *passim*

*United States v. Petit,*
  2022 WL 3581648 (2d Cir. Aug. 22, 2022).......................................................................... 8

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  896 F.2d 403 (9th Cir. 1990) .............................................................................................. 20

*Wadelton v. Dep't of State,*
  2018 WL 4705793 (D.D.C. Sept. 30, 2018) ...................................................................... 15

**Statutes**

5 U.S.C. § 552................................................................................................................ *passim*

1

## I.    INTRODUCTION

2      This fee motion seeks to recover attorney's fees and costs reasonably and necessarily incurred by

3  Plaintiff Marc Cohodes in four years of litigation against the Department of Justice ("DOJ"), the Federal

4  Bureau of Investigation ("FBI"), and the Executive Office for United States Attorneys ("EOUSA") to

5  obtain responses to Cohodes' FOIA requests.  Cohodes' FOIA requests sought to discover how

6  MiMedx, a public company, and its former executives exercised political influence to enlist the

7  machinery of federal law enforcement to silence Cohodes, a vocal critic of MiMedx's corrupt—and later

8  proven illegal—accounting and business practices.

9      Mr. Cohodes made his FOIA requests in January and April 2020 and filed this action in June

10  2020 after receiving **only 10 highly redacted pages** from the FBI and nothing from DOJ or the

11  EOUSA.  Eventually, after years of litigation and substantial delay by the government agencies, Mr.

12  Cohodes pried loose more than **900 pages** from the FBI and more than **15,000 pages** from the EOUSA.

13  But even so, the government's productions were piecemeal, inadequate, and delayed, with improper

14  redactions based on the incorrect position that FOIA exemptions protected the identities of certain third

15  parties—including the very MiMedx executives who exerted improper influence on law enforcement

16  and publicly bragged about their efforts.  The government changed its position on certain redactions

17  only after extensive written and oral negotiations between the parties and later, an order from the Court.

18  Moreover, the EOUSA did not even begin to search for responsive documents until 2023, and even then,

19  the Court had to order the EOUSA to move more quickly.

20      Cohodes files this motion to seek an award of attorney's fees and costs incurred in litigating this

21  action.  Cohodes substantially prevailed in his efforts to obtain records responsive to his FOIA requests,

22  shedding light on private individuals' attempts to commandeer law enforcement in service of their own

23  personal ends.  As such, Cohodes is both eligible for and entitled to an award of attorney's fees and

24  costs.  Further, the fees and costs requested here are reasonable because Plaintiff's counsel's hourly rates

25  are well within the range of those charged in the San Francisco market, and the hours expended are fully

26  documented, reflect the careful exercise of billing judgment, and were necessary to achieve the

27  successful disclosure of thousands of pages of documents.  The Court should award the fees and costs

28  requested in full.

## II.     STATEMENT OF FACTS

### A.     Events Giving Rise to Cohodes' FOIA Requests

Cohodes is a long-time stock market analyst and short seller who has also provided valuable information to the SEC and DOJ regarding securities fraud at several companies.  Declaration of Marc Cohodes ("Cohodes Decl.") ¶ 2.  That information has led to civil and criminal law enforcement actions against executives at companies such as Lernout & Hauspie, Media Vision Technology, NovaStar Financial, AremiSoft, California Micro Devices, Network Associates, TakeTwo Interactive, Krispy Kreme Donuts, Boston Chicken, among others.  *Id.*

Around September 2017, Cohodes began to follow allegations of securities and FDA improprieties at MiMedx.  Cohodes Decl. ¶ 3.  He became a vocal critic, posting information about MiMedx's publicly reported financial results and the safety of MiMedx's products.  *Id.*  Cohodes wrote to the company's Board of Directors and its top management, as well as its auditors, about his concerns. *Id.*  Because he made no secret about his identity, former and current employees reached out to Cohodes with information about wrongdoing at MiMedx, including by its then CEO, Parker Petit.  *Id.*

Petit and MiMedx responded by attacking Cohodes. They and their representatives made false claims about the legality of Cohodes' short sales, sent personal attacks to Cohodes, and denied the validity of his criticisms of the company's public reporting and FDA compliance.  *See, e.g.*, ECF 87-3 (Oct. 13, 2017 Petit blog post), ECF 87-4 (MiMedx website homepage as it appeared on Jan. 3, 2018), ECF 87-5 (MiMedx website page "Short Selling Commentary" as it appeared on Jan. 3, 2018). Cohodes' criticisms were proved correct.  MiMedx restated six years of financial statements,[1] its stock was delisted from NASDAQ,[2] it terminated CEO Petit and COO Bill Taylor,[3] and in April 2020 the company agreed to pay $6.5 million to resolve False Claims Act violations for submitting false

---

[1] MiMedx Form 8-K (June 6, 2018) *available at*
https://www.sec.gov/Archives/edgar/data/1376339/000137633918000036/a8-kdocument662018.htm
[2] MiMedx Form 8-K (Nov. 6, 2018) *available at*
https://www.sec.gov/Archives/edgar/data/1376339/000119312518320206/d621451d8k.htm
[3] *See* MiMedx Form 8-K (June 30, 2018) *available at*
https://www.sec.gov/Archives/edgar/data/1376339/000119312518210478/d655278d8k.htm

information to the Department of Veterans Affairs.[4]  Federal prosecutors in the Southern District of New York indicted Petit and Taylor for securities fraud in 2019, and they were convicted in November 2020.[5]

In the meantime, as this FOIA litigation has revealed, MiMedx enlisted then-Georgia Senator Johnny Isakson to obtain the FBI's assistance to silence Cohodes.  On December 1, 2017, two FBI agents visited Cohodes' home and approached Cohodes' wife in their driveway.  Cohodes Decl. ¶ 5. One man identified himself as an FBI agent but told Mrs. Cohodes not to write down his name or take any photos of him.  *Id*.  The FBI agent then followed Mrs. Cohodes as she walked towards her house, even though she had asked him to wait in the driveway to prevent alarming the Cohodes' disabled son. *Id*.  When Mr. Cohodes came outside, the two men told him to "stop sending threatening tweets" about "Mr. Petit" and threatened Cohodes with "consequences," including another home visit, if he did not stop.  *Id*. ¶ 6.  During this conversation, Cohodes called his attorney, who spoke with one of the FBI agents.  *Id*. ¶ 7.  The FBI agent told Mr. Cohodes' attorney that the visit was a "courtesy" to stop Cohodes' "threatening tweets," and repeatedly threatened to return to Cohodes' home if he did not stop tweeting.  *Id*.  Neither FBI agent would provide a business card, and both showed only a portion of their credentials. *Id*. ¶ 9.  Both agents acted in a threatening and heavy-handed manner to Cohodes and his attorney, leaving only after Cohodes called local law enforcement to intervene.  *Id.* ¶¶ 8, 9.

After this incident, Cohodes' attorney, former U.S. Attorney for the Northern District of California David Shapiro, contacted both the FBI and the U.S. Attorney for the Northern District of California to determine whether the two men were in fact FBI agents. Cohodes Decl. ¶ 10.  He also wrote to the Director of the FBI and DOJ's Office of Inspector General.  *Id*.  After two years of complaints, without a substantive response from the FBI or the DOJ, Cohodes sought information through FOIA requests.

---

[4] DOJ Press Release, "MiMedx Group Inc. Agrees to Pay $6.5 Million to Resolve False Claims Act Allegations of False Commercial Pricing Disclosures" (Apr. 6, 2020), https://www.justice.gov/opa/pr/mimedx-group-inc-agrees-pay-65-million-resolve-false-claims-act-allegations-false-commercial.
[5] *See* S.D.N.Y. Press Release, "Former Chief Executive Officer And Chief Operating Officer Of Publicly Traded Biopharmaceutical Company Found Guilty Of Accounting Fraud" (Nov. 19, 2020), https://www.justice.gov/usao-sdny/pr/former-chief-executive-officer-and-chief-operating-officer-publicly-traded-0#:~:text=%E2%80%9CPETE%E2%80%9D%20PETIT

### B.  Cohodes' FOIA Requests and Initial Responses Received

On January 15, 2020, Cohodes, through counsel, submitted three requests at issue in this litigation, seeking:

> [A]ll correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes.[6]

ECF 28 at PDF pp. 15-26 (FAC Exhibits 1 – 3).  The agencies failed to respond to Cohodes' requests within the statutory twenty working-day deadline, 5 U.S.C. § 552(a)(6)(A)(i), and so Cohodes appealed the constructive denials of his requests on February 21, 2020.  *Id.*  Declaration of David Shapiro ("Shapiro Decl.") ¶ 3.  The agencies also failed to respond to the appeals within the statutory twenty working-day time frame, amounting to another constructive denial.  *Id.*

On February 28, 2020, the FBI responded to Cohodes' January 2020 FOIA request by **producing only 10, highly redacted pages**.  ECF 87-7.  The disclosures, which consisted of emails and a letter, revealed that then-Senator Isakson contacted the FBI on behalf of a (name redacted) "constituent" about (redacted) concerns.  *Id.* at PDF pp. 5, 8.  In January 2018, the Deputy Assistant Director of the FBI wrote to Isakson assuring him that the matter had been brought to the "attention of appropriate personnel for any action."  *Id.* at PDF p. 7.

**These 10 pages plainly were not a complete response to Cohodes' FOIA requests**.  MiMedx itself had publicized that its executives met with DOJ "agents" and officials in early 2018 to discuss Cohodes and were asked to forward information concerning Cohodes' MiMedx-related activities.  ECF 1-1 at PDF p. 45.  And the *Wall Street Journal* published a story in December 2018 describing the December 2017 FBI visit to Cohodes' home and quoting an FBI spokesperson stating the FBI's visit "complied with FBI policy."  ECF 28 at PDF p. 66 (FAC Exhibit 9).  Notably absent from the highly redacted 10-page disclosure were notes of the 2018 DOJ meetings, correspondence between DOJ and MiMedx, memos between the FBI and any United States Attorney's Office, documents from any United

---

[6] The January 15, 2020 requests were intended to follow-up on requests previously submitted to the FBI and the DOJ in May 2018 seeking these same documents and communications.

States Attorney's Office(s), and FBI reports of the December 2017 interview that the FBI conducted of Cohodes and his wife or any other FBI reports concerning their December 2017 activities.

On April 21, 2020, Cohodes resubmitted his three FOIA requests to DOJ, EOUSA, and the FBI to clarify that he was personally seeking the records at issue, not his attorneys. Shapiro Decl. ¶ 4. Cohodes received no response to the April 2020 requests for the FBI or EOUSA before filing suit. *Id.* Cohodes received a timely response from the DOJ and made an administrative appeal, which was denied. *Id.*

At the suggestion of DOJ, on June 9, 2020, Cohodes submitted an identical FOIA request to the DOJ's criminal division. ECF 28, PDF p.83 (FAC Exhibit 11). On July 15, 2020, the Criminal Division responded with a partial denial, and Cohodes submitted an administrative appeal on August 13, 2020. Shapiro Decl. ¶ 5. The Criminal Division has made no further response to the FOIA requests and did not respond to Cohodes' administrative appeal before Cohodes filed his first amended complaint in this action. *Id.*

Cohodes filed this action on June 17, 2020 to compel further disclosure by the FBI and EOUSA responsive to Cohodes' April 2020 FOIA requests, ECF 1, and filed his first amended complaint on September 28, 2020 to compel DOJ's Criminal Division to provide disclosures responsive to Cohodes' June 2020 FOIA request. ECF 28.

### C.  The FOIA Litigation

As of the date of this motion, the FBI has produced more than **900 pages of documents**, including re-producing the original 10 pages with significantly fewer redactions, while the EOUSA has produced more than **15,000 pages of documents**. Obtaining these documents was neither straightforward nor quick; indeed, the EOUSA only completed its production in February 2024—four years after Plaintiff made his first FOIA request. Instead, Plaintiff's counsel spent years negotiating with the government, pushing the government to move faster, challenging the government's withholdings, and, ultimately, successfully litigating the application of certain FOIA exemptions to four documents.

#### 1.  FBI Disclosures

After providing only 10, highly redacted pages in February 2020, the FBI released an additional

253 pages in January 2021, a full year after Cohodes made his FOIA request. Importantly, the new production contained the same 10, highly redacted pages produced earlier—but with significantly fewer redactions pursuant to FOIA exemption 7(E). Declaration of George Harris ("Harris Decl.") Ex. A (containing versions of the same documents produced first in February 2020 and again in January 2021). The de-redactions were significant. For example, the 10, less-redacted pages show that Senator Isakson contacted the FBI on October 13, 2017 because a constituent "*and good friend of his believes that he was the subject of stock manipulation.*" Ex. A at FBI 20-cv-04015-52 (PDF p. 20); *compare id.* at PDF p. 9. They also reveal that, on November 1, 2017, MiMedx's attorneys sent the FBI an email titled, "Cohodes has tweeted 'Guns are Loaded and Safety is off' in reference to MiMedx." *Id.* at FBI 20-cv-04015-58 (PDF p. 24); *compare id.* at PDF p. 13. This email was promptly followed by a November 20, 2017 letter from Senator Isakson to the FBI enclosing an almost completely de-redacted email from MiMedx laying out the alleged "short and distort" campaign involving Cohodes and other short sellers. *Id.* at FBI 20-cv-04015-31 - '32 (PDF pp. 16-18); *compare id.* at PDF pp. 5-7.

The FBI continued to make rolling productions in February, March, and April of 2021. These productions included several documents shedding additional light on MiMedx's efforts to silence Cohodes. For example, document FBI 20-cv-0415-768 is an October 24, 2017 email to the FBI (presumably from MiMedx officials or their representatives) referring to an "attached anonymous email" purporting to confirm that Cohodes was involved in a "'criminal' joint attack against MiMedx"; document FBI 20-cv-0415-280 appeared to be the attached anonymous email sent by "An MDXG friend" whose email address was redacted. Harris Decl. Ex. B.

Each of the FBI's rolling productions contained inappropriate redactions of information already in the public domain, including redactions of the names of those complaining to the FBI about Cohodes. Plaintiff's counsel exchanged various written communications with the government seeking de-redaction of such items. Harris Decl. Ex. C (Feb. 18, 2021 email memo from G. Harris to M. Pyle; May 12, 2021 email memo from G. Harris to M. Pyle; June 24, 2021 letter from G. Harris to M. Pyle). Plaintiff's efforts were successful, and the FBI ultimately produced documents on August 31, 2021 that contained replacement pages with information in the public domain de-redacted. *Id.* ¶ 14. The government stated that the "The FBI went through Plaintiff's public domain submissions and released

what the FBI determined to be validly shown to be in the public domain." *Id.* Ex. D at PDF p.2 (Sept. 17, 2021 email from M. Pyle to G. Harris). The FBI then re-produced additional documents with fewer redactions in February 2022. Harris Decl. ¶ 15.

Documents produced by the FBI for the first time in April 2021 also revealed that in October 2019, the USAO for the Northern District of California opened an investigation of Cohodes concerning allegations of insider trading in MiMedx, apparently because of complaints from persons associated with MiMedx. Harris Dec. ¶ 16 & Ex. E. at FBI 20-cv-04015-897 – '898. The investigation was terminated after the USAO for the Southern District of New York indicted MiMedx executives Petit and Taylor for securities fraud in November 2019. *Id.* at '899.

When Mr. Cohodes requested that the government's search in response to the FOIA requests be extended to the USAO for the Northern District of California, the government took the position that the requests to the DOJ and EOUSA did not extend to that office. Harris Decl ¶ 17. Cohodes therefore made a new FOIA request to the EOUSA specifying the USAO for the Northern District of California on July 1, 2021. Harris Decl. Ex. F.

In April 2022, the EOUSA produced 30 pages of heavily redacted documents (with 4 documents withheld in full) responsive to that request. Those documents shed additional light on MiMedx's attempts to have Cohodes prosecuted for criticizing MiMedx. The documents included emails with the subject "Marc Cohodes Referral" exchanged between attorneys from Dickinson Wright and an Assistant U.S. Attorney in the Northern District of California in August and September 2019. Harris Decl. Ex. G. In the emails, Dickinson Wright—apparently representing MiMedx—provided the AUSA with two MiMedx submissions to the SEC concerning Cohodes' purported "short and distort" campaign and promised a "full write up" as part of a referral packet. *See id.* at PDF p. 2, 11. Plaintiff's counsel pressed the government to provide the notably absent submission and referral packets, and ultimately received 91 heavily redacted pages comprising this referral in December 2022, which the government later reproduced with fewer redactions—after prodding from Plaintiff's counsel—in February 2023. Harris Decl. ¶ 18.

In the meantime, the FBI produced in August 2022 an additional 6 redacted documents (FBI 20-cv-04015-946 thru FBI 20-cv-04015-951) consisting of more emails exchanged in September 2019

7

PLAINTIFF MARC COHODES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 20-CV-04015-LB

1   between the Dickinson Wright attorney, AUSAs in the Northern District of California, and FBI agents

2   concerning potential securities fraud charges against Cohodes.  Harris Decl. Ex. H.

3                              **2.   EOUSA Disclosures**

4        Although the FBI completed its production in August 2021 (16 months after Cohodes' submitted

5   his April 2020 FOIA request and 14 months after he filed this action), EOUSA only completed its

6   production in February 2024—nearly four years after Cohodes had requested documents.  EOUSA did

7   not even start producing documents until May 2023, when it disclosed only 7 pages consisting of two

8   heavily redacted memos from the U.S. Department of the Treasury memorializing 2018 interviews by

9   DOJ agents of individuals—clearly MiMedx executives—providing information about Cohodes' alleged

10  market manipulation.  Harris Decl. ¶ 20 & Ex. I.

11       The FOIA request to the EOUSA asked specifically for documents and communications in the

12  custody or control of the USAO for the Southern District of New York.  In January 2021, the EOUSA

13  took the position that it could not search for documents in S.D.N.Y. because it would purportedly

14  interfere with the securities fraud trials of MiMedx executives Petit and Taylor.  Harris Decl. ¶ 21.

15  Although those trials ended with convictions on November 19, 2020, the government invoked

16  Exemption 7(A) to assert that the documents were immune from disclosure pending defendants' appeal

17  of their convictions.  *Id.*  As of January 2021, the government had apparently made no attempt to

18  identify responsive documents with information that was in the public domain as a result of the public

19  trial of the MiMedx executives or responsive documents that are not relevant to the prosecution of those

20  executives.

21       Indeed, it appears that EOUSA did not even start reviewing documents potentially responsive to

22  Cohodes' FOIA request until early 2023, ECF 62 at 4 (Apr. 26, 2023 Joint Case Management

23  Statement), even though Taylor and Petit lost their criminal appeals in August 2022.  *United States v.*

24  *Petit*, 2022 WL 3581648 (2d Cir. Aug. 22, 2022) (affirming convictions).  After finally disclosing the

25  two Treasury Memos in May 2023, EOUSA informed Plaintiff on June 26, 2023 that it had reviewed

26  only 300 documents for responsiveness; had referred 96 of those documents to the SEC for further

27  review; and had only just received 3,600 potentially responsive documents from S.D.N.Y. in need of

28  review.  Harris Dec. ¶ 22.  The government offered no date for further disclosures.  *Id.*  This was a

breach of the government's promise, memorialized in the parties' April 26, 2023 joint case management statement, to make rolling productions every 30 days. ECF 62 at 7.

Having produced only 7 pages of documents from S.D.N.Y., on August 17, 2023, the government proposed completing its production by May 31, 2024. ECF 68 at 1. Plaintiff argued that the delay was unreasonable, instead proposing a completion date of December 1, 2023. ECF 68 at 3. The Court then ordered the government to "provide a more granular update about projection obstacles and a more reasonable timeline" for production. ECF 71. In response, the government submitted a declaration, ECF 72, necessitating responses from Plaintiff. ECF 74, 75. On October 5, 2023, the Court "order[ed] 500 pages per month to be processed and produced on a rolling basis, with the production to be completed by 2/16/2024." ECF 78.

In December 2023, EOUSA produced 2 redacted pages and withheld more than 500 pages in full, offering Exemption 6, Exemption 7(C), and Court Sealing as bases. Harris Decl. Ex. J. In February 2024, EOUSA completed its production, releasing a total of more than 15,000 pages in full and 96 pages in part, and withholding more than 15,000 pages. Harris Decl. Ex. K.

### 3. The Court's De-Redaction Order

Even though the government had previously de-redacted FBI documents containing information in the public domain, Plaintiff was nonetheless forced to litigate the de-redaction of four documents following completion of production by the FBI and EOUSA. Specifically, Cohodes challenged certain redactions of names and email addresses contained in four documents: two emails produced by the FBI dated October 24, 2017 (FBI-20-cv-0415-280, FBI 20-cv-0415-768); and two Treasury memos produced by EOUSA. ECF 87. The redacted names and emails identified either (i) individuals who directly reported information about Cohodes to the government or (ii) individuals who provided information to those direct reporters (who then provided the information to the government). ECF 87 at 5-6. The government invoked Exemptions 6 and 7(C), which permit withholding information contained in "personnel and medical files and similar files," and documents that have a law enforcement purpose, respectively. The Exemptions can be overcome where the public interest in disclosure outweighs the privacy interest possessed by the individual whose information is redacted. The Court agreed with Plaintiff and ordered EOUSA to produce the documents without redactions. ECF 92 and 103.

### III.   ARGUMENT

"To obtain an award of attorney fees under the FOIA, a Plaintiff must demonstrate both eligibility and entitlement to the award." *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).  For the reasons discussed below, Plaintiff is both eligible and entitled to fees, and the Court should award the requested fees in full.

### A.  Cohodes Is Eligible for an Award of Attorney's Fees.

Cohodes is eligible for an award of fees because he substantially prevailed in this litigation by causing the FBI and EOUSA to change their positions and produce thousands of pages of records not produced in response to his FOIA requests; obtaining a court order requiring the EOUSA to produce documents on a set schedule; and obtaining a court order requiring the government to de-redact four documents.

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(4)(E)(i).  A complainant has "substantially prevailed" when he has "obtained relief through either": (1) "a judicial order, or an enforceable written agreement or consent decree;" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(4)(E)(ii).  A complainant need not show causation to satisfy the first factor but may need to show causation in order to satisfy the second factor.  *Poulsen v. Dep't. of Def.*, 994 F.3d 1046, 1050, 1052 (9th Cir. 2021).  A complainant becomes eligible for a fee award after satisfying either factor.  *Id.* at 1050.  Here, Cohodes caused voluntary changes in the FBI's and EOUSA's positions and obtained two judicial orders, rendering him eligible for fees.

As to the former, courts consider three factors to determine whether a Plaintiff has "substantially prevailed" by causing the agency's voluntary or unilateral change in position: "(1) when the documents were released, (2) what actually triggered the documents' release, and (3) whether [the plaintiff] was entitled to the documents at an earlier time."  *Am. Small Bus. League, v. Small Bus. Admin.*, 2024 WL 3678001, at *5 (N.D. Cal. Aug. 6, 2024).  Here, the difference between the parties' pre- and post-litigation positions is dramatic.  As a result of this action, more than **900 pages of documents** from the FBI (production complete August 2022) and more than **15,000 pages of documents** from the EOUSA

(production complete February 2024) have now been produced to Cohodes and are in the public domain. Before filing suit in June 2020, Cohodes had received only **10 highly redacted pages** from the FBI and **nothing from the EOUSA**.  He was entitled to all these documents years before their eventual release by the government.

Moreover, Cohodes belatedly received a "full denial" from the EOUSA on November 13, 2020, strongly indicating that Cohodes would have received no documents from the EOUSA had he not persisted in this litigation.  Harris Decl. Ex. L.  After Cohodes filed this lawsuit, the FBI also reproduced the original 10 highly redacted documents in January 2021, with significant de-redactions of text that it had previously withheld under Exemption 7(E).  *Id.* Ex. A.  *See Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 996 (N.D. Cal. 2012) ("'[T]iming' can directly inform whether a 'causal nexus exists between the litigation and [defendant's] surrender of these documents.") (quoting *Church of Scientology of California v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981)).  And, after consistent advocacy by Plaintiff's counsel, *see* Harris Decl. Ex. C, the FBI re-produced in August 2021 certain pages with fewer redactions, explaining that it "went through Plaintiff's public domain submissions and released what the FBI determined to be validly shown to be in the public domain."  Harris Decl. Ex. D.  *See Rosenfeld*, 904 F. Supp. 2d at 997 (causation satisfied where "time and again [the government] revised its earlier conclusions and opted to release materials to Plaintiff in the face [of] continued litigation").  None of this would have happened without Cohodes' filing suit.

Cohodes also substantially prevailed by obtaining two Court orders "that change[d] the legal relationship between the parties." *Poulsen*, 994 F.3d at 1048.  First, on October 5, 2023, the Court rejected the EOUSA's proposed production schedule and instead "order[ed] 500 pages per month to be processed and produced on a rolling basis [by the EOUSA], with the production to be completed by 2/16/2024."  ECF 78.  *Poulsen*, 994 F.3d at 1054 (explaining that a court order that "affirmatively require[s] the processing and production of documents by a date certain" changes the legal relationship between the parties and thus satisfies the eligibility requirement) (internal quotation omitted).  Second, on May 23, 2024 (and again on July 13, 2024), the Court rejected the government's invocation of Exemptions 6 and 7(C), ordering it to produce four documents without redactions purportedly warranted by those Exemptions.  ECF 92 and 103.  Ordering de-redaction plainly "changed the legal relationship

11

between the parties." *Poulsen*, 994 F.3d at 1048.  Cohodes substantially prevailed and is eligible for an award of attorney's fees.

### B. Cohodes Is Entitled to an Award of Attorney's Fees.

Cohodes is entitled to his attorney's fees because the government unreasonably withheld documents, the disclosure of which served the public interest by shedding light on the integrity of government investigations.  Once a Plaintiff demonstrates that he is eligible for attorney's fees, the district court may determine that the complainant is entitled to fees.  *Poulsen*, 994 F.3d at 1050.  Courts consider four criteria in assessing entitlement: (1) the public interest, or public benefit, from disclosure; (2) any commercial benefit to the Plaintiff resulting from disclosure; (3) the nature of the Plaintiff's interest in the disclosed records; and (4) whether the government's withholding of records had a reasonable basis in law.  *The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1142 (N.D. Cal. 2014).  "These four criteria are not exhaustive, however, and the court may take into consideration 'whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate.'"  *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991) (internal citations omitted).

### 1. There Is a Strong Public Interest in the Disclosure of the Requested Records.

Disclosure of the requested information served a strong public interest in shedding light on how private citizens and a public company, with the assistance of a U.S. senator, were able to engage federal law enforcement to attempt to silence a vocal critic and nearly have him indicted for securities fraud— all while trying to distract from their own securities law violations.  The Ninth Circuit has expressly recognized a public interest in "ensuring the integrity of investigations," as well as understanding whether—and under what circumstances—certain individuals receive discriminatory treatment from government investigators.  *See Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223-24 (9th Cir. 2001) (holding that the public's interest in determining whether Customs officials gave preferential treatment to law enforcement officers who committed a crime "far outweigh[ed]" the officers' privacy interests).  Moreover, courts have made clear that because "the FBI is a vital part of this nation's law enforcement structure and continues to be so [,], [a]llegations and evidence of possible misconduct by this national institution is relevant to the public's information fund."  *Piper v. U.S. Dep't of Just.*, 339 F. Supp. 2d 13,

12

20-21 (D.D.C. 2004) ("The public benefit factor is generally satisfied if Plaintiff's victory is likely to add to the public fund of information that citizens may use in making vital political choices.").

Here, documents obtained by Cohodes revealed that Petit and MiMedx, through their connections to a sitting U.S. Senator, obtained preferential treatment from the FBI.  Indeed, after an FBI agent spoke with Senator Isakson about the complaint of "stock manipulation" from Petit—the Senator's "constituent and good friend"—the agent sent the complaint directly to the "relevant substantive [FBI] squad" even though they would "ordinarily offer the complaint hotline number to constituents seeking to file a complaint [sic]." Harris Decl. Ex. A at FBI 20-cv-04015-52 (PDF p. 20).  In other words, the documents show the public that the FBI was ready and willing to prioritize wealthy "good friends" of a U.S. Senator even when the public legitimately expects taxpayer-funded agencies to show no such favoritism to the well-heeled and well-connected.

The documents also reveal that the motive for the FBI's December 1, 2017 visit to Cohodes' home was equivocal.  In this litigation, the government has maintained that the sole purpose of the FBI's visit to was to address Cohodes' "potentially violent tweets," not to silence him, pointing to the FBI's post-hoc write-up of the incident (a document produced only after this litigation started).  ECF 95 at 3.  But, as noted above, Senator Isakson initially told the FBI that help was needed because of purported "stock manipulation" and ultimately, the federal government nearly indicted Cohodes in 2019 for purported securities fraud based on his criticisms of MiMedx—not any "threatening" tweets (also documents revealed only because of this litigation).

Further, "the public benefit factor takes into account the 'degree of dissemination and the likely public impact that might result from disclosure.'" *The Sierra Club,* 75 F. Supp. 3d at 1142 (quoting *Church of Scientology v. U.S. Postal Service,* 700 F.2d 486, 493(9th Cir. February 4, 1983)).  As explained in Cohodes' complaint and his statement challenging the government's redactions, there is journalistic interest in Petit's activities attempting to silence Cohodes by commandeering federal law enforcement, particularly because it was part of Petit's efforts to distract from his own misconduct.  *See e.g.,* ECF 28, Ex. 9 (Dec. 27, 2018 *Wall Street Journal* story describing FBI agents' visit to Cohodes' home and the involvement of Isakson and Petit); ECF 87-11 (Nov. 29. 2021 letter from Pulitzer Prize-winning investigative reporter Gretchen Morgenson to the Court urging disclosure "given the recent

[securities fraud] convictions of Pete Petit, MiMedx's former chief executive officer, and Bill Taylor, its president"). Indeed, in May 2024, Cohodes' counsel provided Morgenson (now with NBC) and Greg Farrell (Bloomberg) with additional FOIA documents obtained in this litigation at the journalists' request. Judge Decl. ¶ 3.

Moreover, that Cohodes is understandably interested in how law enforcement targeted him at MiMedx's behest does not undermine the public benefit derived from disclosure because "a public benefit may result even though the specific document is for Plaintiff's sole use." *The Sierra Club,* 75 F. Supp. 3d at 1142 (internal quotation omitted). Here, the documents are not for Cohodes' sole use; journalists are reviewing them with respect to matters of public interest. The public interest factor weighs decidedly in favor of Cohodes.

### 2. The Nature of Plaintiff's Interest Favors an Award of Fees.

The second and third factors are "the commercial benefit to the complainant" and "the nature of the complainant's interest in the records sought." *Church of Scientology of California*, 700 F.2d at 492. "Courts regularly consider these factors together." *Public.Resource.org v. U.S. I.R.S.,* 2015 WL 9987018, at *4 (N.D. Cal. Nov. 20, 2015) ("*PRO*"). As discussed above, Plaintiff understandably has a personal interest in learning how Petit abused the legal system to silence his criticism of MiMedx, a company that ultimately sunk under the weight of the very misconduct Cohodes helped exposed. "But the notion that a private interest and public interest 'must be mutually exclusive is not supportable.'" *Piper v. U.S. Dep't of Just*., 339 F. Supp. 2d 13, 21 (D.D.C. 2004) (quoting *Playboy Enters., Inc. v. U.S. Customs Serv.,* 959 F. Supp. 11, 16 (D.D.C.1997)) (awarding fees to Plaintiff seeking documents related to his mother's kidnapping). The targeting of Cohodes by MiMedx and its executives is inextricably intertwined with the public interest in understanding the scope of their attempts to enlist law enforcement to silence critics and distract from their own misconduct—misconduct that resulted in the conviction of Petit and Taylor for securities fraud, MiMedx paying a $1.5 million fine to the SEC for related misconduct,[7] the indictment of three Veterans Administration employees for accepting bribes

---

[7] SEC Press Release, "SEC Charges Biotech Company and Executives With Accounting Fraud" (Nov. 26, 2019), https://www.sec.gov/newsroom/press-releases/2019-243

1  from MiMedx,[8] and MiMedx paying $6.5 million to resolve False Claims Act violations for submitting

2  false information to the government.

3        The Court was correct when it wrote that "the case reads like a novel," ECF 92 at 4.  The

4  journalistic interest in the matter suggests that the disclosed documents will almost certainly inform

5  additional news articles, if not a book of nonfiction, underscoring why these two factors support an

6  award of attorney's fees.  *See Wadelton v. Dep't of State*, 2018 WL 4705793 *6 (D.D.C. Sept. 30, 2018)

7  (awarding fees despite personal interest in disclosures where "clearly there was media interest in the

8  requested records").

9               **3.    The Government Cannot Establish a Reasonable Basis for Withholding.**

10       As to the fourth factor, the government bears the burden of showing that it had a reasonable or

11 colorable basis for not disclosing the requested materials until the Plaintiff filed suit.

12 *Public.Resource.org*, 2015 WL 9987018, at *5 (citing *Church of Scientology of California,* 700 F.2d at

13 492, 492 n.6); *see also Davy v. C.I.A.*, 550 F.3d 1155, 1163 (D.C. Cir. 2008) (explaining it is insufficient

14 for an agency simply to claim that "it offered no resistance" once being subjected to suit).  "This factor

15 'is not dispositive' and can be outweighed where the other relevant factors favor an award."  *Id.* (quoting

16 *Rosenfeld,* 903 F. Supp. 2d at 870).

17       Several of the government's decisions to withhold documents were based on its legally incorrect

18 understanding of the privacy interests protected by Exemptions 6 and 7(C).  First, as discussed above,

19 Plaintiff's counsel expended significant effort in 2021 urging the FBI to de-redact information that was

20 already in the public domain.  Harris Decl. Ex. C.  The FBI acquiesced in August 2021 only after

21 determining Plaintiff had "validly shown" that certain information was in the public domain. Harris

22 Decl. Ex. D.  But it was ***not Plaintiff's burden*** to make this showing.  Instead, the FOIA expressly

23 places "the burden [] on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  The FBI acted

24 unreasonably by forcing Plaintiff to "validly show[]" that public disclosure had undermined the privacy

25

26 ─────────────────────
27 [8] Linette Lopez, Business Insider, "3 VA employees were just indicted over charges they accepted
   bribes from the 'Trump of Georgia's' pharmaceutical firm" (May 10, 2018),
28 https://www.businessinsider.com/veterans-affairs-employees-indicted-for-taking-bribes-from-mimedx-
   2018-5

interests asserted by the government as a basis for withholding.  *See Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 1001 (N.D. Cal. 2018) (factor favored Plaintiff; "FEMA cannot now complain that [Plaintiff's] attorneys request to be compensated for the time they spent attempting, frequently in vain, to have FEMA comply with its statutory . . . obligations.").

Plaintiff was also forced to litigate these same Exemptions.  The government took the incorrect position that the names of MiMedx executives should be shielded from disclosure to protect their privacy—even though, as this Court found, "MiMedx's executives discussed Mr. Cohodes publicly." ECF 92 at 4.  The Court concluded that, "[b]ased on the case law, one cannot conclude that the information . . . is exempt under Exemption 7(C)."  *Id.  See also id.* at 5 (the court could discern no "cognizable privacy interest").  The Court even gave the government a second chance to present caselaw supporting its position, but the government offered "no challenge" to the Court's conclusion that a person who "has commented publicly" on a subject contained in FOIA-disclosed documents lacks a cognizable privacy interest sufficient to justify redacting their names.  ECF 103 at 3.  The government also took the incorrect position that cognizable privacy interests exist in a pseudonym and an anonymous email—a position that the Court rejected as plainly wrong.  ECF 92 at 2 ("How can a pseudonym be private if it doesn't lead to the ability to identify the person?"); *id.* at 6 ("There is no discernable privacy interest in this anonymous email[.]").

For its part, the EOUSA acted unreasonably by refusing to produce documents altogether. Harris Decl. Ex. L.  The simple fact that the EOUSA's position went from complete withholding to disclosure of ***more than 15,000 pages*** of documents when faced with ongoing litigation indicates that the EOUSA did not even bother to investigate and justify their own withholding decision, an unreasonable position given the burden the FOIA places on the government to justify those decisions.  Moreover, it does not appear that the EOSUA even began searching for and reviewing documents until 2023, years after Cohodes made the relevant FOIA request.  ECF 62 at 4.  "Administrative inefficiency of this type weighs against the government on the fourth [entitlement] factor."  *Rosenfeld v. U.S. Dept. of Justice*, 903 F. Supp. 2d 859, 871 (fourth entitlement factor favored Plaintiff; FBI did not refer more than 6,000 pages to Department of the Army for processing until after closing FOIA request).  And once the EOUSA finally began reviewing and producing documents, the Court itself ordered the government to

provide "a more reasonable timeline." ECF 71.

Finally, the government took the incorrect position that Cohodes' original FOIA request to the EOUSA did not reach records from the U.S. Attorney's Office for the Northern District of California, requiring Cohodes to submit an additional request to the that specific office in July 2021. As the EOUSA itself explained in its February 16, 2024 Final Release of Documents, "[t]his letter constitutes the final response from the Executive Office for United States Attorneys, ***the official record-keeper for all records located in this office and the various United States Attorneys' Office***." Harris Decl. Ex. K at PDF p. 2 (emphasis added). EOUSA thus should have construed Plaintiff's original FOIA request to EOUSA to reach *both* S.D.N.Y. and the Northern District of California, instead of forcing Plaintiff to expend time and money submitting an additional request specifically to the latter office.

The government's positions were not reasonable, tipping the entitlement balance in Plaintiff's favor.

## C. The Fees Sought Are Reasonable.

"[O]nce a party is deemed both eligible and entitled to fees, 'the award must be given and the only room for discretion concerns the reasonableness of the amount requested.'" *The Sierra Club*, 75 F. Supp. 3d at 1137 (quoting *Long*, 932 F.2d at 1314). In making this determination, the Court scrutinizes the reasonableness of (1) the hourly rates and (2) the number of hours claimed. *Long*, 932 F.2d at 1313-14. "Under federal law, there is a strong presumption that the lodestar is reasonable and should only be adjusted in 'rare or exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high.'" *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *15 (N.D. Cal. Mar. 28, 2021). *See also The Sierra Club*, 75 F. Supp. 3d at 1147 ("[T]he court 'should normally grant the award in full' if the party opposing the fee request 'cannot come up with specific reasons for reducing the fee request.'") (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008)).

Cohodes seeks **$194,475.00** in attorney's fees and **$400** in costs. Judge Decl. Ex. N; Harris Dec. ¶ 7. Cohodes also seeks an estimated **$44,000** in "fees-on-fees," **only $320** of which have been billed to Cohodes thus far. *Id.* ¶ 8. Both the underlying fees claimed, and the "fees-on-fees" claimed, have been reduced in the exercise of billing judgment. *Id*. ¶¶ 9, 10. This total is consistent with the amount of time

17

PLAINTIFF MARC COHODES' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 20-CV-04015-LB

and work associated with four years of constantly—and successfully—pushing the government to retreat from unreasonable positions and to work with greater speed, yielding more than 16,000 pages of responsive documents.

### 1. Counsel's Hourly Rates Are Reasonable.

"In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rosenfeld*, 903 F. Supp. 2d at 877. "The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Id.* The hourly rates sought here are clearly reasonable and comparable to rates charged in the San Francisco Bay Area. Specifically, Cohodes requests

- an hourly rate of $800 in 2020 and 2021, $850 in 2022, and $895 for 2023 and 2024 for litigation partner George Harris, a former partner at international law firm Morrison & Foerster, former Early Neutral Evaluator in the Northern District, and former tenured law school professor who has been practicing law for more than 40 years, Harris Decl. ¶¶ 2, 11;

- an hourly rate $750 in 2020 and $800 in 2021 for litigation partner David Shapiro, a former federal prosecutor, former United States Attorney for the Northern District, and former partner at Boies Schiller who has been practicing law for 45 years, Shapiro Decl. ¶ 2, Harris Decl. ¶ 11;

- an hourly rate of $725 in 2023 and 2024 for litigation counsel Leah Judge, who graduated from Stanford Law School in 2014, clerked for a federal judge in the Central District of California and on the Ninth Circuit, and has been in private practice focusing civil litigation since ending her clerkships in late 2016, Judge Decl. ¶ 2, Harris Decl. ¶ 11;

- an hourly rate of $540 in 2021 for litigation associate Gil Walton, a 2018 Stanford Law School graduate who clerked on the Eleventh Circuit, Harris Decl. ¶¶ 3, 11;

- an hourly rate of $685 in 2024 for litigation associate Rebecca Kutlow, who graduated Order of the Coif from UCLA School of Law in 2020 and spent nearly four years practicing immigration law, including working on FOIA cases, before joining the Norton Law Firm in May 2024, Harris Decl. ¶ 4, 11;

- An hourly rate of $610 in 2024 for litigation associate Ashley Nakai, who graduated from Stanford Law School in 2021 and practiced civil litigation at Hanson Brigett before joining The Norton Law Firm in May 2023, Harris Decl. ¶ 5, 11.

- and an hourly rate of $325 in 2024 for paralegals Diana Abad and Nathan Whittingham, Harris Decl. ¶ 11.

These rates are well in line with the rates charged by other attorneys in the San Francisco Bay Area. The Wolters Kluwer 2023 Real Rate Report, which analyzes actual law firm billing records, discloses that in 2023 the real rates charged by litigation partners in San Francisco ranged from $436 in

the first quartile to $1,125 in the third quartile; the real rates charged by associates with seven or more years of experience ranged from $404 in the first quartile to $733 in the third quartile; and the real rates charged by associates with three to seven years of experience ranged from $360 in first quartile to $789 in the third quartile. *See* Judge Decl. ¶ 4 & Ex. M (Wolters Kluwer, *2023 Real Rate Report* (2023)) at p. 21, 27.  Nationally, the 2023 rates for paralegals ranged from $156 in the first quartile to $350 in the third quartile.  *Id.* at p. 9.[9]  The rates claimed here are the actual standard rates normally charged by these attorneys to their clients for their work, and the actual rates paid by Cohodes.  Harris Decl. ¶ 12. *See also Myers v. Aetna Life Ins. Co.*, 2021 WL 5532699, at *3 (C.D. Cal. Mar. 31, 2021) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market."); *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006).

The rates charged by Cohodes' attorneys are likewise in line with rates that courts have approved in the Northern District.  *See, e.g., Mogan v. Sacks, Ricketts & Case LLP,* 2022 WL 1458518, *3 (N.D. Cal. May 9, 2022) (**2 years ago;** approving rates of $1,015.7/hour for a partner with 6 years of litigation experience and $450/hour for a junior associate who clerked on the Ninth Circuit); *Sols. 30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC,* 2022 WL 1814439, *2 (N.D. Cal. Apr. 28, 2022) (**2 years ago;** approving rates of up to $980/hour for a partner and $625/hour for an associate; *Rosenfeld*, 904 F. Supp. 2d at 1001-03 (**12 years ago**; approving rates of $700/hour for attorney with 28 years of experience, $550/hour for attorney with 21 years of experience, $250 per hour for an attorney with 10 years of experience).

## 2.   The Hours Expended Are Reasonable.

"Reasonably expended time is generally time that 'could reasonably have been billed to a private client.'"  *Rosenfeld*, 903 F. Supp. 2d at 872 (quoting *Moreno*, 534 F.3d at 1111).  The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and submitting evidence supporting the hours worked. *The Sierra Club*, 75 F. Supp. 3d at 1148.  "As a general matter, attorney's

---

[9] Courts regularly consult the Wolters Kluwer Real Rate Report publication when determining reasonable fees.  *Pritchett v. Slauson Gas Station, LLC,* 2022 WL 319989 at *2 (C.D. Cal. Jan. 10., 2022) ("this Court and others regularly consult the Real Rate Report, a CEB/Wolters Kluwer publication, when awarding attorneys' fees").

fees may be awarded for work that is 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *PRO*, 2015 WL 9987018, at *7 (*quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[H]ours actually expended in the litigation are not to be disallowed without a supporting rationale"). All of counsel's claimed hours are reasonable.

First and foremost, counsel billed, or will bill, Cohodes for all the fees it now seeks from the government. Harris Decl. ¶ 7-8. Time billed in 2020 was largely devoted to drafting the complaint and FAC, *Rosenfeld*, 903 F. Supp. 2d at 873 ("Courts in the Ninth Circuit have allowed attorney fee awards to include time spent preparing a complaint"); negotiating with the government to attempt to resolve the case without further litigation, *The Sierra Club*, 75 F. Supp. 3d at 1149 ("[T]ime spent on negotiations—even if unsuccessful and even with third parties—is still recoverable"); and reviewing and drafting administrative appeals, which continued during the lawsuit. *See PRO*, 2015 WL 9987018, at *7–8 (rejecting argument that pre-litigation hours worked seeking reconsideration of IRS's denial of production requests were non-recoverable). *See also* Judge Decl. Ex. N at PDF pp. 2-4. All of this work was "useful and of a type ordinarily necessary to secure the final result obtained"—namely, moving the government from releasing 10 documents to releasing more than 16,000 pages of documents, and with fewer redactions.

Counsel again devoted time in 2021 to settlement negotiations, including researching and drafting a settlement conference statement, and continuing to press administrative appeals, all of which is recoverable. *See* Judge Decl. Ex. N at PDF pp. 5 -8. The FBI also made many productions in 2021 and counsel necessarily spent time reviewing those documents for indications of documents that should have been but were not produced and to formulate detailed challenges to the government's redactions. *See Id.*; *see also* Harris Decl. Ex. C. Courts allow attorneys to recover time for reviewing released documents where, as here, review was "for the purpose of litigating [the] case." *Rosenfeld*, 903 F. Supp. 2d at 877 (government's objection to recovery for document review was "meritless" where time was spent "to ensure that the agency had actually produced the records required under the agreement, or to prepare the 2006 challenge papers"). Time billed in 2022 was minimal and, again, largely (and appropriately) devoted to reviewing produced documents to ensure the adequacy of the government's

productions.  *See* Judge Decl. Ex. N at PDF pp. 9-10.

In 2023, counsel spent yet more time pushing the government to speed up its production, including obtaining an order from the Court directing the EOUSA to complete its production more quickly, a clear success for Cohodes.  *See* Judge Decl. Ex. N at PDF pp. 11-13.  Counsel also devoted time to thoroughly researching the validity of the government's invocation of specific FOIA exemptions and reviewing produced documents to assess potential claims in an anticipated motion for summary judgment.  *See Id*.  And, again, counsel spent time attempting to negotiate with the government, much of which was captured throughout the course of the litigation in billing related to the preparation of case management statements.  *See Id.*

In 2024, the EOUSA finally began producing large volumes of documents and counsel and paralegals again necessarily devoted time to reviewing the productions to consider whether to challenge withholdings.  *See* Judge Decl. Ex. N at PDF pp 14 -20.  Counsel also spent significant time drafting Cohodes' statement challenging the government's redactions of four documents—a challenge Cohodes won in full and should not have been forced to litigate in the first instance—and on administrative motions to compel the government to actually provide the de-redacted documents.  *See Id*.  This work was all "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *PRO*, 2015 WL 9987018, at *7.

Moreover, counsel eliminated hours that were not necessary to the litigation's success.  *See Rosenfeld*, 903 F. Supp. 2d at 876 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]") (quotation omitted). This included: in 2020, time spent consulting with the client; in 2021, time spent on legal research and other issues ancillary to the FOIA requests; in 2022, time spent preparing a motion to remove an erroneous docket entry; in 2023, work performed by attorneys Shapiro and Fred Norton; and in 2024, time spent conferring with the client and providing FOIA-responsive documents to reporters. Harris Decl. ¶ 9.  In total, Plaintiff's counsel eliminated **$17,255** in fees and costs actually billed to the client from this request.  What's more, this case was leanly staffed, with functionally a single attorney working the case in 2020, 2021, and 2022; hardly two attorneys working the case in 2023; and two primary attorneys (attorneys Harris and Judge) working the case in 2024, when significant briefing was

required.  *See generally* Judge Decl. Ex. N.

### 3.  Cohodes Is Entitled to "Fees on Fees"

"In this Circuit, plaintiffs may recover attorney's fees for time reasonably expended on a motion for attorney fees and costs." *Rosenfeld*, 904 F. Supp. 2d at 1008 (citing *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990)).  Cohodes currently seeks approximately **$44,000** in attorney's fees and **$600** in costs that he has incurred preparing this motion for attorney's fees, otherwise referred to as "fees on fees."  Only $320 of the $44,000 has been billed to Mr. Cohodes to date; the remainder accrued in August 2024 and will be charged to Mr. Cohodes when the relevant billing cycle ends.  Harris Dec. ¶ 8. The $44,000 figure represents a 10% reduction from the amount actually incurred preparing this motion. *Id.* ¶ 10.  Counsel cannot currently estimate the amount to be incurred, if anything, preparing a reply brief and arguing the fees motion, but counsel will supplement Mr. Cohodes' billing records should he incur additional expenses litigating this motion and seek compensation for those fees and costs.  *Id.*  The amount sought for "fees on fees" is reasonable and comparable to other awards for "fees on fees" in similar cases.  *See Rosenfeld*, 904 F. Supp. 2d at 1009 (**in 2012,** awarding $68,456 in "fees-on-fees" in FOIA action).

## IV.    CONCLUSION

For the foregoing reasons, Cohodes is eligible and entitled to attorney's fees and respectfully requests that he be awarded the total amount requested: approximately **$238,475** in attorney's fees and **$1,000** in costs.  This represents **$194,475.00** in attorney's fees and **$400** in costs incurred in connection with the underlying litigation, and approximately **$44,000** in fees and **$600** in costs ("fees-on-fees") incurred to bring this motion for attorney's fees.  Mr. Cohodes reserves the right to supplement his fees-on-fees request should this fees litigation continue.

Dated: August 19, 2024                     Respectfully submitted,

                                           THE NORTON LAW FIRM PC

                                    By:    */s/ Leah Judge*
                                           Leah Judge
                                           Attorneys for Plaintiff
                                           MARC COHODES