ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MICHAEL T. PYLE (CABN 172954)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5087
Email: michael.t.pyle@usdoj.gov

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC COHODES,<br><br>     Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>     Defendants. | CASE NO. 3:20-cv-04015-LB<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:     October 17, 2024<br>Time:    9:30 a.m.<br>Location:   Courtroom B, 15th Floor<br><br>The Honorable Laurel Beeler |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………...ii

I.    INTRODUCTION ...........................................................................................................1

II.    BACKGROUND ..............................................................................................................2

    A.    The FOIA Litigation ...........................................................................................2

        1.    Plaintiff Files Suit About January 15, 2020 FOIA Requests and Then Dismisses Because the FOIA Requests Were Not Proper. ......................2

        2.    Plaintiff Files Suit About the April 21, 2020 FOIA Requests and Defendants Cooperate from the Outset of the Litigation. .......................3

        3.    Defendants Continue to Cooperate and Work on Resolving the Case. .................4

        4.    In Late 2023 and in 2024 The Court Resolved Two Small Disputes and All Issues Other than Attorney's Fees Were Resolved..........................5

III.    ARGUMENT ....................................................................................................................6

    A.    Plaintiff is Partially Eligible for Fees .................................................................6

    B.    Plaintiff is Not Entitled to An Award of Attorney's Fees Because the Equitable Factors Weigh in Favor of Defendants. ..............................................8

        1.    The First Factor--Benefit to the Public—Favors the Government Because the Public Derived No Benefit from the Requested Records. ..................8

        2.    The Second and Third Factors—The Nature of Plaintiff's Interest and Commercial Benefit to Plaintiff—Favor the Government....................................11

        3.    The Fourth Factor—Reasonable Basis in Law—Favors The Government.........................................................................................13

        4.    The Entitlement Factors Weigh Against An Award of Fees. ...............17

    C.    Any Award of Attorneys' Fees Should Be Reduced To Reflect Plaintiff's Limited Success and to Eliminate Excessive and Noncompensable Billings...................18

        1.    The Claimed Hourly Rates Are Excessive.............................................19

        2.    The Requested Fees Are Disproportionate to the Results of This Litigation..............................................................................................21

        3.    The Court Should Deduct Excessive and Noncompensable Hours From Any Award of Fees. .....................................................................22

        4.    Plaintiff's Fees-on-Fees Should be Cut by the Court. ...........................24

IV.    CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC,*
    2022 WL 1814439 (N.D. Cal. Apr. 28, 2022) ................................................................ 19

*Aguirre v. U.S. Nuclear Regul. Comm'n,* 11 F.4th 719, 725  (9th Cir. 2021)…………………………7

*American Immigration Council v. United States Department of Homeland Security* 8 F. Supp. 3d 396
    (D.D.C. 2015) ................................................................................................................ 25

*ACLU of N. Cal. v. DOJ,*
    No. C 04-4447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ................................ 14

*Adionser v. DOJ,*
    811 F. Supp. 2d 284 (D.D.C. 2011) ................................................................................ 15

*Am. Small Bus. League v. Small Bus. Admin.,*
    No. 20-cv-04619-MMC, 2024 WL 3678001 (N.D. Cal. Aug. 6, 2024) ...................... 7, 8, 18

*AP v. U.S. DOJ*
    549 F.3d 62 (2d Cir. 2008)............................................................................................. 14

*Baldrige v. Shapiro,*
    455 U.S. 345 (1982)........................................................................................................ 13

*Balla v. Idaho,*
    677 F.3d 910 (9th Cir. 2012) .......................................................................................... 23

*Blue v. Bureau of Prisons,*
    570 F.2d 529 (5th Cir. 1978) ............................................................................................ 9

*Brown v. Sullivan,*
    916 F.2d 492 (9th Cir. 1990) .......................................................................................... 24

*Center for Popular Democracy v. Bd. of Governors of the Fed. Rsrv. Sys.,* No. 16-cv-5829 (NGG)
    (VMS), 2021 WL 44522202 (E.D.N.Y. Aug. 20, 2021)…………………………..2, 20

*Church of Scientology v. U.S. Postal Serv.,*
    700 F.2d 486 (9th Cir. 1983) ............................................................................... passim

*Citizens for Responsibility & Ethics v. U.S. DOJ,*
    825 F. Supp. 2d 226 (D.D.C. 2011) ............................................................................... 23

*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ,*
    142 F. Supp. 3d 1 (D.D.C. 2015) ................................................................................... 21

*Citizens for Responsibility & Ethics in Wash. v U.S. DOJ.*,
    746 F.3d 1082 (D.C. Cir. 2014) ................................................................ 15

*Cotton v. Heyman*,
    63 F.3d 1115 (D.C. Cir. 1995) ......................................................... 8, 9, 18

*Dorsen v. U.S. SEC*,
    15 F. Supp. 3d 112 (D.D.C. 2014) .......................................................... 13

*Ecological Rights Found. v. Fed. Emerg. Mgmt. Agency*, 365 F. Supp. 3d 993 (N.D. Cal. 2018),
    365 F. Supp. 3d 993 (N.D. Cal. 2018) ............................................. passim

*Elec Frontier Found. v. Dep't of Homeland Sec.*,
    No. C 12-5580 PJH, 2014 WL 6469122 (N.D. Cal. Nov. 18, 2014) ................ 25

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................. 18, 22, 23

*Herrington v. Cnty. of Sonoma*,
    883 F.2d 739 (9th Cir. 1989) .................................................................. 23

*Hersh & Hersh v. US HHS*,
    No. C 06-4234 PJH, 2008 WL 2725497 (N.D. Cal. July 9, 2008) ............ 13, 18

*James v. U.S. Secret Serv.*,
    No. 06-1951 (GK), 2007 U.S. Dist. LEXIS 52554 (D.D.C. July 23, 2007) .......... 15

*Judicial Watch, Inc. v. FBI*,
    522 F.3d 364 (D.C. Cir. 2008) ................................................................... 8

*Kansi v. DOJ*,
    11 F. Supp. 2d 42 (D.D.C. 1998) ............................................................ 16

*Kidder v. FBI*,
    517 F. Supp. 2d 17 (D.D.C. 2007) .......................................................... 16

*Kopp v. U.S. Secret Serv.*,
    No. 18-cv-04913-JCS, 2019 WL 2327933 (N.D. Cal. May 31, 2019) ............... 20

*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) .................................................................. 17

*Laughin v. C.I.R.*,
    117 F. Supp. 2d 997 (S.D. Cal. 2000) ..................................................... 13

*Lewis v. I.R.S.*,
    823 F.2d 375 (9th Cir. 1987) .................................................................. 15

*Long v. U.S. IRS,*
   932 F.2d 1309 (9th Cir. 1991) ............................................................................................. 8

*Maydak v. U.S. DOJ,*
   579 F. Supp. 2d 105 (D.D.C. 2008) ................................................................................... 11

*Mogan v. Sacks, Ricketts & Case L.L.P.,*
   No. 21-cv-08431-TSH, 2022 WL 1458518 (N.D. Cal. May 9, 2022) ................................ 19

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ........................................................................................... 23

*Nationwide Bldg. Maint., Inc. v. Sampson,*
   559 F.2d 704 (D.C. Cir. 1977) ........................................................................................... 18

*Nat'l Archives & Records Admin. v. Favish,*
   541 U.S. 157 (2004) ........................................................................................................... 14

*Nat'l Marine Fisheries Serv.,*
   No. 14-cv-01130-WHO, 2017 WL 783490 (N.D. Cal. Mar. 1, 2017) ........................ 19, 23

*Or. Nat'l Desert Ass'n v. Locke,*
   572 F.3d 610 (9th Cir. 2009) ............................................................................................ 7, 8

*Polynesian Cultural Center, Inc. v. NLRB,*
   600 F.2d 1327 (9th Cir. 1979) ........................................................................................... 11

*Pritchett v. Slauson Gas Station*, No. cv 20-7915 DSF (SKx), 2022 WL 319989 (C.D. Cal. Jan. 10,
   2022) .................................................................................................................................... 20

*Public.Resource.org v. United States Internal Revenue Serv.,*
   No. 13-cv-02789-WHO, 2015 WL 9987018 (N.D. Cal. Nov. 20, 2015) ...................... 18, 25

*Rosenfeld v. U.S. DOJ,*
   903 F. Supp. 2d 859 (N.D. Cal. 2012) ................................................................................. 7

*Salas v. Off. of the Inspector Gen.,*
   577 F. Supp. 2d 105 (D.D.C. 2008) ................................................................................... 14

*Salazar v. Glenn E. Thomas Co.,*
   No. CV 20-8114 DSF (PVCx), 2021 WL 5230798 (C.D. Cal. Nov. 5, 2021) ................... 21

*Schiffer v. FBI,*
   78 F.3d 1405 (9th Cir. 1996) ............................................................................................. 12

*Schoenberg v. F.B.I.,*
   No. 18-cv-01738, 2020 WL 4937813 (C.D. Cal. May 8, 2020) ......................................... 20

*Schoenberg v. FBI*,
  2 F.4th 1270 (9th Cir. 2021) ........................................................................... 18

*Schrecker v. U.S. DOJ*,
  349 F.3d 657 (D.C. Cir. 2003) ......................................................................... 14

*Shannahan v. IRS*,
  672 F.3d 1142 (9th Cir. 2012) ......................................................................... 13

*Sierra Club v. U.S. EPA*,
  75 F. Supp. 3d 1125 (N.D. Cal. 2014) ............................................................. 23

*Simon v. United States*,
  587 F. Supp. 1029 (D.D.C. 1984) .............................................................. 12, 13

*Tax Analysts v. U.S. Dep't of Just.*,
  965 F.2d 1092 (D.C. Cir. 1992) ............................................................ 8, 11, 13

*Thomas v. Off. of the U.S. Att'y*,
  171 F.R.D. 53 (E.D.N.Y. 1997) ....................................................................... 17

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ......................................................................................... 15

*Waage v. IRS*,
  656 F. Supp. 2d 1235 (S.D. Cal. 2009) .............................................................. 8

*Wash. v. U.S. DOJ*,
  881 F.2d 1082 (D.C. Cir. 2014) ....................................................................... 15

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ........................................................................... 19

Statutes

5 U.S.C. § 552(a)(4)(E) ......................................................................................... 6
5 U.S.C. § 552(a)(4)(E)(i) ..................................................................................... 7
Pub. L. 110-175 ...................................................................................................... 6

Regulations

28 C.F.R. § 16.1(c) .............................................................................................. 17

## I.    INTRODUCTION

Plaintiff sued three defendants: the Federal Bureau of Investigation ("FBI"), the Executive Office of United States Attorneys ("EOUSA"), and the Criminal Division of the United States Department of Justice ("Criminal Division"), but did not prevail in any way against the Criminal Division and can neither recover fees against that agency or for any work on that agency.  Furthermore, Plaintiff sued EOUSA over a FOIA request that Plaintiff limited to records from the United States Attorney's Office ("USAO") for the Southern District of New York ("SDNY") but did not administratively exhaust this FOIA claim; Plaintiff also submitted a separate FOIA request to EOUSA for records from the USAO for the Northern District of California ("NDCA"), but that request has never been part of this litigation.

In short, Plaintiff did not prevail as to at least one defendant, did not prevail on three out of four FOIA requests, and each of his FOIA requests were 50% about Plaintiff by asking for all documents about Marc Cohodes.  As a result, many of the documents that were released by the agencies are of no interest to anyone other than Plaintiff.  Plaintiff's motion should be denied because he is not <u>entitled</u> to an award of fees and costs, even though he is <u>partially eligible</u> for an award of fees.

In his motion, Plaintiff Marc Cohodes, asks the Court to award him $238,475 in attorneys' fees and costs.  This case had eleven Case Management Conference ("CMC") Statements or Status Reports filed, four case management or status conferences, a two-hour settlement conference and only two small, contested matters: one the Court decided at a CMC (pace of EOUSA releases of records in 2023), and one the Court decided on the papers (a few redactions on a four documents).  There were no motions for summary judgment, no discovery, and no other substantial proceedings in this matter.

The reason the fee request is so large is a combination of (1) staffing the case with two partners (Mr. Harris and Mr. Shapiro), one counsel (Ms. Judge), two associates (Mr. Walton and Ms. Kutlow), and two paralegals (Ms. Abad and Mr. Whittingham), (2) high hourly rates mostly in excess of $800 per hour, and (3) counsel with no FOIA experience.  No client would pay these hourly rates for attorneys that had never handled FOIA litigation before, and the inexperience is detailed below as Plaintiff attempts to require Defendants to pay for their education in FOIA and to pay for erroneous filings and

1    other matters created by the lack of experience in FOIA.  If the Court finds Plaintiff entitled to fees, the

2    Court can and should reduce the requested fees by a substantial percentage both as to the hourly rate and

3    hours.  *Center for Popular Democracy v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 16-cv-5829

4    (NGG) (VMS), 2021 WL 44522202, at *11 & n.8 (E.D.N.Y. Aug. 20, 2021) (reducing plaintiff's

5    requested hourly rates by 40% to bring the rates within the ranges for the court, and because "[t]hese

6    discounts to the hourly rates account for the undocumented FOIA expertise by the Altshuler Berzon

7    timekeepers."); *Ecological Rights Found. v. Fed. Emerg. Mgmt. Agency*, 365 F. Supp. 3d 993 (N.D. Cal.

8    2018) (reducing plaintiff's fee request by 55% where plaintiff staffed the FOIA case with six attorneys,

9    "requests a very high hourly rate" of up to $825, among other reasons for reduction).  While these cases

10   have some different circumstances, the Court should reduce the hourly rate and hours by a significant

11   percentage.

12        Plaintiff's motion should be denied.  If Plaintiff were found to be entitled to an award of fees and

13   costs, the Court should substantially reduce the amount of fees in light of Plaintiff's partial success, the

14   excessive staffing by lawyers with no experience in FOIA combined with high rates, and for other

15   reasons as outlined below.

## II.    BACKGROUND

### A.    The FOIA Litigation

#### 1.    Plaintiff Files Suit About January 15, 2020 FOIA Requests and Then Dismisses Because the FOIA Requests Were Not Proper.

16   On April 13, 2020, Plaintiff filed suit under FOIA against the same defendants as in his current

17   case.  Declaration of Michael T. Pyle ("Pyle Dec.") ¶ 2 & Ex. 1.  Plaintiff's April 13, 2020 case (4:20-

18   2469 KAW) was based on FOIA requests dated January 15, 2020, and he submitted new FOIA requests

19   dated April 21, 2020 to clarify that Mr. Cohodes, rather than his attorneys, sought the requested

20   documents, which may not have been clear in the January 15, 2020 FOIA requests.  *Id.* Ex. 2 at p.2.

21   Plaintiff dismissed this case.  *Id.*  Ex. 3. The relevance of this earlier filed case is that Plaintiff seeks to

22   recover attorney's fees for this separate dismissed case.

### 2. Plaintiff Files Suit About the April 21, 2020 FOIA Requests and Defendants Cooperate from the Outset of the Litigation.

Plaintiff filed suit on June 17, 2020. *See* ECF No. 1. The Complaint is about April 21, 2020 FOIA requests to FBI, EOUSA (SDNY), and DOJ. *Id.* The FOIA requests at issue requested (1) All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and [Defendants] referring or relating to MiMedx, Parker Petit, or Marc Cohodes; (2) All documents and communications in the possession, custody, or control of [Defendants] referring or relating to Marc Cohodes. *Id.*

At the time Plaintiff filed suit, the status of the FOIA requests then at issue was as follows. Plaintiff submitted FOIA requests dated April 21, 2020 to the FBI, EOUSA, and to DOJ's Mail Referral Unit ("MRU"), which then forwarded Plaintiff's request the Department's Office of Information Policy ("OIP"). OIP provided a final response on May 29, 2020, stating that OIP had no responsive documents to the first half of Plaintiff's FOIA request and that, as to the second part of the request (documents referring or relating to Mr. Cohodes) "you may want to direct this portion of your request to the Criminal Division." *See* Pyle Dec. ¶ 3 & Ex. 4. As to the FBI, it released redacted records to Plaintiff on February 28, 2020 in response to an earlier FOIA request by Plaintiff that seeks the same records as those requested in his April 21, 2020 request. As to EOUSA, in response to an earlier FOIA request by Plaintiff that was substantively identical to his April 21, 2020 request, EOUSA notified Plaintiff that (1) it would not search for records about Parker Petit without express authorization, (2) it would only search for records about Senator Johnny Isakson while the Senator was in political office, and (3) it designated Plaintiff's request to the complex track, meaning it would take more than 30 days to process. EOUSA responded to the April 21, 2020 request with a final response on May 14, 2020.

On September 9, 2020, the United States answered the Complaint (ECF No. 26) and the parties filed a Case Management Conference Statement. ECF No. 25. As reflected in the CMC Statement, Defendants worked from the beginning to resolve any disputes about the FOIA requests at issue. Pyle Dec. ¶ 4. In particular, Defendants EOUSA and FBI agreed to do further searches and agreed to provide information about their respective searches, and also to provide further information about withholdings.

1    Pyle Dec. ¶ 4.  The Court held a CMC on September 16, 2020.  ECF No. 27.

2        On September 23, 2020, Plaintiff filed an Amended Complaint. ECF No. 28. On October 27,

3    2020, Defendants filed an Answer to Plaintiff's Amended Complaint.  ECF No. 30.  Plaintiff amended

4    the complaint to add allegations about a FOIA request Plaintiff submitted to the Criminal Division on

5    June 9, 2020.  Pyle Dec. ¶ 4.  As part of efforts to resolve disputes in this case, the Criminal Division

6    prepared a search description that detailed the searches performed and the conclusion that the Criminal

7    Division had found no responsive documents.  *Id.*

8                **3.    Defendants Continue to Cooperate and Work on Resolving the Case.**

9        On November 13, 2020, another CMC Statement was filed.  ECF No. 31.  The CMC statement

10   accurately reports that the Criminal Division reported that it had completed searches and found no

11   responsive documents to release.  Pyle Dec. ¶ 4.

12       On July 1, 2021, Plaintiff submitted a FOIA request to EOUSA for USAO NDCA records

13   regarding the same two categories as all of his other FOIA requests.  *Id.*  This FOIA request, submitted

14   over nine months after Plaintiff filed his Amended Complaint, has never been part of the litigation.

15   Rather, EOUSA processed the request and worked to resolve issues with redactions as part of overall

16   settlement efforts, even though the request was not part of this lawsuit.  *Id.*

17       On July 21, 2021, another CMC Statement was filed.  ECF No. 39. The CMC Statement

18   accurately reports the FBI, EOUSA, and Criminal Division prepared search descriptions provided as

19   confidential settlement communications and provided them to Plaintiff.   Pyle Dec. ¶ 4. Furthermore, in

20   June 2021, counsel for the parties exchanged correspondence and had phone calls to try to resolve issues

21   with redactions to documents that had been released by the FBI.  *Id.*   As to EOUSA, the Statement

22   accurately reports that EOUSA had identified potentially responsive documents related to prosecution of

23   MiMedx executives in prosecution files of the USAO SDNY and stated that FOIA Exemption 7(A)

24   precludes the release of the documents at this time. Declaration of Natasha Hudgins ("Hudgins Dec.").

25   ¶¶ 11 & 17-19.

26       On July 29, 2021, the Court held a CMC (ECF No. 40), and subsequently referred the case to a

27   magistrate judge for settlement.  ECF No. 41.  The parties then attended a Settlement Conference held

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
     3:20-CV-04015-LB

1    by Zoom on December 15, 2021.  ECF No. 45.  On January 27, 2022, the Court held a further settlement

2    conference with the FBI counsel and defendant's counsel to provide the Court's input on the redacted

3    documents.  ECF No. 49.

4         Following the further settlement conference, EOUSA and FBI continued to work to resolve

5    issues about redactions and documents.  Pyle Dec. ¶ 5.  EOUSA continued to cooperate with the FOIA

6    request to USAO NDCA, as did the SEC because some USAO NDCA documents were referred by

7    EOUSA to the SEC, even though it was not part of the litigation.  *Id.*

8         On January 19, 2023, the parties file another CMC Statement.  ECF NO. 59.  The parties advised

9    in the Statement that they would continue to try to resolve the matter for the next 90 days or would

10   propose a summary judgment briefing schedule by April 26, 2023.

11        On April 26, 2023, the parties filed another CMC Statement.  ECF No. 62.  The Statement

12   reported that EOUSA reports SDNY has searched for records in the files related to the criminal

13   prosecution of MiMedx executives and that the documents subject to FOIA are being sent to EOUSA for

14   processing.  *Id.*  EOUSA plans to make rolling productions of records every 30 days, starting on May

15   26, 2023.  *Id.*

16        **4.    In Late 2023 and in 2024 The Court Resolved Two Small Disputes and All**
          **Issues Other than Attorney's Fees Were Resolved.**

17

18        On August 3, 2023, the parties filed a Joint Status Update, which proposed competing statements

19   about the deadline for release of documents by EOUSA.  ECF No. 66.  On August 24, 2023, a Case

20   Management Conference was held.  ECF No. 71.  Following the outcome of the Conference, EOUSA

21   submitted a declaration regarding EOUSA's position in compliance with the Court's order.  ECF No. 72.

22   Despite not having leave to file any response, Plaintiff responded to the declaration (ECF No. 74), and

23   then filed a supplemental brief.  ECF No. 75.  On October 5, 2023, the Court ordered EOUSA to process

24   500 pages per month to be processed and produced, with the productions to be completed by February

25   16, 2024.  ECF No. 78.

26        On February 29, 2024, the parties filed a Case Management Statement explaining that EOUSA

27   had complied with the Court's order, had released 98 pages of records with redactions and 15,566 pages

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
     3:20-CV-04015-LB

without any redaction, and was withholding 18,052 pages under FOIA Exemptions 6 and 7(C).  ECF No. 79.

On April 3, 2024, the parties filed a Case Management Statement with a proposal to submit four documents for in camera review, with each party to submit a short statement about the documents and the Court would make a decision.  ECF No. 82.  Defendants provided a short four-page statement about the documents.  ECF No. 86.  Plaintiff filed a 14-page brief with declarations thereafter.  ECF No. 87.  On May 23, 2024, the Court ordered defendants to produce the documents without a few redactions.  ECF No. 92.  On May 28, 2024, the parties proposed a process for resolving their dispute about Plaintiff's request for attorney's fees, and Defendants filed a supplemental brief about the documents.  ECF NO. 94-95.  Plaintiff then filed an Administrative Motion asking the Court to set a date for the production of the unredacted documents; Defendants responded, and then, although not permitted by the Court's local rules, Plaintiff filed a reply brief.  ECF No. 97, 100, 101.  On July 17, 2024, the Court issued an order and asked the parties to meet and confer about a date for the document production.  ECF No. 103.  Counsel for defendants e-mailed the documents without the court-ordered redactions to Plaintiff's counsel on July 17, 2024.  Pyle Dec. ¶ 5.

## III.    ARGUMENT

### A.    Plaintiff is Partially Eligible for Fees.

FOIA authorizes a court, in its discretion, to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  Although the statute refers to an award against the United States, by law "[a]ny such amounts shall be paid only from funds annually appropriated for any authorized purpose for the Federal agency against which a claim or judgment has been rendered." Pub. L. 110-175, 121 Stat. 2425 (2007).

Congress did not intend for an award of fees and costs under FOIA to be automatic.  *See Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983).  Rather, FOIA plaintiffs "must present convincing evidence that they are both *eligible for* an award of attorney's fees and that

1    they are *entitled to* such an award." *Rosenfeld v. U.S. DOJ*, 903 F. Supp. 2d 859, 865 (N.D. Cal. 2012)

2    (cleaned up) (emphasis added); *Or. Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).

3          Here Plaintiff is eligible for an award of attorney's fees as to the FBI.

4          Plaintiff is not eligible against the Criminal Division or the EOUSA as to the USAO NDCA

5    request because Plaintiff has not and cannot show that he "substantially prevailed" on his FOIA claim as

6    to the Criminal Division or EOUSA as to the USAO NDCA, of which the latter is not even part of this

7    litigation.  5 U.S.C. § 552(a)(4)(E)(i).  A plaintiff may establish that he has "substantially prevailed" by

8    demonstrating that he obtained relief through either (1) "a judicial order, or an enforceable written

9    agreement or consent decree"; or (2) "a voluntary or unilateral change in position by the agency, if the

10   complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Furthermore Plaintiff only

11   administratively exhausted as to a USAO SDNY FOIA request that is not part of this litigation.  *See*

12   Hudgins Dec. ¶¶ 8-11 & Ex. A (describing three FOIA requests).  S*ee Aguirre v. U.S. Nuclear Regul.*

13   *Comm'n,* 11 F.4th 719, 725  (9th Cir. 2021) (prudential exhaustion applies when agency responds before

14   plaintiff files suit).  Plaintiff has not established that he is eligible for fees as to this FOIA request.

15         Plaintiff cannot establish that he is eligible for an award of attorney's fees against the Criminal

16   Division, or as to EOUSA.  It is proper for the Court to consider separately each of the FOIA requests

17   and find partial eligibility.  *See Am. Small Bus. League v. Small Bus. Admin.*, No. 20-cv-04619-MMC,

18   2024 WL 3678001, at *3-5 (N.D. Cal. Aug. 6, 2024) (evaluating each category of documents sought by

19   FOIA plaintiff to determine eligibility for fees).

20         The Court should not award fees of $10,200 as to the Criminal Division FOIA request based on

21   the following billing entries, which includes time spent on the First Amended Complaint since the only

22   new allegations are about this FOIA request: 8/10/20 ("Review authorities"), 8/11-12/20, 9/16/20

23   ("Draft amended"), 9/17-18/20;9/20/20, 9/28-30/20, 12/18/20, & 5/18/21 (50% of entry) .  The Court

24   should not award fees of $5,535.50 as to the EOUSA NDCA FOIA request based on the following

25   billing entries: 7/1/21, 4/19/22-7/6/22 (50% of 7/6/22 entry), 12/14/22-1/9/23 ("Review update on"),

26   2/13/23.

27

**B.    Plaintiff is Not Entitled to An Award of Attorney's Fees Because the Equitable Factors Weigh in Favor of Defendants.**

Notwithstanding a finding of eligibility, a FOIA plaintiff is not necessarily entitled to recover fees; "the district court has discretion to determine whether the plaintiff is entitled to fees." *Or. Nat'l Desert Ass'n*, 572 F.3d at 614 (citation and footnote omitted); *see also Church of Scientology*, 700 F.2d at 489 (a finding of eligibility "does not automatically entitle the plaintiff to attorney's fees"); *Waage v. IRS*, 656 F. Supp. 2d 1235, 1238 (S.D. Cal. 2009) (eligibility and entitlement "are separate considerations governed by their own standards.").

To evaluate whether the plaintiff is entitled to an award, the court considers equitable factors, frequently focusing on four factors: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of records had a reasonable basis in law. *See Church of Scientology*, 700 F.2d at 492-94; *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). These four factors are "not exhaustive," however, *Long v. U.S. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991). But to demonstrate entitlement, a plaintiff must establish that on balance, these equitable factors favor an award of fees.

A FOIA plaintiff can be entitled to fees on certain categories of documents sought, and not entitled on others. *See Am. Small Bus. League*, 2024 WL 3678001, at *5-7 (finding FOIA plaintiff entitled to fees for some categories of requested documents and not entitled to fees for other categories of documents).

**1.    The First Factor--Benefit to the Public—Favors the Government Because the Public Derived No Benefit from the Requested Records.**

In weighing the public benefit factor, courts take into account the "degree of dissemination and the likely public impact that might result from disclosure." *See Church of Scientology of California, Church of Scientology*, 700 F.2d at 493. This factor weighs against an award of attorney's fees when it "merely subsidizes a matter of private concern." *See id.* The relevant inquiry under the public benefit factor focuses on whether the information received is "likely to add to the fund of information that

DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
3:20-CV-04015-LB

8

1    citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir.

2    1995).  This inquiry should focus on the "specific documents at issue in the case at hand." *Id.*  In

3    considering the public benefit of the FOIA action, courts "take into account the degree of dissemination

4    and likely public impact that might be expected from a particular disclosure." *Blue v. Bureau of*

5    *Prisons*, 570 F.2d 529, 533 (5th Cir. 1978); *see also Church of Scientology*, 700 F.2d at 493.

6        Focusing, as this Court must, on the specific documents at hand, the release of records in this

7    case did not result in any public benefit.  Plaintiff cites a December 27, 2018 *Wall Street Journal* story

8    as evidence in his favor.  Br. at p. 13.  Plaintiff is incorrect because the article was published 18 months

9    before Plaintiff filed his FOIA case, and more than a year before he submitted the FOIA requests at

10   issue in this litigation.  Plaintiff's discussion of what the documents released in this case reveal was

11   already publicly disclosed in the 2018 *Wall Street Journal* article.  Moreover, the article had the same

12   documents that Plaintiff relies on as the basis for his assertion of public interest in the documents.

13       Plaintiff states the documents he obtained through FOIA "revealed that Petit and MiMedx,

14   through their connections to a sitting U.S. Senator, obtained preferential treatment from the FBI."  Br. at

15   13:3-4.  Plaintiff continues "after an FBI agent spoke with Senator Isakson about the complaint of 'stock

16   manipulation' from Petit – the Senator's 'constituent and good friend' – the agent sent the complaint

17   directly to the "relevant substantive [FBI] squad' even though they 'ordinarily offer the complaint

18   hotline number to constituents seeking to file a complaint."  Br. at 13:4-8 (citing Harris Dec. Ex. A at

19   FBI 20-cv-4015-52).

20       Plaintiff states that the documents "reveal that the motive for the FBI's December 1, 2017 visit to

21   Cohodes' home was equivocal."  Br. at 13:12-12.  But Plaintiff does not point to any document to rebut

22   what the documents released to Plaintiff under FOIA show.  In a FD-1057 dated November 28, 2017

23   and prepared by the Atlanta Field Office states: "FBI Atlanta is requesting FBI San Francisco to attempt

24   to interview Marc Cohodes about his potentially violent tweets on Twitter about [redacted] and other

25   MiMedx employees." *See* Pyle Dec. ¶ 6 & Ex. 5 at FBI 20-cv-04105-190.  The document recited the

26   following tweets as "I will bury the little fellow in a shoe box", "Guns are loaded the Safety is off

27

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
     3:20-CV-04015-LB

1  $MDXG", and includes "a family picture of MiMedx's General Counsel which includes the General

2  Counsel's [redacted]." *Id*.

3          In a FD-302 regarding the December 1, 2017 visit, the document repeatedly states that the FBI

4  Special Agents "informed COHODES the FBI was there to talk to him in regards to the threatening

5  Tweets he had been sending to MDXG employees." Pyle Dec. ¶ 6 & Ex. 6 at FBI 20-cv-04105-249.

6  The FBI Special Agents repeatedly advised Mr. Cohodes that the FBI was "speaking with him in regards

7  to the threatening tone of his Tweets which needed to stop before it escalated further." *Id*.   The FBI

8  agents read some of the threatening Tweets to the lawyer for Mr. Cohodes, and the FBI Special Agents

9  asked the lawyer "to reiterate to his client that the FBI came to speak with him about the Tweets and to

10  ask him to stop any threatening Tweets before it escalates further." *Id*. at FBI 20-cv-04105-250.

11  The documents released to Plaintiff also show Mr. Cohodes, thorough counsel, contacted the FBI in

12  2018 to complain about purportedly threatening Tweets that were directed at him. *Id*. at Ex. 7.

13          The *Wall Street Journal*  article (*see* Pyle Dec. ¶ 7  & Ex.8) identifies documents "produced

14  under the Freedom of Information Act" showing "correspondence between Mr. Isakson and the FBI's

15  congressional affairs office regarding MiMedx, Mr. Petit, and Mr. Cohodes from Oct. 13 2017, through

16  Jan. 25, 2018.  *Id*. at p. 2.  That is the same date range as included in Harris Dec. Ex. A (FBI 20-cv-

17  04105-52 (Oct. 13, 2017); FBI 20-cv-04105-46 (Jan. 25, 2018)).  The article addresses the relationship

18  between former Senator Isakson and Mr. Petit and MiMedx, as well as the December 1, 2017 visit by

19  the FBI to Mr. Cohodes home.  *Id*.  Plaintiff, through this litigation, has not obtained material

20  information beyond what is found in the *Wall Street Journal* article published long before Plaintiff

21  served his FOIA requests.

22          The Court should be skeptical about Plaintiff's reliance on a letter a journalist submitted for the

23  settlement conference.  *See* Br. at 13:27-28 (citing ECF No. 87-11). This letter was edited and arranged

24  by counsel, and presumably Mr. Cohodes.  *See* Judge Dec. Ex. N (11/28/21 and 11/29/21 billing

25  entries).  Despite this letter, Plaintiff does not point to any article written about the documents Plaintiff

26  obtained in this FOIA case.

27          Plaintiff's assertion that he was "nearly indicted" for securities fraud (Br. at 13) is a gross

28  DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
3:20-CV-04015-LB

overstatement of fact, as the Court can determine from the documents submitted by Plaintiff with his motion. *See* Harris Dec. Exs. G & H. The documents concern a 2019 referral about Marc Cohodes' alleged "short and distort" campaign about "MiMedx" and possible securities fraud or wire fraud charges. *Id*. The receipt of a referral and some e-mails to gather information about the referral, and the subsequent opening of an investigation, is a far cry from an indictment, as the Court is well aware. More importantly, Plaintiff does not point to any article, website, or interest by any journalist or anyone else regarding the referral of Plaintiff for alleged securities fraud in 2019. That is fatal to his attempt to use the documents about alleged securities fraud as a basis to satisfy the first prong of the entitlement test. *Church of Scientology of California,* 700 F.2d at 493.

Accordingly, this factor weighs in favor of the government.

### 2.    The Second and Third Factors—The Nature of Plaintiff's Interest and Commercial Benefit to Plaintiff—Favor the Government.

The second and third factors—"commercial benefit to the plaintiff" and "nature of the plaintiff's interest"— "are closely related and often considered together." *Tax Analysts*, 965 F.2d at 1095.

 Where a plaintiff has a motive to bring a FOIA lawsuit "independent of the attorney's fees incentive," the second and third factors weigh against an award. *Tax Analysts*, 965 F.2d at 1095. An award of attorneys' fees under FOIA is not justified where it "would merely subsidize a matter of private concern at taxpayer expense." *Polynesian Cultural Center, Inc. v. NLRB*, 600 F.2d 1327, 1330 (9th Cir. 1979) (cleaned up) (reversing award of attorneys' fees in case seeking disclosure of a witness statement relevant to a labor dispute involving the plaintiff). Accordingly, "when a litigant seeks disclosure of information for a commercial benefit or out of other personal motives, an award of fees is generally inappropriate." *Id.*

The nature of Plaintiff's motive for seeking the information here was personal. Plaintiff admits in his brief that "Plaintiff understandably has a personal interest in" the documents he requested. Br. at p. 14:15-16. Plaintiff understates his personal motive for seeking these documents. The second half of all of his FOIA requests sought: "All documents and communications in the possession, custody, or control of [each agency] referring or relating to Marc Cohodes." The nature of a FOIA request for all

documents "referring or relating" to himself shows that this portion of his requests is decidedly a personal and private one. *Maydak v. U.S. DOJ*, 579 F. Supp. 2d 105, 109 (D.D.C. 2008) (refusing to award litigation costs where plaintiff requested records pertaining to himself and matters affecting his detention); *Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984) (attorneys' fees denied to individual plaintiffs seeking personnel and other employment files; court held that plaintiffs' personal motive, though non-commercial, "would have prompted plaintiffs to pursue the release of documents regardless of the availability of fees under FOIA"); *Schiffer v. FBI*, 78 F.3d 1405, 1410-11 (9th Cir. 1996) (noting that individual interest in obtaining information about oneself does not constitute public interest).

Plaintiff also has a personal interest in the documents he requested because he is using documents released to him under FOIA to pursue litigation against MiMidex. Mr. Cohodes is the plaintiff in *Marc Cohodes v. Mimedx Group, Inc. et al*., 3:22-cv-00368. Mr. Cohodes is represented in that case by Mr. Walton and Ms. Judge (who are counsel involved in this FOIA case), as well as partner Mr. Norton, and the case was filed on January 19, 2022. *See* Pyle Dec. ¶ 8 & Ex.9. In his operative complaint, a First Amended Complaint ("FAC"), Mr. Cohodes cites the "October 24, 2017 email from a person using an anonymized email and calling themselves 'an MDXG friend" and that "MiMedx then provided this anonymous smear to the United States Department of Justice in an effort to shift blame away from its own misconduct and onto Cohodes. Pyle Dec. ¶ 8 & Ex. 10 (FAC, ¶ 87). The FAC states that Mr. Cohodes obtained the document in response to a FOIA request. *Id.* As the Court will recall, this document was one of the ones submitted in camera where Plaintiff requested that the anonymous email address be unredacted. *See* ECF No 92. In his litigation, Mr. Cohodes signed a declaration in which he states that two of the defendants in his case "made false statements portraying me as a market manipulator and criminal", and that these defendants "harmed my professional business reputation in several ways: a. The false statements of fact caused the United States Department of Justice to investigate me." Pyle Dec. ¶ 8 & Ex. 11.

Plaintiff did not disclose in his fee motion that he is pursuing this lawsuit, and at least part of Plaintiff's motivation for his FOIA requests was to be able to sue MiMedx. From the docket, it is not

1  possible to determine if Plaintiff is using documents he obtained through his FOIA requests for other

2  purposes in his declaration.

3    An individual seeking documents to aid his litigation efforts stands to gain a commercial benefit

4  from pursing a FOIA request.  *Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 122–23 (D.D.C. 2014); *Hersh &*

5  *Hersh v. US HHS*, No. C 06-4234 PJH, 2008 WL 2725497, at *2 (N.D. Cal. July 9, 2008); *Laughin v.*

6  *C.I.R.*, 117 F. Supp. 2d 997, 1002–03 (S.D. Cal. 2000).  Using documents obtained from a FOIA request

7  for private litigation stands in direct contrast to the purpose of FOIA and its fee-shifting statute: "The

8  primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil

9  discovery." *Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982); *Simon*, 587 F. Supp. at 1033 (finding

10 the use of FOIA "as a substitute for civil discovery" to be improper and refusing to encourage the

11 practice "by awarding fees"); *see also Shannahan v. IRS*, 672 F.3d 1142, 1151 (9th Cir. 2012) ("FOIA is

12 not designed 'as a substitute for civil discovery'") (quoting *Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14

13 (1982)).

14    Both the second and third prongs favor the government.

15    **3.    The Fourth Factor—Reasonable Basis in Law—Favors The Government.**

16    The fourth factor—reasonableness of the government's conduct—strongly counsels against an

17 award of fees in this case.  "[T]he reasonable-basis-in-law factor is intended to weed out those cases in

18 which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in

19 obdurate behavior." *Tax Analysts*, 965 F.2d at 1097 (D.C. Cir. 1992) (internal quotation marks omitted),

20 *superseded by statute on other grounds*.  Thus, while this factor may weigh in favor of a fees award "if

21 the [refusal to produce] appeared to be merely to avoid embarrassment or frustrate the requester," a

22 court should "not award fees where the government's [position] had a colorable basis in law." *Church*

23 *of Scientology*, 700 F.2d at 492 n. 6 (quoting S. Rep. 93-854, 93rd Cong. 2nd Sess. 19 (1974)).

24    Plaintiff first argues that he "expended significant effort in 2021 urging the FBI to de-redact

25 information that was already in the public domain."  Br. at 15.  As an effort to resolve this case, counsel

26 for Defendants and the FBI considered every request Plaintiff made, and made some de-redactions based

27 on information provided by Plaintiff.  Pyle Dec. ¶ 5. There is nothing wrong in the settlement context to

28 DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
   3:20-CV-04015-LB

ask Plaintiff for information or evidence that a particular piece of information is in the public domain. *Id.* Moreover, under Exemptions 6 and 7(C), a FOIA plaintiff "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information he seeks "is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *AP v. U.S. DOJ*, 549 F.3d 62, 66 (2d Cir. 2008) ("The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA."); *Salas v. Off. of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant."). Defendants asked Plaintiff to meet that burden as part of the efforts to resolve this matter. Pyle Dec. ¶ 5. The efforts to resolve disputes meant that there were no disputes about the agency's searches for records, and all redaction issues other than the handful of records submitted to the Court for decision. *Id.*

Plaintiff argues that the government's position was wrong as to the four documents submitted in camera. Br. at 16:5-17. Plaintiff ignores that the question is whether the government had a "colorable basis" in law. *Church of Scientology*, 700 F.2d at 492 n. 6. As an initial matter, the government had a colorable basis in law for every other redaction because the Court was only asked to review four documents, and only to consider a handful of redactions which leaves dozens of redactions on the pages at issue intact.

As to the Court orders on the four documents, nowhere in the Court's order does it appear to evaluate the public interest in the disclosure of names and an email address. ECF No. 92. A court is required to focus on the actual information that is to be released, not on a generalized understanding of the public interest. *Schrecker v. U.S. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (stating that an inquiry regarding the public interest "should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld"); *ACLU of N. Cal. v. DOJ*, No. C 04-4447 PJH, 2005 WL 588354, at *13 (N.D. Cal. Mar. 11, 2005) (ruling that "it was not sufficient for the plaintiffs to show [public] interest in only the general subject area of the

request").

Moreover, the Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 780 (1989).   Defendants are not seeking to relitigate the Court's order to release the names and email address, but the government had colorable arguments to refuse to disclose the information that Plaintiff asked the Court to release.

Plaintiff next argues that EOUSA acted unreasonably by refusing to produce documents until 2023.  Br. at 16.  EOUSA was transparent about the fact that it was aware of potentially responsive records in the SDNY USAO in files related to the prosecution of Mr. Petit and Mr. Taylor, former MiMedx executives, and that these documents were protected from disclosure by FOIA Exemption 7(A).  *See* ECF No. 39 (7/1/21 CMC Statement explaining documents subject to Exemption 7(A)); ECF No 59 (1/19/23 CMC Statement; same statement).

Plaintiff fails to understand that "Exemption 7(A) is <u>temporal</u> in nature."  *Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ, 74*6 F.3d 1082, 1097 (D.C. Cir. 2014) (citing Citi*zens for Responsibility & Ethics in Wash. v. U.S. DOJ, 881 F.*2d 1082, 1100 (D.C. Cir. 2014) (D.C.Cir. 1 989) ("Disclosure of the information [the requester] seeks cannot interfere with parts of the enforcement proceeding already concluded.")) (emphasis added).

Under Exemption 7(A) if it is litigated, which never happened here, the agency "need only make a general showing" that disclosure would frustrate ongoing proceedings. *Lewis v. I.R.S.*, 823 F.2d 375, 380 (9th Cir. 1987) (citations omitted). It "is not required to make a specific factual showing with respect to each withheld document that disclosure would <u>actually interfere</u> with a particular enforcement proceeding." *Id*. (internal quotation marks and citation omitted). This exemption is meant to allow courts to determine that the release of certain types of investigatory records would generally hamper a pending case. *Id*. (internal quotation marks and citation omitted).

1    Exemption 7(A) continues in force if there is a criminal appeal. *Adionser v. DOJ*, 811 F. Supp.

2  2d 284, 298 (D.D.C. 2011) ("For purposes of Exemption 7(A), a pending appeal of a criminal conviction

3  qualifies as an ongoing law enforcement proceeding."); *James v. U.S. Secret Serv.*, No. 06-1951 (GK),

4  2007 U.S. Dist. LEXIS 52554, at *12 (D.D.C. July 23, 2007) (finding that "pending appeal of a criminal

5  conviction qualifies as an ongoing or prospective law enforcement proceeding" and adding that

6  disclosure could "harm the government's prosecution of Plaintiff's appeal"); *Kidder v. FBI*, 517 F. Supp.

7  2d 17, 27 (D.D.C. 2007) (reiterating that "pending appeal of a criminal conviction qualifies as a pending

8  or prospective law enforcement proceeding for purposes of Exemption 7(A)"); *Kansi v. DOJ*, 11 F.

9  Supp. 2d 42, 44 (D.D.C. 1998) (explaining that "potential for interference . . . that drives the 7(A)

10  exemption . . . exists at least until plaintiff's conviction is final"; thus, plaintiff's pending motion for new

11  trial is pending law enforcement proceeding for purposes of FOIA).

12    Here, Mr. Petit's and Taylor's convictions were affirmed by the Second Circuit Court of

13  Appeals, and the Court's mandate issued on October 7, 2022. Pyle Dec. ¶ 9 & Ex. 12. By April of

14  2023, EOUSA reported that SDNY USAO had searched files related to the criminal prosecution of two

15  MiMedx executives and the documents were being transferred to EOUSA for processing. ECF No. 62

16  at p. 4. SDNY USAO attorneys and support staff searched through all electronic and physical files

17  obtained and prepared to prosecute third parties for information bearing Cohodes name. Hudgins Dec. ¶

18  20. SDNY USAO files are generally centered around the defendant(s) in a case and not other

19  individuals who may be listed within each document. *Id*. Once SDNY USAO completed its search, it

20  provided records to EOUSA for processing. *Id*. EOUSA reviewed thousands of pages and consulted

21  with other government agencies, including the Treasury Department and the SEC, as relevant. Id.

22  Further, EOUSA provided a submitter's notice to MiMedx attorneys for records they provided to the

23  government for the Taylor and Petit prosecutions. *Id*. The submitter's notice was required per

24  Executive Order 12600 and not dependent upon litigation. In discussions with MiMedx Attorneys,

25  EOUSA received the approval to release a significant number of documents to Plaintiff without

26  redactions. *Id*. As such, EOUSA provided a discretionary release of those documents in full, when the

27  majority of the records qualified for other exemptions. *Id*.

28  DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
3:20-CV-04015-LB

1    Plaintiff argues that his original FOIA request to the EOUSA should include records from the

2    U.S. Attorney's Office of the Northern District of California.  Opp. at 17:2-10.  Plaintiff is incorrect.

3    His original FOIA request was explicitly limited to the Southern District of New York, and it was

4    properly limited to that office.

5    First, an agency's obligation to search is limited to the four corners of the request. *Kowalczyk v.*

6    *Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996). an agency processing a FOIA request is not required

7    to divine a requester's intent.  *Id.* at 388 (rejecting plaintiff's argument that "staff should have realized"

8    plaintiff wanted records from New York office even though FOIA request did not indicate this); *see also*

9    *Thomas v. Off. of the U.S. Att'y*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997) (FOIA requester cannot add to or

10    enlarge underlying FOIA request during pendency of request or litigation).

11    Second, Department of Justice regulations state that DOJ "has a decentralized system for

12    processing [FOIA] requests, with each component handling requests for its records."  28 C.F.R. §

13    16.1(c) (Jan. 4, 2017). "To make a request for records to the Department, a requester should write

14    directly to the FOIA office of the component that maintains the records being sought."  *Id.* § 16.3(a)(1).

15    EOUSA provides explicit guidance that a requester should identify the district that the requester wants

16    searched.  Pyle Dec. ¶ 10 & Exs. 13-14; Hudgins Dec. ¶ 13-14.  It is peculiar that Plaintiff challenges

17    this issue because there was no burden on Plaintiff to revise his prior FOIA request to change "USAO

18    SDNY" to "USAO NDCA" and then submit it electronically.

19    Finally, throughout this lawsuit, the government's "litigation behavior" has been cooperative and

20    non-adversarial.  This litigation has been conducted almost entirely through stipulation and voluntary,

21    out-of-court resolution.  This government's litigation conduct further supports the conclusion that the

22    Government has acted not in bad faith to avoid production or frustrate the requester but rather

23    reasonably, to release the documents as quickly as possible, given each agency's limited resources and

24    heavy FOIA workload.  In these circumstances, the fourth factor weighs in favor of the government.

25                    **4.      The Entitlement Factors Weigh Against An Award of Fees.**

26    A denial of attorneys' fees is appropriate when two or even just one of the factors favors the

27    government.  *See*, *e.g.*, *Cotton*, 63 F.3d at 1123 (reversing award of attorneys' fees based on first and

28

fourth factors: "Because we conclude that there is no public benefit in a release of the Smithsonian documents, and that the Smithsonian's legal position is reasonable, we have no need to review for an abuse of discretion the district court's evaluation of the remaining factors: the "commercial benefit" to the plaintiff and the "plaintiff's interest.""); *Hersh & Hersh*, 2008 WL 2725497, at *2 (even if the first and fourth factors favored a fee award, the private, commercial interest of a plaintiff who sought documents for use in a separate lawsuit outweighs those factors); *Schoenberg v. FBI*, 2 F.4th 1270, 1277 (9th Cir. 2021) (affirming denial of attorneys' fees where the first three factors favored an award but the government's position had a colorable basis in law).  These factors establish that Plaintiff is not entitled to an award of fees, and the Court should exercise its discretion to deny his request.

At the very least, the Court should consider that there is no entitlement for Plaintiff's FOIA request for all documents about himself, and so the Court should find Plaintiff 50% entitled at most.  *See Am. Small Bus. League*, 2024 WL 3678001, at *5-7 (finding FOIA plaintiff entitled to fees for some categories of requested documents and not entitled to fees for other categories of documents).

### C.    Any Award of Attorneys' Fees Should Be Reduced To Reflect Plaintiff's Limited Success and to Eliminate Excessive and Noncompensable Billings.

Finally, if a FOIA plaintiff has established eligibility for and an entitlement to fees, the court may grant reasonable attorneys' fees.  Courts are empowered to adjust a plaintiff's fees and costs downward based on a host of factors. The burden is on the party requesting fees to demonstrate that their time records are detailed and their calculations and the hours claimed were reasonably expended. *Public.Resource.org v. United States Internal Revenue Serv.*, No. 13-cv-02789-WHO, 2015 WL 9987018, *7 (N.D. Cal. Nov. 20, 2015).  Where "documentation of hours is inadequate" or the plaintiff "achieved only partial or limited success," the district court may reduce the award accordingly.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436 (1983).  Ultimately, the court has "broad discretion in deciding whether attorney fees should be awarded on the particular facts of each case." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 710 (D.C. Cir. 1977). As explained below, Plaintiff has not met its burden of justifying this award.

1    **1.    The Claimed Hourly Rates Are Excessive.**

2    Billing rates are "established by reference to the fees that private attorneys of an ability and

3    reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar

4    complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). This was a FOIA case,

5    and Plaintiff has not provided any appropriate benchmarks for FOIA litigation. *See Our Child.'s Earth*

6    *Found. v. Nat'l Marine Fisheries Serv.*, No. 14-cv-01130-WHO, 2017 WL 783490, at *11 (N.D. Cal.

7    Mar. 1, 2017) (noting that "similar work" must be similar to FOIA litigation and rejecting attempted

8    analogy to rates awarded for complex class action cases; rejecting Plaintiff's requested hourly rates).

9    Accordingly, Plaintiff's non-FOIA cases are not relevant to establish a proper hourly rate. *Mogan v.*

10   *Sacks, Ricketts & Case L.L.P.*, No. 21-cv-08431-TSH, 2022 WL 1458518, at *3 (N.D. Cal. May 9,

11   2022) (hourly rates for federal court litigation, but not FOIA, and not against the Government); *Sols. 30*

12   *E. Eur., S.R.L. v. Muddy Waters Cap. LLC,* 2022 WL 1814439, *2 (N.D. Cal. Apr. 28, 2022) (same).

13   Here, as to Mr. Harris, Plaintiff asks for $800/hour for 2020 and 2021, $850/hour in 2022, and

14   $895/hour in 2023 and 2024. *See* Judge Dec. Ex. N (billing records). As to Mr. Shapiro, Plaintiff asks

15   for $750 and $800/hour in 2020, and $895 from 2023 forward. *Id.* As to Ms. Judge, Plaintiff asks for

16   $725/hour. *Id.* As to Mr. Walton, Plaintiff asks for $540/hour. *Id.* As to Ms. Kutlow, Plaintiff asks for

17   a rate of $685 starting in 2024. *Id.* Plaintiff states that the "rates claimed here" are "the actual rates paid

18   by Cohodes." Br. at 19:6-7 (citing Harris Dec. ¶ 12). This statement is not supported, as the cited

19   paragraph does not state that Mr. Cohodes has paid the requested hourly rates, and Plaintiff offers no

20   evidence that Mr. Cohodes has paid any attorney's fees or costs. As a result, there is no evidence to

21   justify the requested rates.

22   This range of hourly rates is misleading, however, because almost all of the billing was for Mr.

23   Harris at $800 to $895 per hour, and most of his time billed at the higher end. Those hourly rates are

24   excessive by any measure.

25   In a 2019 case in this District, the court awarded $700/hour as the top-end rate for partner work.

26   *Kopp v. U.S. Secret Serv.*, No. 18-cv-04913-JCS, 2019 WL 2327933, at *7 (N.D. Cal. May 31, 2019).

27   In 2020, the court in the Central District awarded fees at a rate $350/hour to two lawyers with more than

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
     3:20-CV-04015-LB

25 years of experience each.  *Schoenberg v. F.B.I.*, No. 18-cv-01738, 2020 WL 4937813, at *4 (C.D. Cal. May 8, 2020), *aff'd*, *Schoenberg*, 2 F.4th 1270.

The holding in *Our Children's Earth Found.* is significant here because counsel for Plaintiff provide no evidence that any of them have ever handled a FOIA case before, as the George Harris and David Shapiro declarations do not identify any FOIA litigation experience.  Plaintiff contends that associate Rebecca Kutlow has FOIA litigation experience.  *See* Harris Dec.¶ 4 (declaring Ms. Kutlow "engaged in FOIA litigation on behalf of her clients.").  According to Plaintiff's billing records (Ex. N), Ms. Kutlow's work results in a bill of $68.50 (entry for 7/30/24).  More importantly, it does not appear that Ms. Kutlow has ever been involved in litigating any FOIA case.  *See* Pyle Dec. ¶ 11 & Ex. 15 (search for counsel's name shows immigration cases, state court cases, and no FOIA cases).

Where counsel lack FOIA litigation experience, courts have taken various steps.  One option is to reduce the hourly rate requested by a significant percentage. In *Center for Popular Democracy*, 2021 WL 44522202, at *11 & n.8, the Court reduced the plaintiff's requested hourly rates by 40% to bring the rates within the ranges for the court, and because "[t]hese discounts to the hourly rates account for the undocumented FOIA expertise by the Altshuler Berzon timekeepers." In *Eco. Rights Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993 (N.D. Cal. 2018), the judge identified a request for an hourly rate of up to $825 as "a very high hourly rate" and for that reason, among others, reduced the entire fee request by 55%.

Plaintiff's reliance on the Wolters Kluwer 2023 Real Rate Report ("Real Rate Report") (Judge Dec. Ex. M) is further evidence that Plaintiff's hourly rates need to be reduced.  In *Pritchett v. Slauson Gas Station*, No. cv 20-7915 DSF (SKx), 2022 WL 319989, *2-3 (C.D. Cal. Jan. 10, 2022), which is cited by Plaintiff (Br. at 19 n.9), the court looked to the median rates, and particularly at the median rates for "firms with 50 lawyers or fewer" to reduce the hourly rates from $495/hour to $375/hour and from $425/hour to $300/hour.  Using the median rate for 2023 would mean reducing Mr. Harris's hourly rate from $895 to $750; and associates and counsel to $450 an hour.  Judge Dec. Ex. M at p. 21 of Real Rate Report.  And then using mean rates for prior years would reduce the hourly rates even more.  *Id*.

Thus, Plaintiff's own cited authority states that the Court should use the median rates in the Real

Rate Report.  *See also Salazar v. Glenn E. Thomas Co., Inc.*, No. cv *Salazar v. Glenn E. Thomas Co.*, No. CV 20-8114 DSF (PVCx), 2021 WL 5230798, at *8 (C.D. Cal. Nov. 5, 2021) ("The Court also finds the 2020 Real Report to be an appropriate barometer of the reasonable rates in the Central District, because it is based on actual legal billing, matter information, and <u>paid</u> and processed invoices from a wide variety of companies, as opposed to counsel's self-reporting of rates they <u>charge</u>.") (emphasis in original).

However, the Norton Law Firm is a small firm with far less than 50 lawyers.  *See* https://nortonlaw.com/our-people/  The Court should require Plaintiff to submit the portions of the Real Report that shows the rates for small firms since that was relied upon by the case cited by Plaintiff.  It would be misleading to use the pages supplied by Plaintiff, as courts have recognized:

> But [FOIA plaintiff's] own sources—albeit portions omitted from the excerpts it submitted–rebut the proposition that rates are comparable across firms of all sizes such that the average rate at the biggest firms should be taken as the prevailing rate more generally.  *See Executive Summary,* The 2014 Real Rate Report, at vii ("Of the more than 350 factors we tested, our analysis this year revealed that law firm size was the biggest driver of law firm rates.... In fact, the effect was so large that regardless of the market location or type of work performed, larger firms consistently charged higher rates.")

*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ*, 142 F. Supp. 3d 1, 18 (D.D.C. 2015), *dism'd sub nom. Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,* No. 15-5344, 2016 WL 4098772 (D.C. Cir. July 14, 2016).

Plaintiff should comply with their duty of candor by submitting pages 4 & 5 of the Real Report which discuss the use of the report, as well as any pages that address small firms like Norton Law Firm such as "Partners and Associates by Firm Size and Matter Type" and "In-Depth Analysis for Select US Cities."  While it would still overstate the proper hourly rate because it would not be for FOIA litigation, the small firm hourly rates would be the best objective evidence of an appropriate rate.  Plaintiff seeks to recover the cost of this publication, and the Court should require Plaintiff to provide all relevant information from the Real Rate Report.

## 2.    The Requested Fees Are Disproportionate to the Results of This Litigation.

The Court should exercise its discretion to decrease any fee award because the requested fees are

1   grossly disproportionate to both the results of this FOIA litigation and the effort expended to achieve

2   that result.  *See Hensley*, 461 U.S. at 434 (describing the "results obtained" as an important factor for the

3   court to consider in determining whether to adjust a fee award).  In considering this factor, a court

4   should evaluate whether the plaintiff achieved "a level of success that makes the hours reasonably

5   expended a satisfactory basis for making a fee award."  *Id.*

6        Plaintiff seeks more than $200,000 where he has not obtained results proportionate to an award

7   of this size.  Through settlement efforts, Plaintiff obtained some de-redactions, but he fails to show that

8   these efforts obtained any new material information beyond what the *Wall Street Journal* published in

9   2018.  Plaintiff contested EOUSA's pace of processing records, but the Court provided the same

10   deadline as was proposed by Defendants and rejected Plaintiff's proposed completion date.  ECF No. 78.

11   The Court did increase the processing rate from 350 pages per month to 500 (*id.*) but EOUSA greatly

12   exceeded that pace by releasing 15,000 pages and withholding a nearly equal amount.  Plaintiff does not

13   cite any of these documents in connection with his motion, and thus Plaintiff offers no evidence that the

14   15,000 pages have information about anything other than Mr. Cohodes.

15        Plaintiff did obtain the release of  (1) the name of the "MDXG Friend" who sent the anonymous

16   email; (2) the name and email address of the individual who forwarded the anonymous email to the FBI;

17   (3) the names of the three witnesses interviewed by the government in January 2018; (4) the names of

18   the two witnesses interviewed by the government in February 2018; and (5) the email address of the

19   person who offered information about Mr. Cohodes in exchange for BitCoin.  ECF No. 92.   Again,

20   Plaintiff seeks more than $200,000 in fees for obtaining some information from these documents while

21   dozens of redactions were not challenged on these same documents.

                **3.**    **The Court Should Deduct Excessive and Noncompensable Hours From Any**

22                     **Award of Fees.**

23

24        Work is only compensable when it "was what one would expect of a lawyer working for a client

25   that could afford its efforts but that was not indifferent to the cost."  *Balla v. Idaho*, 677 F.3d 910, 921

26   (9th Cir. 2012).  Reasonably expended time is generally time that "could reasonably have been billed to

27   a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *see also*

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
      3:20-CV-04015-LB

1    *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989) (noting that the identification of

2    "duplication of effort by the co-counsel assigned to [a] case . . . necessitates some reduction of the hours

3    claimed"). This requires the exercise of "sound billing judgment" regarding the number of hours

4    worked, and courts will exclude hours that were not "reasonably expended," such as those incurred from

5    overstaffing, or "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at

6    433. Should this Court award fees to Plaintiff, it should make appropriate deductions to account for

7    excessive and noncompensable hours.

8         The Court can proceed one of two ways. First, the Court can follow *Eco. Rights Found. v. Fed.*

9    *Emergency Mgmt. Agency*, 365 F. Supp. 3d 993 (N.D. Cal. 2018), and reduce fees by a percentage in

10   light of the overstaffing of the case, the inefficiencies of counsel with no FOIA experience, the general

11   overbilling by Plaintiff, and the very high rates that are sought by Plaintiff. Although the requested fees

12   in *Eco Rights Found*. were higher largely due to summary judgment briefing and full briefing of a

13   motion for attorney's fees, but the reasoning of the court should lead to a reduction in this case that is

14   similar to the 55% reduction in *Eco Rights Found.*

15        Alternatively, the Court can go through the billing records and reduce the award line by line. As

16   explained above, the Court should not award $10,200.00 as to the Criminal Division FOIA request and

17   should not award fees of $5,535.50 as to the EOUSA NDCA FOIA request. In addition, the following

18   reductions should be made by the Court if it decides not to impose a percentage reduction.

19   Document Review: Time reviewing the documents produced in a FOIA case are generally not

20   recoverable. *Our Child.'s Earth Found.*, 2017 WL 783490, at *15 ("The time spent reviewing the

21   documents produced is not compensable."); *Sierra Club v. U.S. EPA*, 75 F. Supp. 3d 1125, 1149 (N.D.

22   Cal. 2014) ("As Plaintiffs received, at least in part, the relief they sought when the EPA produced the

23   documents, the time they expended reviewing the documents was properly characterized as post-relief

24   activity, separate from the litigation."); *Citizens for Responsibility & Ethics v. U.S. DOJ*, 825 F. Supp.

25   2d 226, 231 (D.D.C. 2011) ("Plaintiff would have had to expend this time had DOJ timely produced the

26   documents without litigation; the cost of reviewing documents produced in response to a FOIA request

27   is simply the price of making such a request."); *but see ACLU Immigr. Rights Proj. v. U.S. Immigr. &*

28   DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES
     3:20-CV-04015-LB

1  *Customs Enf't.*, No. 16-cv-06066-JSC, 2018 WL 488997, * 3-4 (N.D. Cal. Jan. 19, 2018) (allowing

2  recovery of some document review during litigation).  As a result, the Court should eliminate the

3  following billing entries: 1/28/21, 2/15/21, 3/2/21, 3/30/21, 4/27/21, 5/10-12/21, 8/7-9/20/21, 11/22-

4  23/21, 8/27/22 8/1/22 (Ms. Judge), 3/25-29/24 for $21,165 in attorney's fees.

5      Dismissed Prior FOIA Lawsuit: Plaintiff cannot recover any fees or costs for this case because

6  he cannot establish any of the requirements to obtain fees and costs for this case, and thus the Court

7  should eliminate the 3/29/20 to 4/13/20 billing entries for $2,550 in attorney's fees.

8      Improper Filings:  Plaintiff filed a reply brief on an administrative motion, but under this Court's

9  local rules such a brief is not permitted.  *See* Local Rule 7-11(c) ("Unless otherwise ordered, a Motion

10  for Administrative Relief is deemed submitted for immediate determination without hearing on the day

11  after the opposition is due.").  The Court should eliminate the 6/25/24-6/26/24 billing entries for $916.50

12  in attorneys' fees.

13              **4.    Plaintiff's Fees-on-Fees Should be Cut by the Court.**

14      If the Court finds Plaintiff eligible and entitled for a fee award, Plaintiff may recover attorney's

15  fees for time reasonably expended on a motion for attorney's fees and costs.  *Brown v. Sullivan*, 916

16  F.2d 492, 497 (9th Cir. 1990).  However, an inflated request for a "fees-on-fees" award may be reduced

17  to an amount deemed reasonable by the awarding court, and the Court should do the same here where

18  Plaintiff seeks $44,000 in fees with no supporting records as to how this amount was calculated, which

19  attorney(s) were involved, or other relevant information.  As a result, Plaintiff has failed to satisfy his

20  burden to recover these fees.  Plaintiff filed his motion for attorney's fees on August 19, 2024, and

21  certainly could have run the bills through August 16, 2024 to include in the filing.

22      If the Court entertains the request for fees-on-fees, the Court should cut the requested amount in

23  line with caselaw. In *Public.Resource.org v. United States Internal Revenue Service* ("*PRO*"), the court

24  found that 58.7 hours and $24,787.50 in fees "an excessive amount of time to spend on this [fee]

25  motion" and reduced the fees-on-fees requested by 25 percent to $18,590.63.  No.13-cv-02789-WHO,

26  2015 WL 9987018, at *8 (N.D. Cal. Nov. 20, 2015).  In another case, *American Immigration Council v.*

27  *United States Department of Homeland Security*, the court reduced by 25% a fee-on-fee award based on

28

52.05 hours because of "significant overstaffing" by plaintiffs in that matter. 8 F. Supp. 3d 396, 412 (D.D.C. 2015). In *ACLU Immigr. Rights Proj. v. U.S. Immigr. & Customs Enf't.*, No. 16-cv-06066-JSC, 2018 WL 488997,*7, the Court awarded Plaintiff's request for $9,928 in fees-on-fees.

Accordingly, plaintiff's fees-on-fees claim should be denied because he failed to satisfy his burden of proof and, if considered by the Court, should be reduced by a significant percentage in line with these cases. Where an unreasonable amount of time is spent preparing a motion for attorneys' fees, courts have reduced fees claims, stating that fees "created the appearance of the attorneys' fees tail wagging the FOIA dog." *Elec. Frontier Found. v. Dep't of Homeland Sec.*, No. C 12-5580 PJH, 2014 WL 6469122, at *6 (N.D. Cal. Nov. 18, 2014). For these reasons, if any award of fees and costs is granted, the amount of fees-on-fees should be adjusted downward to reflect the limited success and minimal value of this litigation.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion for attorneys' fees should be denied. If the Court finds that Plaintiff is entitled to an award of fees, the award should be substantially reduced to include only those reasonable fees and costs that the Court determines appropriate in the exercise of its discretion.

Dated: September 16, 2024          ISMAIL J. RAMSEY

United States Attorney


/s/ *Michael T. Pyle*
_____
Michael Pyle
Assistant United States Attorney
Counsel for Defendants