UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARC COHODES, | Case No. 20-cv-04015-LB |
| Plaintiff, | **ORDER FOR ATTORNEY'S FEES** |
| v. | Re: ECF No. 107 |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | |
| Defendants. | |

## INTRODUCTION

In this FOIA case, the government produced some documents, withheld others, and produced more after the plaintiff filed the lawsuit. The parties ultimately disputed redactions in four documents withheld under FOIA exemptions 6 and 7(C), which protect privacy interests. The court ordered production because otherwise protected law-enforcement information was publicly available. The plaintiff now seeks his FOIA attorney's fees. The government resists fees on the grounds that the plaintiff did not prevail against all defendants, the litigation served primarily the plaintiff's interest, and the fees are not reasonable. The court awards fees of $180,808.50 and directs supplemental briefing about the $73,948.95 for the fees motion.

## STATEMENT

The next sections summarize the FOIA dispute, the fees, and the case's procedural history.

**1.    The FOIA Dispute**

The plaintiff is a stock-market analyst and short seller who uncovers improprieties about securities fraud. One company he targeted was MiMedx, posting criticisms about its finances and products and writing to its board and management.[1] In return, MiMedx campaigned against the plaintiff in 2017 and 2018, including in a lawsuit challenging the short sellers, which resulted in a DOJ investigation against the plaintiff for insider trading. MiMedx enlisted Georgia Senator Johnny Isakson to obtain the FBI's assistance. In 2017, FBI agents interviewed the plaintiff at his home, showing only a part of their credentials and without producing a business card, and told him to stop his "threatening tweets" about one of MiMedx's principals.[2] Ultimately MiMedx's principals were indicted in 2019 and convicted in 2020 of securities fraud. MiMedx resolved a separate False Claims Act lawsuit for $6.5 million and paid a $1.5 million fine to the SEC for related misconduct. Three VA employees were indicted for accepting bribes from MiMedx.[3]

The plaintiff submitted three FOIA requests on January 15, 2020, seeking the following:

> All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and [the DOJ, FBI, and United States Attorney's Office in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes . . . [and a]ll documents and communications in the possession, custody, or control of [the same entities] referring or relating to Marc Cohodes.[4]

He filed a lawsuit based on this request on April 13, 2020.[5] He submitted new requests on April 21, 2020, to clarify that he, not the attorneys, was submitting the requests.[6] He dismissed the first lawsuit on July 6, 2020.[7] On June 17, 2020, he filed his lawsuit to address the April 21, 2020,

---

[1] Cohodes Decl. – ECF No. 107-1 at 2 (¶¶ 2–3). Citations refer to material in the Electronic Case File; pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 3 (¶¶ 5–9); Orders – ECF Nos. 103 at 2 & 92 at 4–6.

[3] Mot. – ECF No. 107 at 8 & nn. 4–5 (citing DOJ press releases), 19–20 & nn. 7–8 (citing SEC press release and a news report).

[4] FOIA Requests, Exs. 1–3 to First Am. Compl. – ECF No. 51 at 15–26.

[5] Compl., *Cohodes v. DOJ*, No. 4:20-02469-KAW – ECF No. 1.

[6] Pyle Decl. – ECF No. 111-1 at 2 (¶ 2).

[7] Dismissal, *Cohodes v. DOJ*, No. 4:20-02469-KAW, Ex. 3 to *id.*

requests.[8] The April 21 requests were directed to the FBI, EOUSA (SDNY), and DOJ's Mail Referral Unit and were forwarded to the Office of Information Policy (OIP). OIP provided its final response on May 29, 2020, saying that it had no responsive documents for the first half of the plaintiff's FOIA request and, for the second part, "you may want to direct this portion of your request to the Criminal Division."[9] The government adds:

> As to the FBI, it released redacted records to Plaintiff on February 28, 2020 in response to an earlier FOIA request by Plaintiff that seeks the same records as those requested in his April 21, 2020 request. As to EOUSA, in response to an earlier request by Plaintiff that was substantially identical to his April 21, 2020 request, EOUSA notified Plaintiff that (1) it would not search for records about Parker Petit without express authorization, (2) it would only search for records about Senator Johnny Isakson while the Senator was in political office, and (3) it designated Plaintiff's request to the complex track, meaning it would take more than 30 days to process. EOUSA responded to the April 21, 2020 request with a final request by May 14, 2020.[10]

On September 9, 2020, the plaintiff amended his complaint to add allegations about a FOIA complaint he had submitted to the Criminal Division on June 9, 2020.[11] He amended it again on February 1, 2022. The operative complaint seeks production of records in the possession of the DOJ and "its component agencies," the FBI, the Criminal Division, and EOUSA, for communications between MiMedx-affiliated persons, Senator Izakson, and the DOJ, FBI, and U.S. Attorney's offices (USAO) "referring or relating to Plaintiff Marc Cohodes."[12] Its allegations about the FOIA requests tracks the government's summary (above) and are as follows. The plaintiff made requests in January 2020 seeking communications between Senator Izakson and the DOJ, the FBI, and the SDNY USAO. The FBI produced only a few redacted documents. His administrative appeals were denied or ignored.[13] He resubmitted his requests on April 21, 2020, to the DOJ, FBI, and EOUSA to clarify that he was seeking the documents personally. There was no response from the FBI or

---

[8] Compl. – ECF No. 1.

[9] Pyle Decl. – ECF No. 111-1 at 2 (¶ 3); Letter, Ex. 4 to *id.* – ECF No. 111-5.

[10] Opp'n – ECF No. 111 at 9.

[11] Am. Compl. – ECF No. 28; Answer – ECF No. 30 at 3 (¶ 10).

[12] First Am. Compl. – ECF No. 51 at 2 (¶¶ 1–2).

[13] *Id.* at 3 (¶¶ 7–8).

United States District Court
Northern District of California

1 EOUSA. The DOJ responded, and the plaintiff's appeal was denied.[14] At the suggestion of DOJ, he

2 submitted his FOIA request to the DOJ Criminal Division, which (1) denied the request regarding

3 Senator Isakson relating to Parker Petit and (2) said it was searching for the remaining requests. The

4 plaintiff submitted an appeal of the partial denial on August 13, 2020, and the Criminal Division

5 acknowledged receipt and made no further response to the requests.[15] The lawsuit is to "compel the

6 government to produce documents in response to his April 21, 2020, requests that will reveal the

7 FBI's misconduct in violating Cohodes's First Amendment rights, improper influence brought to

8 bear by Petit and his cohorts on a United States Senator, and MiMedx's efforts to silence critics in

9 violation of federal securities law."[16]

10    As a review of the docket shows, after the government answered the initial complaint on

11 September 9, 2020, the litigation was not contentious or protracted: the parties filed eleven case-

12 management statements, and there were four case-management conferences, two settlement

13 conferences, and contested matters resulting in orders about the pace of production and the

14 production of redacted information in four documents.[17] Most of the work was producing responses

15 to the FOIA requests. The Criminal Division performed searches and found no responsive

16 information. In July 2021, the plaintiff submitted a FOIA request to EOUSA regarding the same

17 two categories of information as its earlier requests. EOUSA processed the request as part of the

18 parties' overall settlement negotiations. The government made redacted productions.[18] More

19 productions were made from the SDNY criminal prosecution of the MiMedx executives.[19] On

20 February 24, 2024, the parties' statement reflects that the government had released ninety-eight

21 pages with redactions and 15,566 pages without redactions and withheld 18,052 pages under FOIA

22

23

24 [14] *Id.* (¶ 9).

25 [15] *Id.* (¶¶ 10–11).

   [16] *Id.* (¶ 12).

26 [17] *See* Docket; Orders – ECF Nos. 71, 78, 92, 93, 103; Mot. – ECF No. 111 at 7 (counting the number of CMC statements and conferences).

27 [18] Pyle Decl. – ECF No. 111-1 at 2–3 (¶ 4–5).

28 [19] J. Case-Mgmt. Statement – ECF No. 62 at 7.

United States District Court
Northern District of California

Exemptions 6 and 7(C).[20] In the end, the parties submitted four documents for in camera review. The court ordered production of information that was in the public domain.[21]

The plaintiff summarizes the overall productions:

- **Feb. 2020**: FBI produced 10 highly redacted pages from 2017 showing then-Senator Isakson referring Cohodes to the FBI on behalf of "a constituent." Dkt. 107-3 at ¶ 12; Dkt. 107-4 at 2-14.

- **Jan. 2021:** FBI *re-produced these 10 pages* with significantly fewer redactions, showing that the "constituent" was Senator Isakson's "good friend [who] believes that he was the *subject of stock manipulation*" and the Senator was able to fast-track his friend's complaint to the "relevant substantive squad." Dkt. 107-3 at ¶ 12; Dkt. 107-4 at 15-25.

- **Feb. - Apr. 2021:** FBI produced 2017 emails from MiMedx to the FBI alleging Cohodes was involved in a "criminal" attack against MiMedx and attaching an anonymous email purporting to show the same. Dkt. 107-3 at ¶ 13; Dkt. 107-5.

- **Apr. 2021**: FBI produced documents revealing that in October 2019 the USAO for the Northern District of California *opened a securities fraud investigation into Cohodes* based on MiMedx's complaints, only to close it the following month when MiMedx's CEO and COO were themselves indicted for securities fraud in the Southern District of New York. Dkt. 107-3 at ¶ 16; Dkt. 107-8.

- **Apr. 2022**: EOUSA—*for N.D. Cal*.—produced documents showing MiMedx attorneys provided Northern District AUSAs a *complete referral packet* and SEC "whistleblower" submission in Sept. 2019 to encourage prosecution of Cohodes for securities fraud. Dkt. 107-10. Because of Cohodes's advocacy, EOUSA reproduced the documents with fewer redactions in February 2023. Dkt. 107-03 at ¶ 18.

- **Aug. 2022**: FBI produced Sept. 2019 emails sent from MiMedx's attorneys to ASUAs in the Northern District urging them to charge Cohodes with securities fraud. Dkt. 107-3 at ¶ 19; Dkt. 107-11.

- **May 2023**: EOUSA— *for SDNY*—finally produced 7 heavily redacted pages of Treasury memos memorializing 2018 interviews by DOJ agents of MiMedx executives peddling purported information about Cohodes's alleged manipulation of MiMedx stock. Dkt. 107-3 at; Dkt. 107-12. The Court ordered de-redactions of these and other documents in **May and July 2024.** Dkts. 92, 103.

- **Feb. 2024:** EOUSA finally completes production for SDNY. Dkt. 107-14.[22]

---

[20] J. Case-Mgmt. Statement – ECF No. 79 at 1.

[21] Orders – ECF Nos. 92, 103.

[22] Reply – ECF No. 112 at 7.

United States District Court
Northern District of California

**2. Attorney's Fees**

The plaintiff asks for $181,725 in fees and an additional $73,948.95 for fees spent on the fees motion.[23] He paid the fees claimed in this case at the hourly rates below.[24]

**2.1 Hourly Rates**

The billers and their rates are as follows: (1) David Shapiro: $750 in 2020 and $800 in 2021; (2) George Harris: $800 in 2020 and 2021, $850 in 2022, and $895 in 2023 and 2024; (3) Leah Judge: $735 in 2023 and 2024; (4) Gil Walton: $540 in 2021; (5) Rebecca Kutlow: $685 in 2024; (6) Ashley Nakai: $610 in 2024; and (7) Diana Abad and Nathan Wittingham: $325 in 2024.[25]

Mr. Harris, a partner, graduated from Yale Law School, clerked for the Honorable Frank Coffin in the First Circuit Court of Appeals, was a partner at Morrison & Foerster for almost thirty years (where his practice focused on civil litigation and criminal defense), joined The Norton Law Firm in 2020, and — while on leave from Morrison & Foerster — was a tenured law professor at University of Utah (where he taught trial advocacy, appellate advocacy, civil procedure, and legal ethics) and the University of Pacific McGeorge School of Law (where he was the Director of the Center for Advocacy and Dispute Resolution, the Director of the Appellate Advocacy program, and taught appellate advocacy, criminal procedure, criminal law, and ethics). He served for many years as an Early Neutral Evaluator with this court.[26]

Mr. Shapiro, a partner, was an AUSA for almost fifteen years in the Eastern District of New York, the District of Arizona, and the Northern District of California, and he was the United States Attorney in the Northern District from 2000 to 2002. He otherwise has spent his career in private practice, litigating civil and criminal cases, including at Boies Schiller Flexner LLP.[27]

---

[23] Mot. – ECF No. 107 at 22 ($194,475 in fees and $400 in costs); Harris Decl. – ECF No. 107-3 at 3 (¶ 7); Reply – ECF No. 112 at 19–20; Harris Reply Decl. – ECF No. 112-1 at 3 (¶ 8). In the reply brief, the plaintiff's counsel discounted the fees since December 2020 because the firm gave Mr. Cohodes — a longstanding client — a ten-percent discount then. Harris Reply Decl. – ECF No. 112-1 at 2 (¶ 2).

[24] Mot. – ECF No. 107 at 23 (asking for these rates); Harris Decl. – ECF No. 107-3 at 4 (¶ 11); Harris Reply Decl. – ECF No. 112-1 at 2 (¶¶ 3, 5) & Spreadsheet, Ex. 2 to *id.* –ECF No. 112-4.

[25] Harris Decl. – ECF No. 107-3 at 4 (¶ 11).

[26] *Id.* at 2 (¶ 2).

[27] Shapiro Decl. – ECF No. 107–2 at 2 (¶¶ 1–2).

Ms. Judge graduated from Stanford Law School in 2014, clerked for the Honorable Christina A. Snyder in the Central District of California, clerked for the Honorable Kim McLane Wardlaw in the Ninth Circuit Court of Appeals, and, after she completed her clerkships and since late 2016, has worked at two firms, where her "practice has focused on civil litigation in state and federal courts and representing whistleblowers in government reward programs."[28]

Mr. Walton graduated from Stanford Law School in 2018, practiced civil litigation at Hogan Lovells from 2018 to 2020, clerked for a year for the Honorable Gerald B. Tjoflat in the Eleventh Circuit Court of Appeals, and joined The Norton Law Firm as a litigation associate in late 2021.[29]

Rebecca Kutlow graduated Order of the Coif from UCLA School of Law in 2020, practiced immigration law at Van Der Hout LLP, a premier immigration law firm in San Francisco, where she "engaged in FOIA litigation on behalf of her clients," and joined The Norton Law Firm as a litigation associate in May 2024.[30]

Ms. Nakai graduated from Stanford Law School in 2021, worked as a litigation associate at Hanson Bridgett, and joined The Norton Law Firm as a litigation associate in May 2023.[31]

Ms. Abad is a paralegal at The Norton Law Firm, and Mr. Whittingham was a paralegal there until late July 2024.[32]

The hourly rates reflected above are the "standard billing rates" for the lawyers' services and were the rates that the firm charged to Mr. Cohodes. The firm sets rates "according to the experience and qualification of the firm's lawyers and professional staff, and our firm's understanding of the rates charged by lawyers at other firms."[33]

To support the firm's billed rates, the plaintiff provided data from Wolters Kluwer's 2023 Real Rate Report, which provides information on actual attorney billing rates in the San Francisco Bay

---

[28] Judge Decl. – ECF No. 107-16 at 2 (¶¶ 1–2).

[29] Harris Decl. – ECF No. 107-3 at 2 (¶ 3).

[30] *Id.* (¶ 4).

[31] *Id.* at 2–3 (¶ 5).

[32] *Id.* at 3 (¶ 6).

[33] *Id.* at 4 (¶ 11).

1    area. He cites these hourly rates in the motion: the real hourly rates for partners ranging from \$436

2    in the first quartile to \$1,124 in the third quartile, the real rates for associates with seven or more

3    years of experience of \$404 in the first quartile to \$733 in the third quartile, and the real rates for

4    associates with three to seven years of experience of \$360 in the first quartile to \$789 in the third

5    quartile. He cites these hourly rates in its reply: hourly rates for partners ranging from \$575 in the

6    first quartile to \$998 in the third quartile and hourly rates for associates of \$360 in the first quartile

7    to \$674 in the third quartile.[34]

8    **2.2    Hours Spent**

9         The plaintiff's counsel submitted their billing records, which show the following tasks. In 2020,

10   time spent drafting the complaint and the amended complaint, negotiating with the government, and

11   reviewing and drafting administrative appeals. In 2021, settlement negotiations, including a

12   settlement conference, and review of FBI productions. In 2022, time spent reviewing productions.

13   In 2023, review of production, addressing assertions of FOIA exemptions, and settlement

14   negotiations. In 2024, EOUSA began document productions, which required more review, and

15   ultimately, the motions process in aid of the court's review of the four documents.[35]

16        The plaintiff's counsel eliminated \$17,255 in fees billed to the client comprised of (1) in 2020,

17   \$4,515 in labor and \$404.60 in expenses, which included time consulting with the plaintiff, (2) in

18   2021, \$7,440 in labor and \$117.26 in costs, including time spent on legal research and issues

19   ancillary to the FOIA request, (3) in 2022, \$255 in labor, including time spent on a motion to

20   remove an erroneous docket entry, (4) in 2023, \$1,661 in labor, including work performed by Mr.

21   Shapiro and Fred Norton, and (5) in 2024, \$3,404 in labor, including time spent conferring with the

22   plaintiff and providing FOIA-responsive documents to reporters.[36] Counsel exercised billing

23

24   [34] Judge Decl. – ECF No. 107-16 at 2 (¶ 4); Wolters Kluwer Report, Ex. M to Judge Decl. – ECF No.
     107-17 at 6–8; Reply – ECF No. 112 at 17. The plaintiff added the numbers in the reply brief to
25   respond to the government's argument that the plaintiff was selectively reporting rates that did not
     include smaller firms. The updated data is for "Commercial" (the data that the plaintiff contends is the
26   most comparable to this case). *Id.* (citing Wolters Kluwer Report, Ex. 4 to *id.* – ECF No. 112-6).

27   [35] Judge Decl. – ECF No. 107-16 at 2 (¶ 5) & Billing Records, Ex. N to *id.* – ECF No. 107-18; Harris
     Decl. – ECF No. 112-1 at 2–3 (¶¶ 1–7) & Exs. 1–2 to *id.* – ECF Nos. 112-2–112-3.

28   [36] Harris Decl. – ECF No. 107-3 at 3–4 (¶ 9).

1    judgment to reduce by ten percent the time spent to date on the fees motion.[37] In response to the

2    government's argument, it eliminated two categories of fees: fees for the dismissed FOIA lawsuit

3    ($2,950) and fees for the Criminal Division FOIA request ($10,200).[38]

4        In support of the reply brief, counsel submitted the billing support for the fees motion,

5    exercised billing discretion to eliminate certain hours, and reduced the billings by ten percent

6    because Mr. Cohodes has received a ten-percent discount since 2020 based on his longstanding

7    relationship with the firm.[39]

8        The result is $181,725 plus $73,948.95 for the fees motion, totaling $255,673.95. Through

9    September 3, 3024, the firm has invoiced the plaintiff $254,020.71 (for the case and the fees

10   motion), and he has paid $243,275.76 and will pay the outstanding $10,744.95 balance. The firm

11   will invoice him at least an additional $26,200.80 for work in September 2024, which is a total of

12   $280,221.51.[40]

13                                    **LEGAL STANDARD**

14       A party seeking attorney fees in a FOIA action must show that it is eligible for, and entitled to,

15   the fees. *Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983). A party is

16   eligible for fees if it "substantially prevailed" in the litigation. *Id.* (quoting 5 U.S.C. § 552(a)(4)(E)).

17   "Substantially prevailed" means that a "complaint has obtained relief through either [1] . . . a

18   judicial order, or an enforceable written agreement or consent decree; or [2] . . . a voluntary or

19   unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5

20   U.S.C. § 552(a)(4)(E)(ii)(I)–(II). "A complainant is deemed 'eligible' for a fee award by satisfying

21   either subsection." *Poulsen v. Dep't. of Defense,* 994 F.3d 1046, 1050 (9th Cir. 2021).

22       For the first subsection, whether a plaintiff substantially prevailed "requires only the entering

23   of an order of the sort described in that subsection." *Id.* at 1051. Even an order scheduling, rather

---

[37] *Id.* at 4 (¶ 10).

[38] Reply – ECF No. 112 at 19.

[39] *Id.*; Harris Reply Decl. – ECF No. 112-1 at 2 (¶ 2).

[40] Harris Reply Decl. – ECF No. 112-1 at 3 (¶¶ 3, 5–8). The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c). Stipulation & Order – ECF No. 56. The court held a hearing on January 16, 2025.

United States District Court
Northern District of California

1    than initially requiring, production suffices, and "even when voluntarily agreed to by the

2    government." *Am. Small Bus. League v. SBA*, No. 20-cv-04619-MMC, 2024 WL 3678001, at *3

3    (N.D. Cal. Aug. 6, 2024) (citing and quoting *Poulsen*, 994 F.3d at 1050, 1053–54).

4        For the second subsection, where a plaintiff obtains relief through a voluntary "change in

5    position by the agency," the plaintiff must "present convincing evidence that the filing of the

6    action had a substantial causative effect on the delivery of the information." *Id.* (cleaned up)

7    (citing and quoting *First Amend. Coalition v. U.S. DOJ*, 878 F.3d 1119, 1127–1128 (9th Cir.

8    2017)); *see Castillo v. U.S. Customs & Border Prot.*, No. 23-cv-03310, 2024 WL 1182865, at *3

9    (N.D. Cal. Mar. 19, 2024) (discussing whether the Ninth Circuit resolved the causation issue in

10   *First Amendment Coalition*). Courts consider three factors: "(1) when the documents were

11   released, (2) what actually triggered the documents' release, and (3) whether the plaintiff was

12   entitled to the documents at an earlier time." *Am. Small Bus. League*, 2024 WL 3678001, at *3

13   (cleaned up) (citing and quoting *First Amend. Coalition,* 878 F.3d at 1129).

14       If a party is eligible for attorney fees, then the determination of entitlement is within the sound

15   discretion of the trial court. *Church of Scientology*, 700 F.2d at 492. In exercising its discretion, the

16   district court must consider (1) the public benefit from disclosure, (2) any commercial benefit to the

17   plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records,

18   and (4) whether the government's withholding of the records had a reasonable basis in law. *Long v.

19   IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (citing *Church of Scientology*, 700 F.2d at 492).

20       The "customary method" for awarding fees is the lodestar method, calculated by multiplying the

21   hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate."

22   *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir. 2016). There is a "strong presumption"

23   that the lodestar figure represents a reasonable award, and the figure should only be departed from

24   "if certain factors relating to the nature and difficulty of the case overcome this strong presumption

25   and indicate that such an adjustment is necessary." *Id.* (cleaned up). The district court must "provide

26   a detailed account of how it arrives at appropriate figures for 'the number of hours reasonably

27   expended' and 'a reasonable hourly rate.'" *Id.* (cleaned up) (quoting *Blum v. Stenson*, 465 U.S. 888

28   (1984)). "Though the district court generally possesses a superior understanding of the litigation, it

United States District Court
Northern District of California

1    remains important for the district court to provide a concise but clear explanation of its reasons for

2    the fee award." *Id.* (cleaned up) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

3        "To determine a 'reasonable hourly rate,' the district court should consider: the experience,

4    reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary

5    fees; and the novelty or the difficulty of the question presented." *Id.* (cleaned up). "The reasonable

6    rate should generally be guided by the rate prevailing in the community for similar work performed

7    by attorneys of comparable skill, experience, and reputation." *Id.* (citing *Blum*, 465 U.S. at 895 n.11

8    (1984)). "The burden is on the fee applicant to produce evidence that the requested rates are in line

9    with those prevailing in the community." *Id.* (cleaned up) (quoting *Blum*, 465 U.S. at 895 n.11). "In

10    general, affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

11    community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs'

12    attorney, are satisfactory evidence of the prevailing market rate." *Id.*

13        "The resulting lodestar figure is presumed to be a reasonable fee." *Id.* (cleaned up) (quoting

14    *Blum*, 465 U.S. at 897). "The district court may nonetheless consider other factors in determining

15    whether to adjust the fee award upward or downward," but it *"*should explain why the adjustment

16    was appropriate." *Id.*

ANALYSIS

18        The parties dispute whether (1) the plaintiff substantially prevailed in the litigation by causing

19    the defendants to produce thousands of pages of records and by obtaining court orders for

20    disclosure, (2) the factors favor fees, and (3) the fees are reasonable.[41] The court awards the fees.

21

22    **1.    Eligibility for Certain Requests**

23        The plaintiff sued the FBI, EOUSA, and the Criminal Division. The government concedes that

24    the plaintiff is eligible for fees relating to the requests to the FBI but contends that he cannot

25    recover fees for requests to (1) the Criminal Division because he did not prevail "in any way," (2)

26    EOUSA (for the SDNY investigation) because he did not exhaust this FOIA claim, and (3) EOUSA

27

28    ───────────────
[41] Mot. – ECF No. 107 at 15–27; Opp'n – ECF No. 111 at 12–31.

United States District Court
Northern District of California

for records from the NDCA USAO because that request was not part of this litigation. The government summarizes its position: "In short, Plaintiff did not prevail as to at least one defendant, did not prevail on three out of four FOIA requests, and each of his FOIA requests were 50% about Plaintiff by asking for all documents about Marc Cohodes. As a result, many of the documents that were released by the agencies are of no interest to anyone other than Plaintiff."[42] Natasha Hudgins at EOUSA provides supporting detail: (1) the first request to EOUSA for records from the SDNY U.S. Attorney's Office (USAO) was submitted on January 15, 2020, and sent to the SDNY USAO for responsive records; the plaintiff filed a lawsuit, dismissed it, and withdrew the request voluntarily; the request thus is not part of this lawsuit; (2) the second request to the SDNY USAO was submitted on April 21, 2020, and a final response was sent on May 14, 2020; the plaintiff did not file an administrative appeal and thus failed to exhaust administrative remedies; and (3) the third request was submitted by counsel on September 30, 2020, the record search was done by the SDNY USAO, and a final response asserting exemption 7A was sent on November 13, 2020; the plaintiff appealed, and OIP affirmed on June 9, 2021; the request is not part of the lawsuit.[43]

The plaintiff disputed only the government's challenge to the fees for the EOUSA production.[44] The disputed fees are $5,535.50 for the EOUSA NDCA FOIA request based on the following time entries: "[(1)] 7/1/21 & 4/19–7/6/22 (50% of 7/6/22 entry); and [(2)] 12/14/22–1/19/23 ('Review Update on'); [and (3)] 2/13/2023.[45] The plaintiff contends that for the EOUSA production, the government (1) "has consistently treated all of Cohodes's EOUSA FOIA requests as part of this single litigation," (2) said that it processed the requests "as part of overall settlement efforts," and (3) provided updates about the status of EOUSA's document processing in the case-management statements.[46] The plaintiff also grounds its entitlement to fees on the court's orders directing

---

[42] Opp'n – ECF No. 111 at 7.

[43] Hudgins Decl. – ECF No. 111-17 at 3–4 (¶¶ 8–11).

[44] As discussed in the Statement, the plaintiff dropped the fees for the Criminal Division request ($10,200) and the dismissed case ($2,950).

[45] Opp'n – ECF No. 111 at 12–13.

[46] Reply – ECF No. 112 at 8 (citing Opp'n – ECF No. 111 at 10 & J. Case-Mgmt. Statements – ECF Nos. 39 & 62).

United States District Court
Northern District of California

document production at a faster pace, which it characterizes as relief that it obtained pursuant to a court order, even if that order scheduled, rather than required, production.[47] It also said that the government litigated the case notwithstanding the exhaustion defect, and FOIA exhaustion is a prudential, not jurisdictional, requirement.[48] The court allows the disputed fees of $5,535.50.

The government worked hard to manage productions and narrowed the issues to one motion involving four documents. That approach helps the court for any lawsuit. It also avoids serial litigation: if the government stands on exhaustion, the plaintiff can refile the FOIA request. *Ctr. for Investigative Reporting v. U.S. DOJ*, No. 21-CV-09613-SK, 2022 WL 19915778, at *5 (N.D. Cal. May 19, 2022) ("Here, if the Court were to hold Plaintiffs to the requirement of exhaustion of their FOIA request against the EOUSA and dismiss this portion of the case, Plaintiffs would simply re-file the FOIA request and, if denied again, re-file in this Court."). It was efficient for the government address all FOIA requests as part of this litigation. That is how the court handled the litigation too, by directing the pace of discovery and ordering production of withheld information. In short, this was a single lawsuit with coordinated productions and court orders addressing that production. As a result, the plaintiff is eligible for fees: "[w]hen relief is obtained through a judicial order, the plaintiff, to be eligible for fees, need not show 'the FOIA' lawsuit' caused the production." *Am. Small Bus. League*, 2024 WL 3678001, at *3 (citing *Poulsen*, 994 F.3d at 1050). "[E]ven an order scheduling, rather than initially requiring, production suffices, and even when voluntarily agreed to by the government." *Id.* (cleaned up) (quoting *Poulsen*, 994 F.3d at 1053–54).

Also, FOIA exhaustion is a prudential, not jurisdictional, requirement. *Aguirre* v. *U.S. Nuclear Regul. Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021) (because FOIA exhaustion "is a prudential rather than jurisdictional consideration, . . . courts can waive the requirement when, for example, further administrative proceedings would prove futile."); *Ctr. for Investigative Reporting*, 2022 WL

---

[47] *Id.* (referencing Orders – ECF Nos. 71 (directing a "more granular update about production obstacles") & 78 (ordering a production of 500 pages a month) and citing *Am. Small Bus. League*, 2024 WL 3678001, at *3).

[48] *Id.*

19915778, at *5 (waiving exhaustion for "judicial economy"). Here, further administrative proceedings are not possible, and thus are futile, because the productions are complete.

Finally, there is a "causal connection" between this litigation and the production of documents: the documents, including EOUSA's production of more than 15,000 pages, were released after the plaintiff filed the lawsuit. *Am. Small Bus. League*, 2024 WL 3678001, at *3 (discussing the three-factor test). In *Rosenfeld v. U.S. DOJ*, the court considered the FBI's production of 7,412 pages over the four years that followed the filing of the complaint. 904 F. Supp. 2d 988, 997 (N.D. Cal. 2012). It concluded that "but for the institution and prosecution of this suit, the documents ultimately obtained by Plaintiff would never have been released. On these facts, it is clear that the suit was necessary and causally linked to the release of the documents obtained." *Id.* at 997–98 (cleaned up) (citing *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981)). Based on "the timing and circumstances of the FBI's release of documents . . . , the FOIA lawsuit was, at root, what actually triggered the documents' release." Thus, "the lawsuit was *reasonably necessary* and . . . had a *substantial causative effect* on the release of documents," making the plaintiff "eligible to receive an award of attorneys' fees under FOIA." *Id.* at 998 (quoting *Church of Scientology of Cal.*, 700 F.2d at 491–92). That analysis applies here: the initiation of the lawsuit resulted in the production of the documents.

In sum, the plaintiff is eligible for attorney's fees.

## 2. Discretionary Factors

The parties dispute whether the factors — the public benefit from disclosure, any commercial benefit to the plaintiff resulting from disclosure, the nature of the plaintiff's interest in the disclosed records, and whether the government's withholding of the records had a reasonable basis in law — favor fees.[49] They do.

First, there is a public benefit from the disclosures here. The public-benefit factor takes into account the "degree of dissemination and the likely public impact that might result from

---

[49] Mot. – ECF No. 107 at 17–22; Opp'n – ECF No. 111 at 14–24; Reply – ECF No. 112 at 9–15.

disclosure." *Church of Scientology*, 700 F.2d at 493. The factor does not favor an award when it "merely subsidizes a matter of private concern." *Id*. By contrast, there is a public interest in the integrity of investigations. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223–24 (9th Cir. 2001).[50] Courts consider public benefit broadly, and, for example, have "recognized a public interest in determining whether government programs . . . involve waste, fraud, or abuse." *WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 23 (D.D.C. 2020). Here, the produced documents show MiMedx's leveraging its connections to a sitting senator to enlist the FBI to advance MiMedx's business interests. That implicates the integrity of the government's investigations. *Lissner*, 241 F.3d at 1223–24.

The government contends that the information was disclosed in the Wall Street Journal article. But as the Statement recounts, there was information in the production beyond that reported. The FBI produced the original ten pages with fewer redactions, which showed that Senator Isakson's referral of the plaintiff to the FBI was for manipulation of MiMedx stock, not the Twitter posts, and the agency fast tracked the referral. There were additional productions showing the overall campaign by MiMedx to have the plaintiff prosecuted for stock manipulation.[51] Where "at least one of the requested documents was not previously available to the public," the public-benefit factor weighs in favor of the plaintiff. *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

Also, the author of the article and a Bloomberg journalist asked for the FOIA production from the plaintiff's counsel earlier this year.[52] The author also wrote a letter about the public interest in the business practices of public companies, especially including their access to government agencies.[53] There has been substantial reporting since the original 2018 article.[54] The FOIA disclosures advance that public interest.

---

[50] Mot. – ECF No. 107 at 17–18 (discussing cases).

[51] *See* Statement (summarizing the information produced about the relevant time period).

[52] Judge Decl. – ECF No. 107-16 at 2 (¶ 3).

[53] Morgenson Letter – ECF No. 87-11.

[54] Articles, Ex. 3 to Judge Reply Decl. – ECF No. 112-5.

The government counters that the plaintiff's characterization of the productions — the documents "reveal that the motive for the FBI's December 1, 2017 visit to Cohodes' home was equivocal" — does not identify "any document to rebut what the documents released . . . under FOIA show:" the FBI's investigation of threats.[55] This argument does not change the conclusion that there is a public benefit from the disclosures.

The plaintiff's tweets were strong — "I will bury the little fellow in a show box" and "Guns are loaded the Safety is off $MDXG — and included a family picture of MiMedx's general counsel.[56] The FBI agents told Mr. Cohodes that they were "speaking with him in regards to the threatening tone of his Tweets which needed to stop before it escalated further." They read tweets to Mr. Cohodes's lawyer and asked him "to reiterate to his client that the FBI came to speak with him about the Tweets and to ask him to stop any threatening Tweets before it escalates further."[57] But this is not just about the tweets; it's about MiMedx's larger effort to shut down a critic by pushing an investigation of stock manipulation and enlisting a sitting senator. The FBI investigated the plaintiff's Twitter posts, something that may never have happened otherwise. (This is after all Twitter, which can involve provocation.) It is a matter of public interest whether MiMedx received preferential treatment (and whether in contrast, the plaintiff did not). *Lissner*, 241 F.3d at 1223–24 (whether Customs gave preferential treatment to police officers who smuggled steroids is a matter of public interest; there is an interest in ensuring the integrity of investigations and whether the officers received preferential treatment as law-enforcement officers).

Of course, this investigation ended with the indictment of MiMedx's principals, suggesting that the government got it right in the end. That happens in investigations: the FBI follows the trail and sometimes the supposed victim turns out to be the criminal. But returning to the government's point that the plaintiff did not show bad motive by the FBI, there is no need to demonstrate the FBI's wrongdoing. "While the public interest in ensuring the integrity and reliability of government

---

[55] Opp'n – ECF No. 111 at 15 (citing Mot. – ECF No. 107 at 18:12–13).

[56] Mot. – ECF No. 111 at 15–16; Pyle Decl. – ECF No. 111-1 at 3–4 (¶ 6) & FBI EC, Ex. 5 to *id.* – ECF No. 111-6 at 3.

[57] Pyle Decl. – ECF No. 111-1 at 3–4 (¶ 6) & FBI 302, Ex. 6 to *id.* – ECF No. 111-7.

investigation procedures is greater where there is some evidence of wrongdoing on the part of the government official, nothing in the statutory command of the FOIA conditions agency compliance on the requesting party showing that he has knowledge of misfeasance by the agency." *Id.* (cleaned up). The FOIA disclosures here go to the integrity of the government's investigative process. The public benefit from the disclosures is that they "add to the public fund of information that citizens may use in making vital political choices." *Piper v. U.S. DOJ*, 339 F. Supp. 2d 13, 20 (D.D.C. 2004) (evidence tampering in criminal trials) (citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)). FOIA, after all, "was designed to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Corbett v. TSA*, 116 F.4th 1024, 1025 (9th Cir. 2024) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

Second, the second and third factors — "the commercial benefit to the complainant and the nature of the complainant's interest in the records sought" — do not weigh against fees because the plaintiff's personal interest does not diminish the public benefit from disclosure.

Courts consider these factors together to determine whether the plaintiff had a sufficient private incentive to pursue the FOIA request. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.,* 2017 WL 783490, at *8 (N.D. Cal. Mar. 1, 2017); *McKinley v. Fed. Hous. Fin. Agency,* 739 F.3d 707, 712 (D.C. Cir. 2014) (courts consider the second and third factors together to determine "whether the plaintiff had a sufficient private incentive to pursue his FOIA request even without the prospect of obtaining attorney's fees."); *Cotton v. Heyman,* 63F.3d 1115, 1120 (D.C. Cir. 1995) (Where "a litigant seeks disclosure for . . . personal reasons, an award of fees is usually inappropriate."). But the "notion that a private interest and public interest must be mutually excludable is not supportable." *Piper*, 339 F. Supp. 2d at 21.

The plaintiff concedes that he had a personal interest in learning about MiMedx's actions in response to his criticisms but contends that his interest does not diminish the public interest in the disclosure of misconduct that resulted in the conviction of MiMedx's principals, fines, a FCA

United States District Court
Northern District of California

settlement, and the indictment of three VA employees for accepting MiMedx's bribes.[58] The government counters that the plaintiff's private interest in litigation against MiMedx (in a case filed in January 2022) precludes fees.[59] Balancing the factors, the personal interest does not diminish the public interest in disclosure.

In *Piper*, for example, the court awarded fees to a plaintiff seeking documents about his mother's kidnapping. That factor "could . . . weigh against plaintiff in isolation." *Id.* But the plaintiff intended to write a book about the kidnapping, the FBI's investigation, and the resulting DOJ prosecution. This "scholarly endeavor . . . contributes to the public fund of knowledge. . . . The fact that plaintiff will benefit commercially from potential sales is not sufficient to tip the scale in favor of characterizing plaintiff solely as a commercial requestor." *Id.* at 22; *see also Davy*, 550 F.3d at 1159–61 (FOIA request about individuals allegedly involved in President Kennedy's assassination; intent to publish a book was not purely commercial; "news interests, regardless of private incentive, generally should not be considered commercial interests for purposes of the second factor") (cleaned up).

*Piper* recognized that "Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles." 339 F. Supp. 2d at 22 (quoting *Campbell v. DOJ*, 164 F.3d 20, 35–36 (D.C. Cir. 1998)). The interests of scholars and journalists are perhaps different than the plaintiff's interests (as a MiMedx target and a short seller). But *Piper* recognized that the public and private interests "are not so easily separable." *Id.* at 22–23 (cleaned up). A private benefit does not preclude fees when there is a substantial public benefit in disclosure. *Reyes v. Unites States Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 159, 165–66, 168 (D.D.C. 2018) (awarding fees for request relating to a U.S. Army report on Filipino World War II veterans; the plaintiff had her own VA appeal; while FOIA is not a substitute for civil discovery, the plaintiff's motives were not purely personal because the records were relevant not only to her but also to other veterans who were denied benefits).

---

[58] Reply – ECF No. 112 at 11.

[59] Pyle Decl. – ECF No. 111-1 at 4 (¶ 8) & Docket, No. 22-cv-368-RFL, Ex. 9 to *id.* – ECF No. 111-10.

The government's cases about private benefit are distinguishable.[60] *Maydak v. U.S. DOJ* involved a pro se prisoner's request for records relevant only to his detention. 579 F. Supp. 2d 105, 108 (D.D.C. 2008). *Simon v. United States* involved requests to the USPTO that "were not scholarly, journalistic, or public-interest oriented." 587 F. Supp. 1029, 1032 (D.D.C. 1984).

In sum, the plaintiff's personal interest does not diminish the public benefit from the disclosure.

Third, the final factor is "whether the government's withholding had a reasonable basis in law; in other words, whether the government's actions appeared to have a colorable basis in law or instead appeared to be carried out merely to avoid embarrassment or to frustrate the requester." *Eco. Rights Found v. Fed. Emergency Mgmt. Agency,* 365 F. Supp. 3d 993, 1000 (N.D. Cal. June 14, 2018) (cleaned up) *(citing Church of Scientology,* 700 F.2d at 492 n.6); *Sierra Club v. U.S. EPA,* 75 F. Supp. 3d 1125, 1145 (N.D. Cal. 2014) (government must demonstrate that its withholding was reasonable); *Prudential Locations LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 739 F.3d 424, 430 (9th Cir. 2013) (agency must show a protectable privacy interest and prove that there is more than a de minimis personal privacy interest). This factor "is not dispositive" and can be outweighed where the other relevant factors favor an award. *Rosenfeld,* 903 F. Supp. 2d at 870.

There were productions — without the court's intervention — because the government agreed that the information was in the public domain.[61] In the end, the litigated dispute was about redactions in four documents, which resulted in a ruling against the government. The government took a principled position. That said, the government has the burden here. The court's earlier order set forth the bases for withholding documents under Exemptions 6 and 7(C) and concluded that the government did not satisfy the standard.[62] It also took until 2023 to begin the productions.[63] And in any event, the factor is not dispositive because the other factors favor fees. *Id.*

---

[60] Opp'n – ECF No. 111 at 17–19.

[61] Email String, Ex. D to Harris Decl. – ECF No. 107-7.

[62] Order – ECF No. 92 at 2–6; *see* Order – ECF No. 103 (clarifying earlier order).

[63] Reply – ECF No. 112 at 14–15 (summarizing timeline). The case-management statements on the docket show this.

United States District Court
Northern District of California

### 3. Reasonableness of Fees

The parties dispute whether the hourly billing rates are appropriate, the overall fees are proportionate to the results in the litigation, and the hours are excessive.[64] The fees generally are appropriate (but the government may file an opposition to the fees for the fees motion).

The government's main argument about billing rates is that the plaintiff's counsel has no experience with FOIA litigation, and the benchmark rates must be for FOIA work. The plaintiff responds that the rate is that for comparable lawyers charge their paying clients for similar work.[65] Because counsel charged "fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity," the hourly rates are reasonable. *Hajro v. USCIS*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012) (awarding the requested hourly rate of $625), *vacated and remanded on other grounds*, 811 F.3d 1086 (9th Cir. 2016); *Rosenfeld*, 903 F. Supp. 2d at 877–78 (awarding the requested $700).

The government's argument rests on another court's 2019 award of $700 as the top-end hourly rate for partner work.[66] *Kopp v. U.S. Secret Serv.*, No. 18-cv-04913-JCS, 2019 WL 2327933, at *7 (N.D. Cal. May 31, 2019). That case involved plaintiff Quentin Kopp's FOIA request for the amount of money that the Secret Service spent protecting President Trump's adult children as they promoted the Trump family business overseas. The partner asked for $850 because a 2012 decision awarded $700, thereby "implying — but not explicitly arguing or presenting evidence to show — that inflation of market rates since that time accounts for the increase. [The plaintiff] has neither identified any FOIA case awarding a fee at the rate sought [by the partner] nor explained why this case is particularly challenging or novel such that an apparently unprecedented billing rate (for a FOIA case) should be awarded. Put differently, there is no evidence that $850 per hour is in fact a fair market rate for the particular work performed." *Id.* at * *1, 7 (awarding $700 per hour to the partner and other unobjected-to hourly rates ranging from $275 to $600).

---

[64] Opp'n – ECF No. 111 at 24–31.

[65] *Id.* at 25; Reply – ECF No. 112 at 15–16.

[66] Opp'n – ECF No. 111 at 25.

In contrast to *Kopp*, which involved a straightforward FOIA request, this case involved more complex issues of FOIA privacy interests in the context of securities fraud. The plaintiff's counsel had the necessary expertise in securities litigation to address the issues. Unlike the *Kopp* attorneys, they provided the Real Rate Report (summarized in the Statement) to support their market rate. Moreover, the plaintiff paid the fees, which is evidence of the market rate. *Myers v. Aetna Life Ins. Co.*, No. CV 19-9555 DSF (KSx), 2021 WL 5532699, at *3 (C.D. Cal. Mar. 31, 2021) (in ERISA fees case, considered previous fees awards, declarations supporting counsel's expertise, and the Real Rate Report in its evaluation of the billing rate; "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market."); *Sierra Club*, 75 F. Supp. 3d at 1152–53 (considering rates charged in non-FOIA cases by similar lawyers with similar skills and reputation in determining FOIA fees).

The government's other cited cases are distinguishable. In *Schoenberg v. FBI*, the court awarded an hourly rate of $350, but that was the requested rate. No. 18-cv-01738, 2020 WL 4937813, at *16–17 (C.D. Cal. May 8, 2020), *aff'd*, 2 F. 4th 1270 (9th Cir. 2021). In *Our Child's Earth Foundation v. National Marine Fisheries Service*, the court reduced the hourly rates because they were "significantly higher than rates requested and approved by these *same* counsel in recent cases in this District for environmental litigation." No. 14-cv-01130-WHO, 2017 WL 783490, at *11 (N.D. Cal. Mar. 1, 2017).

*Kopp* is persuasive ultimately: it limited one partner's hourly billing rate to $700 (the most recent comparator rate from 2012) because the lawyer did not justify a higher rate in a FOIA case. By contrast, counsel here supported their market rates. The government's arguments are categorical (the rates are too high for FOIA litigation) and do not rebut the plaintiff's evidence of subject-matter expertise. *Sierra Club*, 75 F. Supp. 3d at 1152 ("Although the EPA argues that Plaintiffs are seeking reimbursement at an inflated billing rate, it has failed to introduce any rebuttal evidence in support of a lower hourly rate"). The expertise mattered here: the case was not just a threats investigation and instead involved securities fraud with a public interest in disclosure.

The next issue is whether the overall fees are proportionate to the results in the litigation and, relatedly, whether the hours spent are excessive. The government contends that the plaintiff's

United States District Court
Northern District of California

counsel overstaffed a case that ultimately had only one litigated dispute about redactions in four documents, and the requests revealed nothing beyond what was already in the Wall Street Journal article, making the fees request disproportionate to the results.[67] The plaintiff counters that the rates are reasonable, reflect billing judgment, include a ten-percent across-the-board cut, and reflect the work needed to achieve the results. Also (as the court held above), the litigation resulted in the production of information beyond that in the 2018 article.[68] Subject to the analysis below, the fees are reasonable: they reflect work that the plaintiff paid for and was necessary for the results achieved. Moreover, counsel exercised billing judgment and cut fees.

First, the government contends that reasonably expended time is time that "could reasonably could have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). But that is what happened here: the client paid the attorney's fees.

Second, the government contends that the court can reduce the fees by a percentage (and it suggests fifty-five percent) for overstaffing, overbilling, high hourly rates, and inefficiencies due to lack of FOIA experience, or it can reduce the awards on line-by-line grounds. For the percentage approach, the government cites — without analyzing — *Ecological Rights Foundation v. FEMA*, where the court cut the $702,000 fees by fifty-five percent (to $316,000) for reasons that included research on unnecessary tasks and the reality that a client would not pay for the work.[69] 365 F. Supp. 3d 993, 1006–08 (N.D. Cal. 2018). Those reasons do not apply here. The court has already upheld the hourly rates because counsel's expertise advanced the litigation. The plaintiff paid for that work. Unlike the work in *Ecological Rights Foundation*, the work here — on the line-by-line grounds proposed by the government and based on the billing records — was necessary.

The government identifies only two remaining disputed categories and did not otherwise direct the court to specific fees entries showing the inefficiencies (including inefficiencies based on experience). *Gates v. Deumejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (party opposing the fee

---

[67] *Id.* at 27–30.

[68] Reply – ECF No. 112 at 17–19.

[69] Opp'n – ECF No. 111 at 29.

United States District Court
Northern District of California

application "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits"). The disputed categories are (1) time spent reviewing the documents ($21,165) and (2) an improper reply brief on an administrative motion ($916.50).[70]

Courts allow fees for document review if it is necessary to litigate the case. *Rosenfeld*, 903 F. Supp. 2d at 877 (rejecting similar argument because "the FBI failed to provide any evidence that this time spent by Plaintiff's lawyers was not for the purpose of litigating this case"); *ACLU Immigrants' Rights Proj. v. U.S. Immigr. & Customs Enf't*, No. 16-cv-06066-JSC, 2018 WL 488997, at *3–4 (N.D. Cal. Jan. 19, 2018) (allowing fees for review of documents produced during FOIA litigation because the "plaintiff's counsel must review the documents to determine if the production ends the litigation or if there are still compliance issues that necessitate further litigation. Such costs are litigation costs.") (collecting cases and citing *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 412 (D.D.C. 2015)).

The government's cases are distinguishable. *Our Children's Earth Foundation* held that time spent reviewing the documents is not compensable when it is the "price of making the request."[71] 2017 WL 783490, at *15 (quoting *Citizens for Responsibility & Ethics v. U.S. DOJ*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011)). But it also recognized that time spent might be compensable "where the adequacy of [the agency's] searches and withholdings were central claims." The court denied fees because the plaintiffs' withholding claims were unsuccessful, and the plaintiffs did not cite case law "allowing for recovery of time spent reviewing document productions where that review is necessary for the plaintiff to be able to challenge the adequacy of an agency's search or the propriety of its withholdings." *Id.* By contrast, *Rosenfeld* and *ACLU Immigrant Rights Project* support fees for document review like the review here. The court allows the fees.

---

[70] *Id.* at 29–30. The government identified five entries: the two in this section and three others: $2,550 for the dismissed FOIA suit, $10,200 for the Criminal Division FOIA request, and $5,535.50 for the EOUSA FOIA request. The plaintiff conceded the fees for the dismissed suit and the Criminal Division request. The court allowed the $5,535.50. *See supra*; Reply – ECF No. 112 at 19.

[71] Opp'n – ECF No. 111 at 29–30.

For the administrative motion, the local rules do not call for a reply brief. Civil L. R. 7-11(c). The court did not ask for it. The plaintiff counters that the court did not strike it.[72] The context is that the court ordered production of the redactions but allowed the government to respond to its order first.[73] The government did so.[74] During the time between the government's response and the court's order addressing it, the plaintiff filed an administrative motion to compel production by June 7, 2024, and the government responded, saying that it had readied the production, was waiting only for the court to address the defendant's subsequent statement (solicited by the court), and suggesting a disclosure date after that decision. The plaintiff then replied, asking for disclosure by his suggested date (June 7).[75] On July 13, 2024, the court held that nothing altered its earlier order requiring production and ordered the parties to confer on a disclosure date.[76]

The reply was not authorized or necessary. The court did not strike it for reasons that include the inefficiency of pouncing on slight rules violations, the occasional utility of replies, and the court's collaborative case-management practices. That does not make the $916.50 compensable. It is not.

*     *     *

Despite the good work that the parties did to narrow their dispute, the court's intervention was required to resolve it. By August 17, 2023, EOUSA had produced only seven pages and proposed a production deadline of May 31, 2024. The plaintiff proposed a deadline of December 1, 2023. The court ordered completion by February 16, 2024, and ultimately reviewed the withheld material and ordered its production.[77] The plaintiff's counsel undertook substantial work, not only to negotiate and review the production to address privacy redactions, but also to challenge the redactions in a substantial motion.

---

[72] Reply – ECF No. 112 at 19.

[73] Order – ECF No. 92.

[74] Statement – ECF No. 95.

[75] Mot. – ECF No. 97; Opp'n – ECF No. 100; Reply – ECF No. 101.

[76] Order – ECF No. 103.

[77] Status Rep. – ECF No. 68 at 1–3; Orders – ECF Nos. 78, 92, 103.

United States District Court
Northern District of California

The government characterizes the issues as straightforward: the FBI acted reasonably in investigating threats, and any information about insider access was in the Journal article already.[78] The issues were in fact trickier, which is shown by the plaintiff's briefs for disclosure and fees, the court's earlier disclosure orders, and the analysis in this order. This was not a trivial dispute.

Overall, the billing records show that the plaintiff's counsel exercised billing judgment and spent the time appropriate for the tasks reflected in the bills submitted to the client, who paid them. The hours also were necessary to achieve the results (as the court discussed at the hearing). There was no overstaffing: the billing records show that mostly Mr. Harris did the work until 2022, when Ms. Judge joined to address briefing demands.[79]

In sum, the court allows fees of $180,808.50.

### 4. Fees on Fees

"In this Circuit, plaintiffs may recover attorney's fees for time reasonably expended on a motion for attorney fees and costs." *Rosenfeld,* 904 F. Supp. 2d at 1009 (citing *Brown v. Sullivan,* 916 F.2d 492, 497 (9th Cir.1990)). At the hearing, the government asked for an opportunity to oppose the request for fees for the fees motion. The court allows that process because the government did not have the information needed to address the issue in its opposition.

### CONCLUSION

The court awards fees of $180,808.50. Within fourteen days, the parties must file a briefing schedule and proposed page limits to address the $73,948.95 for the fees motion and must confer about whether an ADR process might help, given that there were only a few disputed issues that the court ultimately had to decide in this order.

The first disputed issue was the government's suggestion of a fifty-five-percent reduction in fees, which is unsupported by the record (as discussed above).

---

[78] Order – ECF No. 103 at 2 (addressing argument).

[79] Billing Records, Exs. 2–3 to Judge Decl. – ECF No. 107-18.

1    That leaves four disputes for the resulting line-by-line analysis: the hourly rates and three
2    disputed fee categories.

3    The hourly rate dispute is for one associate and two partners at a high-end boutique. At most,
4    under *Kopp*, an opinion that the court followed as persuasive, their hourly rates would be reduced
5    from rates in the $725 to $895 range to $700.

6    The government initially identified five disputed categories of fees. The plaintiff conceded two
7    categories, leaving three: the review costs ($21,165 that the court allowed), the EOUSA fees
8    ($5,535.50, also allowed), and the costs of the administrative reply ($916.50, disallowed). These
9    amounts total $27,617.

10   Thus, what remains live for any settlement discussion is the parties' disagreements about the
11   hourly rate, $27,617 for the three categories, and $73,948.95 fees for the fees motion.

12   **IT IS SO ORDERED.**

13   Dated: January 24, 2025

     _____
15   LAUREL BEELER
     United States Magistrate Judge